

RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 APR -9 PM 6:19

NANCY M.
MAYER-WHITTINGTON
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>and<br><br>KIRT WEST,<br>INSPECTOR GENERAL OF THE<br>LEGAL SERVICES CORPORATION,<br>3333 K STREET, NW, 3RD FLOOR,<br>WASHINGTON, D.C. 20007<br>Petitioners,<br>v.<br>CALIFORNIA RURAL LEGAL<br>ASSISTANCE, INC.,<br>631 HOWARD ST., #300<br>SAN FRANCISCO, CA 94105<br><br>Respondent. | Misc. No. 1:07-MC-00123 (EGS) |

**RESPONSE AND PARTIAL OPPOSITION OF RESPONDENT
CALIFORNIA RURAL LEGAL ASSISTANCE, INC. TO
PETITIONERS' MOTION FOR ORDER TO SHOW CAUSE;
DECLARATION OF WILLIAM HOERGER IN SUPPORT**

Respondent California Rural Legal Assistance, Inc. ("CRLA") here responds to and opposes in part the Motion of Petitioners United States and Legal Services Corporation Inspector General Kirt West for an Order to Show Cause. Petitioners' Motion properly defers addressing the merits of their Petition for enforcement of the Office of Inspector General's ("OIG's") administrative subpoena to CRLA, and (with one possible exception discussed below) seeks only to set a briefing and hearing schedule on the merits of the Petition. CRLA also wishes to see a rational schedule set for briefing and a hearing on the merits. But this schedule should take into account the intended appearance and participation of intervenors who are vitally interested in those merits. Specifically, CRLA has been contacted by Morrison & Foerster LLP, which has been retained by a number of individual legal aid attorneys employed by CRLA. We are informed by their counsel that these employee legal aid attorneys will seek to intervene in these proceedings to determine their personal legal and ethical duties (as well as their clients' rights of privacy, confidential consultation with counsel, and attorney-client privilege), which they contend are in conflict with the terms of the OIG's subpoena and the instant Petition to enforce it. In addition, CRLA anticipates that other affected persons, and organizations representing their interests, may seek permission to participate as intervenors or *amici curiae* in connection with the novel, difficult and important issues raised in this proceeding.

For the reasons set forth below, CRLA respectfully requests that the Court allow 45 days for potential intervenors to present their motions to intervene, with reasonable time for Petitioners to oppose and intervenors to reply. CRLA further requests that, to provide for complete and orderly presentation of the issues by all parties whose interests properly should be before the Court, briefing and hearing on the merits be scheduled after the identity and interests of the intervenors are established.

## BACKGROUND

CRLA supplies this brief background summary to provide context for the logistical and scheduling determinations the Court is being asked to make.

California Rural Legal Assistance, Inc. is a private, California nonprofit corporation, founded in 1966 to provide a full range of free legal assistance and representation to low-income communities throughout California. It provides legal services to indigent agricultural and other low-wage workers and their families through a network of 23 local offices located throughout California over an area that stretches some 750 miles from the Mexican border to the northern Sacramento Valley. CRLA's 23 local offices include 6 Migrant Project and 17 Basic Program facilities. About 60% of CRLA's annual budget is funded by the Legal Services Corporation ("LSC"). The LSC grant charges CRLA's Basic Program offices with serving all or parts of 16 counties with a poverty population of approximately 555,000. CRLA also has the sole Migrant Project in the state of California.

The subpoena at issue here is part of the second sprawling and protracted OIG "investigation" of CRLA during the past 5 years. The previous one (classified as a "program integrity audit") lasted a record 40 months from notice to closure, and produced no finding of any significant violation of federal law or regulation. This is also the third investigation of CRLA (including both OIG inquiries) in the last 6 years prompted by complaints from members of Congress from California's Central Valley on behalf of the California dairy industry.[1]

---

[1]This is perhaps unsurprising, as CRLA's advocacy focusing on the California dairy industry's widespread illegal treatment of its low-wage work force has been increasing since 2000. In the past year and a half, for example, CRLA advocates have brought litigation against individual California dairies that has resulted in more than $1 million in recovery of unpaid

The OIG's current investigation began on December 14, 2005, when CRLA received a telephone call stating that the OIG intended to conduct staff interviews and records review in CRLA's Modesto, California Basic Program Office during the week before Christmas. When CRLA management inquired of senior OIG staff what issue or complaint was being investigated, they refused to say, a tactic unprecedented in CRLA's many years of LSC and OIG regulation. CRLA management nevertheless cooperated fully in coordinating the visit with staff's holiday travel plans and in arranging the interviews.

On March 16, 2006, the OIG served an administrative request for information and documents of astonishing breadth. In addition to demands for documentation and time records concerning numerous CRLA cases, projects and matters, the eight single-spaced pages of demands sought a wide range of documentation concerning CRLA's substantive litigation strategy development in numerous areas CRLA has targeted as "priority" areas of special interest to its indigent client base, substantial amounts of which were subject to federal and state work-product doctrine. (Needless to say, these demands are particularly disconcerting given that this investigation is now known to have been initiated at the request of the Chair of the Congressional Dairy Caucus, whose constituents are regular litigation adversaries of CRLA.) In addition, the request demanded that CRLA produce clients' names, addresses, telephone numbers, referral source, dates of representation, "problem codes" (that is, the subject matter about which the client requested CRLA's assistance), financial information, adverse parties, and even identifying information concerning the clients' spouses for *every* client to whom CRLA had provided legal

---

wages for hundreds of dairy workers for violations including failure to pay minimum wage, failure to pay overtime, failure to provide required rest and meal breaks, failure to maintain time and payroll records; and failure to provide legally required work equipment.

services *in any of its 22 service offices statewide at any time during the prior three years*, which amounted to *over 39,000* client files.

CRLA responded to the administrative demand with a very substantial volume of material—over 6,000 pages of documents and many megabytes of electronic data and records. Over a thousand hours of CRLA management and senior attorney time was required to assemble and provide these materials. And although most of the client information OIG requested was provided promptly, the demand for client names along with the other client information that CRLA promptly and voluntarily supplied created a serious dilemma.

That dilemma arose because, in a legal aid practice such as CRLA's, this information would often convey the client's motivation for having confidentially sought legal advice, and thus comprise privileged information. As noted above, CRLA's client base includes many indigent agricultural and other low-wage workers. Their most common legal concerns pertain to their employment (wage and hour and workplace safety issues) and their housing; many clients also consult CRLA for advice concerning spousal and child abuse issues. Many clients consult CRLA confidentially, knowing full well that if their employer, their landlord or their abusive spouse became aware that they are seeking advice about their rights, they would suffer immediate retaliation, such as firing or eviction, and quite possibly physical harm. Information that a particular person (client name) consulted CRLA on a particular date (date of representation) regarding a particular kind of issue (problem code) with respect to a particular employer, landlord or family member (adverse party) is more than enough information to infer the particular client's specific motivation for the consultation, and thus this information is privileged in any circumstance in which the consultation was confidential and not otherwise

disclosed. *See, e.g., In re Osterhoudt*, 722 F.2d 591, 593-94 (9th Cir. 1983); *United States v. Hodge & Zweig*, 548 F.2d 1347 (9th Cir. 1977) (Kennedy, J.).

CRLA estimates that literally thousands out of the roughly 39,000 sets of confidential client information OIG has demanded meet these criteria, and fall within the attorney-client privilege. All of those privileged consultations and more are also protected by the clients' rights of privacy, and CRLA's corresponding duties of confidentiality, under state law. The California Constitution grants each CRLA client a right of privacy protected to consult an attorney confidentially, and the law governing the professional responsibilities of CRLA and the attorneys it employs imposes strict obligations "[t]o maintain inviolate the confidence, and at every peril to [themselves] to preserve the secrets, of [their] client[s]." Cal. Bus. & Prof. Code §6068(e)(1). This duty encompasses *any* information imparted by the client in confidence, whether or not it would fall within the scope of the attorney-client privilege. Specifically, independent of the attorney-client privilege, California lawyers have a duty to preserve the confidentiality of the client's identity and consultation in the absence of a "compelling" showing on the part of the requesting party of the *need* for the disclosure, including considering the "availability of alternative, less intrusive means for obtaining the requested information." *E.g., Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004-06 (2000).

When CRLA raised these concerns with the OIG, its response was stark and disconcerting: OIG took the uncompromising position that CRLA and its California-licensed attorneys were obligated to disregard their clients' rights of privacy and confidentiality under state law, and their corresponding legal and ethical duties to respect and protect those client rights, because the OIG was not bound by them. And while OIG conceded that any material subject to the federal attorney-client privilege (and the federal attorney work-product doctrine) could be withheld, it

demanded that CRLA go through *each* of the 39,000 client files it had demanded, one by one, and assert any privilege objection specifically on a client-by-client basis depending on the factual circumstances that each file disclosed.

At LSC's behest, CRLA undertook a detailed study at considerable effort and expense, including training reviewers and undertaking a review of a sample of client files in three of its offices, to estimate the time, effort and cost involved in a privilege review of the 39,000 client files in the fashion the OIG demanded. The study estimated that thousands of the clients' identities would likely be found to be protected by the attorney-client privilege; and that it would consume over 3,200 hours of attorney time (at only a few minutes per file!) as well as 4,800 to 7,800 hours of staff time, hundreds of thousands of dollars, and approximately a year and a half to complete the review the OIG demanded. The study concluded that, owing to the lean staffing and geographical dispersion of CRLA's service offices, file review of the scope and detail the OIG demanded would substantially disrupt the operation of most of CRLA's service offices for a significant period of time, and shut a number of them down entirely for weeks or months.[2]

Mindful that Congress has directed the Inspector General to exercise his investigative powers (including the power to discover "client names" not protected by the attorney client privilege), "*in a manner* consistent with attorneys' professional responsibilities" (42 U.S.C. §2996e(b)(3) (emphasis added)), CRLA repeatedly asked in the course of its discussions with the OIG what created the need for so much information about so many people. The OIG refused to say. For months CRLA requested an understanding of the thrust and basis for OIG's

---

[2]This information provides some context to the Petition's allegations that "This document request is not unduly burdensome," and is "limited in both scope and time duration." Petition ¶18.

investigation so that it could explore with the OIG whether the number of clients, the amount or type of information or the manner in which it was produced could be adjusted to reduce the burden on CRLA or preserve any of its clients' privacy. The OIG consistently refused to discuss these issues in any respect. CRLA repeatedly asked for the OIG's cooperation in developing protocols for inspection and production that would allow CRLA to provide all the information requested less expensively and more efficiently while preserving the confidential and privileged character of that information, which CRLA had successfully accomplished with other Inspectors General in past audits and investigations on a number of occasions. This Inspector General refused to discuss it, stating simply that, in essence, he has the power to make the demands he has made, and is not required to give any reason, justification or accommodation.[3]

Even after CRLA supplied its detailed studies on the time and resources that would be required to review the demanded files for privilege, the OIG continues steadfastly to refuse to discuss these issues. CRLA is informed that LSC management asked the OIG for comment on CRLA's analysis of the back- (and bank-) breaking effort that would be required. CRLA is informed that OIG's response was that, although the OIG generally agreed with CRLA's review protocols and legal analysis of the privilege that it had been supplied, OIG contended that CRLA had "misapplied" the attorney-client privilege to its sample, and that OIG would not discuss the amount of time and resources necessary to accomplish the full privilege review until CRLA applied the privilege correctly. When LSC requested the OIG's guidance on how the OIG

---

[3] As an indication of the absurd degree to which this has progressed, the OIG even insisted that the confidential information concerning clients' *spouses* it had demanded was an indispensable feature of its investigation, but has refused to this day to explain how that could be the case.

believed the privilege should be applied in these circumstances, the OIG declined to provide it. The OIG has been similarly recalcitrant in discussing any sensible means of protecting CRLA's privileged internal work product and litigation strategy materials.

The next CRLA heard of the issue was receipt of a formal OIG subpoena for all of the same materials previously demanded, including the very substantial volumes of information CRLA had already supplied in response to the OIG's administrative document and information demands. The OIG continues to refuse to discuss any basis on which CRLA's clients' rights or its lawyers' legal and ethical duties could be accommodated, or by which the OIG's requests or the review and protection of the material that even the OIG concedes is privileged from disclosure could be narrowed, focused or simplified to reduce burden on the program and disruption to client service.

## ARGUMENT

### I.
### SCHEDULING AT THIS TIME SHOULD BE LIMITED TO CALENDARING APPEARANCES BY INTENDED INTERVENORS, WITH MERITS BRIEFING DEFERRED UNTIL THE IDENTITY AND INTERESTS OF THE PARTIES TO THIS MATTER ARE RESOLVED.

For reasons that no doubt are at least in part apparent from the foregoing, CRLA intends to oppose the OIG's Petition on its merits. The OIG's Motion suggests that CRLA submit opposition on the merits within 21 days after issuance and service of the Court's Order to Show Cause, with 14 days for the OIG to reply and hearing to be set thereafter.

The schedule the OIG suggests is precipitous and will not accommodate the needs of all interested parties who wish and have a right to appear and be heard. Specifically, CRLA has been contacted by Morrison & Foerster LLP, which has informed CRLA that it has been retained

by a number of legal aid attorneys employed by CRLA. Their counsel has informed CRLA that these attorneys intend to intervene in these proceedings to determine their individual legal and ethical duties (and their clients' rights of privacy, and of confidential and privileged communications with their counsel), which rights and duties they contend are in conflict with the OIG's demands. As noted above, CRLA is also informed that other persons affected by these proceedings, and organizations representing their interests, may seek to participate by intervening or appearing as *amici curiae*.[4]

No exigent need on the Inspector General's part for the disputed materials subject to subpoena has been stated in his moving papers, and none exists to CRLA's knowledge. In order to allow potential parties fair opportunity to appear before the Court on these important issues in which they claim a vital interest, CRLA respectfully requests that the only scheduling order or order to show cause that the Court issue at this time be one that gives any potential intervenor 45 days to file a motion to intervene under Federal Rule 24, or whatever other motion to participate in these proceedings such putative parties deem appropriate. Petitioners should be given reasonable time to oppose and the potential intervenors reasonable time to reply; we suggest 21 and 14 days respectively, with a hearing as the Court may direct.

Once the identity of the parties and the scope of the issues is resolved in connection with the motions to intervene, the Court should set a reasonable schedule for briefing and hearing on the merits having heard from the parties the Court has allowed after those motions to appear and be heard on the merits. CRLA will seek to coordinate its briefing with any party authorized to

---

[4] CRLA is represented by a California law firm and is still seeking local counsel in the District of Columbia. California counsel begs the Court's indulgence if we have failed to observe any tenet of local practice or rule, including in the form or substance of these papers.

intervene as a Respondent in an effort to brief fully but without repetition the difficult and important issues of administrative procedure and attorney duties and ethics these proceedings present.

## II.
## THE COURT SHOULD NOT ENTER THE THIRD PARAGRAPH OF PETITIONERS' PROPOSED ORDER TO SHOW CAUSE, SETTING THE SCOPE OF THE MERITS HEARING AND EVIDENTIARY STANDARDS FOR OPPOSITION.

The third paragraph of Petitioners' proposed Order to Show Cause states:

IT IS FURTHER ORDERED that, [1] unless the Court determines otherwise, all issues raised by the Petition and supporting papers, and any opposition to the Petition, will be considered at the hearing on the Petition, and [2] the allegations of said Petition shall be deemed admitted unless controverted by a specific factual showing. [Bracketed numbers added for convenient reference]

Whatever the Court may elect to do with the other relief CRLA and Petitioners respectively request, these particular provisions are unnecessary and improper. The Court has full discretion to consider whichever issues it deems appropriate at the times and in the order it considers best, just as it has the power to determine which issues the Petition does or does not raise. Clause [1] of the quoted paragraph thus is completely unnecessary. Similarly, the law sets the standard for the evidentiary or legal force of any allegation in the Petition, whether Petitioner is obligated to support any such allegation, and what the standard is for the pleading and evidentiary response necessary for CRLA or any Respondent in Intervention to contest any such allegation. Clause [2], with its suggested standard for deemed admissions, is also altogether unnecessary (if not downright erroneous).

CRLA accordingly respectfully requests that whatever scheduling or show-cause order the Court may issue should omit the paragraph quoted above.

## CONCLUSION

For all of the foregoing reasons, Respondent CRLA respectfully requests that the Court deny Petitioners' Motion for an Order to Show Cause to the extent necessary to order (1) that any potential intervenors file their motions to intervene (or similar applications to participate in these proceedings on whatever ground they wish to assert) on or before 45 days from the date of the Court's Order; with 21 days for Petitioners to oppose any such motions and 14 days for Potential Intervenors to reply; (2) that the Court defer scheduling briefing and hearing on the merits of the Petition until after any motions to intervene or for similar relief are determined, and then set a schedule appropriate in light of the identity of the parties and the scope of the issues; and (3) that any order the Court issue not include the terms stated the third paragraph of Petitioners' proposed Order to Show Cause.

Respectfully,

MARTIN R. GLICK (California State Bar No. 40187)
BERNARD A. BURK (California State Bar No. 118083)
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN
A Professional Corporation

By: _____
      Bernard A. Burk

Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:   415/434-1600
Facsimile:   415/217-5910
E-mail: bburk@howardrice.com

*Attorneys For Respondent California Rural Legal Assistance, Inc.*

## DECLARATION OF WILLIAM HOERGER

I, William Hoerger, declare as follows:

1. I am an attorney licensed to practice in the State of California. I am one of the four Directors of Litigation, Advocacy and Training at California Rural Legal Assistance, Inc. ("CRLA"), a senior managerial and supervisorial position. After service as a public defender and, later, in the general counsel's office of the California Agricultural Labor Relations Board, I have been a legal aid attorney employed by CRLA for nearly 25 years. I have been the CRLA managers principally responsible for interacting with the Legal Services Corporation ("LSC") Office of Inspector General ("OIG") in connection with the investigation the OIG began in December 2005, and with responding to the OIG's requests for documents and information from CRLA in connection with that investigation, including but not limited to the OIG's administrative subpoena at issue in these proceedings.

2. I have personal knowledge of each of the facts stated in the above Response, except those stated on information and belief, and as to those I believe them to be true. If called upon to do so I could and would competently so testify.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this Declaration was executed at San Francisco, California on April 9, 2007.

WILLIAM HOERGER

## PROOF OF SERVICE BY MAIL AND EMAIL

I am employed in the City and County of San Francisco, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is Three Embarcadero Center, 7th Floor, San Francisco, California 94111-4024.

I am readily familiar with the practice for collection and processing of documents for mailing with the United States Postal Service of Howard Rice Nemerovski Canady Falk & Rabkin, A Professional Corporation, and that practice is that the documents are deposited with the United States Postal Service with postage fully prepaid the same day as the day of collection in the ordinary course of business.

On April 9, 2007, I served the following document(s) described as RESPONSE AND PARTIAL OPPOSITION OF RESPONDENT CALIFORNIA RURAL LEGAL ASSISTANCE, INC. TO PETITIONERS' MOTION FOR ORDER TO SHOW CAUSE; DECLARATION OF WILLIAM HOERGER IN SUPPORT; [PROPOSED] SCHEDULING ORDER on the persons listed below by email to the email address below, and by placing the document(s) for deposit in the United States Postal Service through the regular mail collection process at the law offices of Howard Rice Nemerovski Canady Falk & Rabkin, A Professional Corporation, located at Three Embarcadero Center, 7th Floor, San Francisco, California, to be served by mail addressed as follows:

Peter D. Kiesler
Jeffrey A. Taylor
Arthur R. Goldberg
Helen H. Hong
Department of Justice
20 Massachusetts Ave., N.W.
Room 6107
Washington, D.C. 20530
E-mail helen.hong@usdoj.gov

Laurie Tarantowicz
LSC-Office of Inspector General
3333 K. Street, NW, 3rd Floor
Washington, D.C. 20007

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on April 9, 2007.

_____
Bernard A. Burk

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>and<br><br>KIRT WEST,<br>INSPECTOR GENERAL OF THE<br>LEGAL SERVICES CORPORATION,<br>3333 K STREET, NW, 3RD FLOOR,<br>WASHINGTON, D.C. 20007<br>Petitioners,<br>v.<br>CALIFORNIA RURAL LEGAL<br>ASSISTANCE, INC.,<br>631 HOWARD ST., #300<br>SAN FRANCISCO, CA 94105<br><br>Respondent. | Misc. No. 1:07-MC-00123 |

### [Proposed] SCHEDULING ORDER

Petitioners' Motion for an Order to Show Cause in the above-captioned matter and Respondent's Partial Opposition thereto having come before the Court, and good cause appearing,

**IT IS HEREBY ORDERED** that any motion by any interested party to intervene in these proceedings (or participate as a party on any other basis), shall be filed and served within 45 days of the date of this Order;

**IT IS FURTHER ORDERED** that Petitioners and Respondent shall have 21 days from service of any motion to intervene (or for comparable relief) to oppose or otherwise respond thereto; and the moving party shall have 14 days thereafter to reply;

**IT IS FURTHER ORDERED** that the parties will appear and be heard on any motion or motions to intervene (or for comparable relief) before the Court on _____, 2007 at _____;

**IT IS FURTHER ORDERED** that briefing and hearing on the merits of Petitioners' Petition shall be deferred until the identity of the parties participating and the scope of the issues is resolved by the motions referred to above;

Petitioners' Motion for Order to Show Cause is otherwise **DENIED.**

Dated: _____, 2007

                                                                  _____
                                                                  UNITED STATES DISTRICT JUDGE