IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

RECEIVED

APR 1 3 2007

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES OF AMERICA,

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION,
3333 K STREET, NW, 3RD FLOOR,
WASHINGTON, D.C. 20007

          Petitioners,

   v.

CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.,
631 HOWARD ST., #300
SAN FRANCISCO, CA  94105

         Respondent.

Misc. No. 1:07-MC-00123

APPLICATION OF RESPONDENT
CALIFORNIA RURAL LEGAL ASSISTANCE
TO MODIFY ORDER TO SHOW CAUSE FILED APRIL 10, 2007

## INTRODUCTION

Respondent California Rural Legal Assistance, Inc. ("CRLA") respectfully requests that the Court modify the Order to Show Cause signed by the Court on April 6, 2007 and filed on April 10. There are substantial and serious reasons why a schedule materially different from the one proposed by Petitioners is appropriate in this matter, and those reasons were timely presented to the Court in a Response to Petitioners' Motion for Order to Show Cause. A copy of that Response is attached hereto as Exhibit A. But apparently the Court did not see Respondent's Response before entering Petitioners' form of Order. Respondent requests that the Court consider the reasons stated in Respondent's attached Response and modify its Order to Show Cause accordingly.

## A.    RESPONDENT FILED A TIMELY RESPONSE TO PETITIONERS' MOTION FOR AN ORDER TO SHOW CAUSE.

Petitioners filed their Petition to enforce an administrative subpoena issued by the Office of the Inspector General ("OIG") of the Legal Services Corporation ("LSC"), along with a Motion for an Order to Show Cause setting a briefing schedule on the merits, on March 26, 2007. On April 9, CRLA filed the attached Response. CRLA believes the Response to be timely filed under Local Rule 7(b) (giving 11 days to respond to a motion) and Federal Rule of Civil Procedure 6(e) (adding three days to the time to respond when, as here, service is made by mail). On Friday, April 6, the Court (perhaps considering Petitioners' Motion unopposed) signed Petitioners' form of Order to Show Cause. The Order was not filed until April 10. At the time the Court signed the Order to Show Cause, it could not have seen CRLA's Response to the Motion, which under CRLA's reading of the Local Rules was not due, and was not filed, until the following Monday, April 9.

If CRLA has misunderstood the Court's rules regarding the time for response, we are deeply sorry. CRLA believed the filing timely as we read the Court's rules, and would have

filed even sooner had we been able to secure and retain local counsel sooner.[1]  We respectfully

urge the Court to consider the attached Response, and modify the Order to Show Cause for the

reasons set out therein.

**B.    THERE ARE SUBSTANTIAL AND SERIOUS REASONS WHY A
SCHEDULE DIFFERENT FROM THE ONE IN THE ORDER TO
SHOW CAUSE SHOULD BE ADOPTED.**

The Order to Show Cause calls for CRLA's response to the Petition on the merits within

21 days after the date of the Order, with Petitioners' to reply within 14 days after that.  For both

substantive and procedural reasons set out at greater length in the attached Response, this is an

inappropriate schedule.

*The matter is legally and factually complex, and there is no practical need to accelerate*

*consideration of the merits.*  In a "Response to CRLA's Request for a Delayed Briefing

Schedule" filed Thursday (April 12), the OIG without explanation describes the issues presented

in these proceedings as "straightforward," but they are anything but that.  As set out in more

detail in the attached Response, the Petition seeks to enforce an administrative subpoena that

demands (among other things) confidential client identity and other personal information

concerning over 39,000 legal aid clients served by nearly two dozen CRLA offices scattered

throughout the State of California.  The subpoena is part of an "investigation" instigated by

commercial interests against which CRLA and its indigent clients regularly litigate in the

California courts.  Significant amounts of the information sought is protected by the attorney-

client privilege as well as state-law rights of client privacy and attorney confidentiality, and the

process of sorting the protected from the unprotected information would itself be ruinously

---

[1]Although CRLA had not been able to retain local counsel in time to file its Response,
CRLA now is in the process of associating (subject to such counsel's clearing conflicts and other
formalities that will take some additional time) local counsel with Kirkland & Ellis LLP resident
in the District of Columbia, who will assist in preparation and presentation of all future filings.

expensive and paralyze the legal aid program.  The OIG has refused to discuss any means of narrowing the subpoena's scope or developing protocols that could protect the security of such information.  Substantial and difficult legal and factual issues abound concerning (inter alia) the burden the Inspector General may impose on LSC grantees in this context and his duties reasonably to mitigate that burden; the scope and application of the attorney-client privilege and the state-law rights and duties just mentioned; the interpretation of Legal Services Corporation legislation and regulations regarding the extent of the power of LSC and the OIG to compel disclosure of such privileged information; and the extent to which the United States Constitution would limit the effect of any statute or regulation that was interpreted to authorize such intrusion in the realm of clients' rights and lawyers' duties traditionally regulated by state law.

There is no reason for urgency stated in the Petition to Enforce, and in fact there is none. In its April 12 filing, the OIG professes for the first time some impatience based on the fact that it "has been requesting the disputed records for fourteen months." OIG Response at 1.  But that is precisely the point.  For over a year, CRLA has promptly, firmly and repeatedly stated its position on the issues presented here, and the OIG has bided its time.  No new need has arisen. As noted in the attached Response, OIG first demanded the disputed privileged materials from CRLA in March 2006.  While CRLA produced substantial volumes of nonprivileged responsive documents and electronic data, it also made its objections known immediately.  CRLA stated and explained those objections in detail in a letter dated April 14, 2006 (*see* Exhibit B) and, after discussion on a number of issues related to the OIG's requests, on August 4, 2006 CRLA unequivocally reconfirmed the position to which it has adhered to this day regarding its obligations to withhold privileged and confidential materials and regarding the inappropriate burden to review tens of thousands of files for privilege for no substantial reason.  *See* Exhibit C. OIG did not even serve the subpoena here at issue for another two and a half months after that, in October 2006.  CRLA promptly served detailed objections to the OIG's subpoena, once again

raising all of the issues here in dispute, in November 2006. The five months that passed after those objections were served before the OIG got around to filing these enforcement proceedings tells the Court everything it needs to know about the situation's purported exigencies.[2]

In short, regardless of the procedural complications created by the potential intervenors discussed in the next paragraph, the complex legal and factual subject matter at issue and lack of any practical urgency dictates a more deliberate briefing schedule. Even without intervention motions, CRLA respectfully suggests 60 days to respond to the Petition, with 30 days for Petitioner to reply.

*Impending motions for intervention should be resolved before the merits are briefed.* In addition to the foregoing, any schedule for briefing on the merits is procedurally premature. As related in the attached Response, there will be other interested parties who will be seeking to intervene in these proceedings. CRLA has been contacted by a national law firm representing legal aid attorneys employed by CRLA who wish to appear and be heard independently of their employer, and will be moving to intervene. And since the Response was filed, CRLA has been contacted by a separate national law firm that is clearing conflicts and exploring its ability to represent individual legal aid clients and organizations representing their interests, who also wish to appear and be heard in these proceedings regarding the effects of the OIG's activities on their rights. As the attached Response suggests, the Court should first entertain these motions to intervene, and decide the identity and interests of all the parties before the Court in this matter.

The OIG's April 12 Response says it will "evaluate and, if necessary, oppose" these motions to intervene, and then argues that such motions are in its view unmerited and

---

[2]OIG also professes urgency in reporting to the congressional subcommittee overseeing federally funded legal services. OIG Response at 1-2. The OIG presented its Report to the subcommittee in September 2006. Since then, the leadership and membership of the subcommittee has changed significantly as a result of the 2006 elections. OIG does not suggest that the subcommittee has expressed any need or desire for any additional matter on this subject, nor to our knowledge has it done so.

unnecessary because the intervenors' interests are "adequately represented" by CRLA. OIG

Response at 2-3. This amounts to opposing these motions to intervene before the moving parties

or their legal and factual showings have come before the Court.

In opposing these as-yet unmade motions by parties who have not yet appeared, the OIG

also does not fairly state the law under Rule 24. The OIG confuses the fact that CRLA and the

potential intervenors share some concerns in common (which is always true in situations where

intervention is sought) with "adequate representation" of the intervenors' interests precluding

intervention under Rule 24. In fact, the interests of CRLA and the intervenors may differ

materially. With respect to the employee legal aid lawyers, it is important to note that under

California law only individual lawyers and not law firms are subject to professional discipline.

*See* Cal. Rule of Professional Conduct 1-100 (stressing that the disciplinary rules govern

individual "members" of the State Bar); *Frye v. Tenderloin Housing Clinic, Inc.*, 38 Cal. 4th 23,

52 (2006) (noting obligation of individual lawyers to adhere to their personal duties despite any

conflict with the interests of the nonprofit legal aid organization for which they work).

Individual attorneys must preserve the confidences of their clients on pain of disbarment or other

professional discipline. *See* Cal. Bus. & Prof. Code §6068(e); Cal. Rule of Professional Conduct

3-100. This distinguishes their interests from those of their LSC-grantee employer (here, CRLA)

which, according to the OIG, has affirmative obligations to LSC and OIG to violate such client

confidences in precisely the circumstances presented here, thereby potentially subjecting its

employee attorneys to professional discipline.

Similarly, the legal aid clients who will seek to intervene to protect their interests have

their own rights and perspectives distinct from CRLA's. For this reason, federal courts regularly

let clients intervene as of right under Rule 24(a) in proceedings in which their lawyers are

subpoenaed for information about them. *E.g.*, *In re Grand Jury Proceedings*, 575 F. Supp. 197

(N. D. Ohio 1983) (client's intervention granted as of right to protect information subpoenaed

from lawyer, including the client's confidential identity). *See also In re Grand Jury Subpoena*, 274 F.3d 533, 570 (1st Cir. 2001) (company's outside counsel and former officers who counsel had represented in both their personal and corporate capacities allowed to intervene as of right to protect information sought in subpoena to company where intervenors had a colorable claim of attorney-client and work product privilege as to information sought).[3]

But the principal point here is that—though we are told that these motions to intervene will assuredly be made—they haven't been made *yet*, and it thus is premature for anyone to be making prejudgments about what parties are properly before the Court and what interests they will represent. If briefing on the merits of the important questions presented in these proceedings is to be orderly and fully informed, these threshold questions about the identity and interests of parties rationally ought to be resolved first.

CRLA suggested 45 days to allow intervenors to retain counsel and come forward with their motions, with 21 days for Petitioners to oppose and 14 days for intervenors to reply. Only after that process is complete should the Court set a schedule for briefing and hearing on the merits. This will allow complete and coordinated briefing on all the issues and interests presented.

---

[3]Moreover, under Rule 24(b)(2), the Court may grant permissive intervention "when an applicant's claim or defense and the main action have a question of law or fact in common" so long as there is no undue delay or prejudice to the parties. *E.g., McNeil v. New York City Hous. Auth.*, 719 F. Supp. 233, 250 (S.D.N.Y. 1989).

**CONCLUSION**

For all of the foregoing reasons, the Court should consider the attached Response, and modify the Order to Show Cause filed April 10, 2007 as requested.

DATED: April 12, 2007.                    Respectfully,

                                          MARTIN R. GLICK (California State Bar No. 40187)
                                          BERNARD A. BURK (California State Bar No. 118083)
                                          HOWARD RICE NEMEROVSKI CANADY FALK &
                                              RABKIN
                                          A Professional Corporation

                                          By: _____
                                                  BERNARD A. BURK

                                          Three Embarcadero Center, 7th Floor
                                          San Francisco, California  94111-4024
                                          Telephone:    415/434-1600
                                          Facsimile:    415/217-5910
                                          E-mail: bburk@howardrice.com

                                          *Attorneys For Respondent*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on April 13, 2007, a true and correct copy of the

foregoing APPLICATION OF RESPONDENT CALIFORNIA RURAL LEGAL ASSISTANCE

TO MODIFY ORDER TO SHOW CAUSE FILED APRIL 10, 2007 along with attached exhibits

was served electronically and by mail to counsel for petitioners United States of America and

Kirt West, Inspector General of the Legal Services Corporation, Arthur R. Goldberg and Helen

Hong, U.S. Department of Justice Civil Division, 20 Massachusetts Avenue, NW, Room 7104,

Washington, D.C. 20530, at arthur.goldberg@usdoj.gov and helen.hong@usdoj.gov.

/s/ Bernard A. Burk
BERNARD A. BURK
Howard Rice Nemerovski Canady Falk & Rabin,
    A Professional Corporation
Three Embarcadero Center, 7th Fl.
San Francisco, CA 94111-4024
bburk@howardrice.com

# EXHIBIT A



RECEIVED
U.S. DISTRICT COURT
DISTRICT OF COLUMBIA

2007 APR -9 PM 6: 19

NANCY M.
MAYER-WHITTINGTON
CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION,
3333 K STREET, NW, 3RD FLOOR,
WASHINGTON, D.C. 20007
Petitioners,

v.

CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.,
631 HOWARD ST., #300
SAN FRANCISCO, CA 94105

Respondent.

Misc. No. 1:07-MC-00123 (EGS)

RESPONSE AND PARTIAL OPPOSITION OF RESPONDENT
CALIFORNIA RURAL LEGAL ASSISTANCE, INC. TO
PETITIONERS' MOTION FOR ORDER TO SHOW CAUSE;
DECLARATION OF WILLIAM HOERGER IN SUPPORT

Respondent California Rural Legal Assistance, Inc. ("CRLA") here responds to and opposes in part the Motion of Petitioners United States and Legal Services Corporation Inspector General Kirt West for an Order to Show Cause. Petitioners' Motion properly defers addressing the merits of their Petition for enforcement of the Office of Inspector General's ("OIG's") administrative subpoena to CRLA, and (with one possible exception discussed below) seeks only to set a briefing and hearing schedule on the merits of the Petition. CRLA also wishes to see a rational schedule set for briefing and a hearing on the merits. But this schedule should take into account the intended appearance and participation of intervenors who are vitally interested in those merits. Specifically, CRLA has been contacted by Morrison & Foerster LLP, which has been retained by a number of individual legal aid attorneys employed by CRLA. We are informed by their counsel that these employee legal aid attorneys will seek to intervene in these proceedings to determine their personal legal and ethical duties (as well as their clients' rights of privacy, confidential consultation with counsel, and attorney-client privilege), which they contend are in conflict with the terms of the OIG's subpoena and the instant Petition to enforce it. In addition, CRLA anticipates that other affected persons, and organizations representing their interests, may seek permission to participate as intervenors or *amici curiae* in connection with the novel, difficult and important issues raised in this proceeding.

For the reasons set forth below, CRLA respectfully requests that the Court allow 45 days for potential intervenors to present their motions to intervene, with reasonable time for Petitioners to oppose and intervenors to reply. CRLA further requests that, to provide for complete and orderly presentation of the issues by all parties whose interests properly should be before the Court, briefing and hearing on the merits be scheduled after the identity and interests of the intervenors are established.

## BACKGROUND

CRLA supplies this brief background summary to provide context for the logistical and scheduling determinations the Court is being asked to make.

California Rural Legal Assistance, Inc. is a private, California nonprofit corporation, founded in 1966 to provide a full range of free legal assistance and representation to low-income communities throughout California. It provides legal services to indigent agricultural and other low-wage workers and their families through a network of 23 local offices located throughout California over an area that stretches some 750 miles from the Mexican border to the northern Sacramento Valley. CRLA's 23 local offices include 6 Migrant Project and 17 Basic Program facilities. About 60% of CRLA's annual budget is funded by the Legal Services Corporation ("LSC"). The LSC grant charges CRLA's Basic Program offices with serving all or parts of 16 counties with a poverty population of approximately 555,000. CRLA also has the sole Migrant Project in the state of California.

The subpoena at issue here is part of the second sprawling and protracted OIG "investigation" of CRLA during the past 5 years. The previous one (classified as a "program integrity audit") lasted a record 40 months from notice to closure, and produced no finding of any significant violation of federal law or regulation. This is also the third investigation of CRLA (including both OIG inquiries) in the last 6 years prompted by complaints from members of Congress from California's Central Valley on behalf of the California dairy industry.[1]

---

[1]This is perhaps unsurprising, as CRLA's advocacy focusing on the California dairy industry's widespread illegal treatment of its low-wage work force has been increasing since 2000. In the past year and a half, for example, CRLA advocates have brought litigation against individual California dairies that has resulted in more than $1 million in recovery of unpaid

The OIG's current investigation began on December 14, 2005, when CRLA received a telephone call stating that the OIG intended to conduct staff interviews and records review in CRLA's Modesto, California Basic Program Office during the week before Christmas. When CRLA management inquired of senior OIG staff what issue or complaint was being investigated, they refused to say, a tactic unprecedented in CRLA's many years of LSC and OIG regulation. CRLA management nevertheless cooperated fully in coordinating the visit with staff's holiday travel plans and in arranging the interviews.

On March 16, 2006, the OIG served an administrative request for information and documents of astonishing breadth. In addition to demands for documentation and time records concerning numerous CRLA cases, projects and matters, the eight single-spaced pages of demands sought a wide range of documentation concerning CRLA's substantive litigation strategy development in numerous areas CRLA has targeted as "priority" areas of special interest to its indigent client base, substantial amounts of which were subject to federal and state work-product doctrine. (Needless to say, these demands are particularly disconcerting given that this investigation is now known to have been initiated at the request of the Chair of the Congressional Dairy Caucus, whose constituents are regular litigation adversaries of CRLA.) In addition, the request demanded that CRLA produce clients' names, addresses, telephone numbers, referral source, dates of representation, "problem codes" (that is, the subject matter about which the client requested CRLA's assistance), financial information, adverse parties, and even identifying information concerning the clients' spouses for *every* client to whom CRLA had provided legal

wages for hundreds of dairy workers for violations including failure to pay minimum wage, failure to pay overtime, failure to provide required rest and meal breaks, failure to maintain time and payroll records; and failure to provide legally required work equipment.

-3-

services *in any of its 22 service offices statewide at any time during the prior three years*, which amounted to *over 39,000* client files.

CRLA responded to the administrative demand with a very substantial volume of material—over 6,000 pages of documents and many megabytes of electronic data and records. Over a thousand hours of CRLA management and senior attorney time was required to assemble and provide these materials. And although most of the client information OIG requested was provided promptly, the demand for client names along with the other client information that CRLA promptly and voluntarily supplied created a serious dilemma.

That dilemma arose because, in a legal aid practice such as CRLA's, this information would often convey the client's motivation for having confidentially sought legal advice, and thus comprise privileged information. As noted above, CRLA's client base includes many indigent agricultural and other low-wage workers. Their most common legal concerns pertain to their employment (wage and hour and workplace safety issues) and their housing; many clients also consult CRLA for advice concerning spousal and child abuse issues. Many clients consult CRLA confidentially, knowing full well that if their employer, their landlord or their abusive spouse became aware that they are seeking advice about their rights, they would suffer immediate retaliation, such as firing or eviction, and quite possibly physical harm. Information that a particular person (client name) consulted CRLA on a particular date (date of representation) regarding a particular kind of issue (problem code) with respect to a particular employer, landlord or family member (adverse party) is more than enough information to infer the particular client's specific motivation for the consultation, and thus this information is privileged in any circumstance in which the consultation was confidential and not otherwise

-4-

disclosed. *See, e.g., In re Osterhoudt*, 722 F.2d 591, 593-94 (9th Cir. 1983); *United States v. Hodge & Zweig*, 548 F.2d 1347 (9th Cir. 1977) (Kennedy, J.).

CRLA estimates that literally thousands out of the roughly 39,000 sets of confidential client information OIG has demanded meet these criteria, and fall within the attorney-client privilege. All of those privileged consultations and more are also protected by the clients' rights of privacy, and CRLA's corresponding duties of confidentiality, under state law. The California Constitution grants each CRLA client a right of privacy protected to consult an attorney confidentially, and the law governing the professional responsibilities of CRLA and the attorneys it employs imposes strict obligations "[t]o maintain inviolate the confidence, and at every peril to [themselves] to preserve the secrets, of [their] client[s]." Cal. Bus. & Prof. Code §6068(e)(1). This duty encompasses *any* information imparted by the client in confidence, whether or not it would fall within the scope of the attorney-client privilege. Specifically, independent of the attorney-client privilege, California lawyers have a duty to preserve the confidentiality of the client's identity and consultation in the absence of a "compelling" showing on the part of the requesting party of the *need* for the disclosure, including considering the "availability of alternative, less intrusive means for obtaining the requested information." *E.g., Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004-06 (2000).

When CRLA raised these concerns with the OIG, its response was stark and disconcerting: OIG took the uncompromising position that CRLA and its California-licensed attorneys were obligated to disregard their clients' rights of privacy and confidentiality under state law, and their corresponding legal and ethical duties to respect and protect those client rights, because the OIG was not bound by them. And while OIG conceded that any material subject to the federal attorney-client privilege (and the federal attorney work-product doctrine) could be withheld, it

-5-

demanded that CRLA go through *each* of the 39,000 client files it had demanded, one by one, and assert any privilege objection specifically on a client-by-client basis depending on the factual circumstances that each file disclosed.

At LSC's behest, CRLA undertook a detailed study at considerable effort and expense, including training reviewers and undertaking a review of a sample of client files in three of its offices, to estimate the time, effort and cost involved in a privilege review of the 39,000 client files in the fashion the OIG demanded. The study estimated that thousands of the clients' identities would likely be found to be protected by the attorney-client privilege; and that it would consume over 3,200 hours of attorney time (at only a few minutes per file!) as well as 4,800 to 7,800 hours of staff time, hundreds of thousands of dollars, and approximately a year and a half to complete the review the OIG demanded. The study concluded that, owing to the lean staffing and geographical dispersion of CRLA's service offices, file review of the scope and detail the OIG demanded would substantially disrupt the operation of most of CRLA's service offices for a significant period of time, and shut a number of them down entirely for weeks or months.[2]

Mindful that Congress has directed the Inspector General to exercise his investigative powers (including the power to discover "client names" not protected by the attorney client privilege), "*in a manner* consistent with attorneys' professional responsibilities" (42 U.S.C. §2996e(b)(3) (emphasis added)), CRLA repeatedly asked in the course of its discussions with the OIG what created the need for so much information about so many people. The OIG refused to say. For months CRLA requested an understanding of the thrust and basis for OIG's

---

[2]This information provides some context to the Petition's allegations that "This document request is not unduly burdensome," and is "limited in both scope and time duration." Petition ¶18.

investigation so that it could explore with the OIG whether the number of clients, the amount or

type of information or the manner in which it was produced could be adjusted to reduce the

burden on CRLA or preserve any of its clients' privacy. The OIG consistently refused to discuss

these issues in any respect. CRLA repeatedly asked for the OIG's cooperation in developing

protocols for inspection and production that would allow CRLA to provide all the information

requested less expensively and more efficiently while preserving the confidential and privileged

character of that information, which CRLA had successfully accomplished with other Inspectors

General in past audits and investigations on a number of occasions. This Inspector General

refused to discuss it, stating simply that, in essence, he has the power to make the demands he

has made, and is not required to give any reason, justification or accommodation.[3]

Even after CRLA supplied its detailed studies on the time and resources that would be

required to review the demanded files for privilege, the OIG continues steadfastly to refuse to

discuss these issues. CRLA is informed that LSC management asked the OIG for comment on

CRLA's analysis of the back- (and bank-) breaking effort that would be required. CRLA is

informed that OIG's response was that, although the OIG generally agreed with CRLA's review

protocols and legal analysis of the privilege that it had been supplied, OIG contended that CRLA

had "misapplied" the attorney-client privilege to its sample, and that OIG would not discuss the

amount of time and resources necessary to accomplish the full privilege review until CRLA

applied the privilege correctly. When LSC requested the OIG's guidance on how the OIG

---

[3]As an indication of the absurd degree to which this has progressed, the OIG even insisted
that the confidential information concerning clients' *spouses* it had demanded was an
indispensable feature of its investigation, but has refused to this day to explain how that could be
the case.

-7-

believed the privilege should be applied in these circumstances, the OIG declined to provide it.
The OIG has been similarly recalcitrant in discussing any sensible means of protecting CRLA's
privileged internal work product and litigation strategy materials.

The next CRLA heard of the issue was receipt of a formal OIG subpoena for all of the
same materials previously demanded, including the very substantial volumes of information
CRLA had already supplied in response to the OIG's administrative document and information
demands. The OIG continues to refuse to discuss any basis on which CRLA's clients' rights or
its lawyers' legal and ethical duties could be accommodated, or by which the OIG's requests or
the review and protection of the material that even the OIG concedes is privileged from
disclosure could be narrowed, focused or simplified to reduce burden on the program and
disruption to client service.

**ARGUMENT**

**I.**

**SCHEDULING AT THIS TIME SHOULD BE LIMITED TO
CALENDARING APPEARANCES BY INTENDED
INTERVENORS, WITH MERITS BRIEFING DEFERRED
UNTIL THE IDENTITY AND INTERESTS OF THE
PARTIES TO THIS MATTER ARE RESOLVED.**

For reasons that no doubt are at least in part apparent from the foregoing, CRLA intends to
oppose the OIG's Petition on its merits. The OIG's Motion suggests that CRLA submit
opposition on the merits within 21 days after issuance and service of the Court's Order to Show
Cause, with 14 days for the OIG to reply and hearing to be set thereafter.

The schedule the OIG suggests is precipitous and will not accommodate the needs of all
interested parties who wish and have a right to appear and be heard. Specifically, CRLA has
been contacted by Morrison & Foerster LLP, which has informed CRLA that it has been retained

-8-

by a number of legal aid attorneys employed by CRLA. Their counsel has informed CRLA that these attorneys intend to intervene in these proceedings to determine their individual legal and ·ethical duties (and their clients' rights of privacy, and of confidential and privileged communications with their counsel), which rights and duties they contend are in conflict with the OIG's demands. As noted above, CRLA is also informed that other persons affected by these proceedings, and organizations representing their interests, may seek to participate by intervening or appearing as *amici curiae*.[4]

No exigent need on the Inspector General's part for the disputed materials subject to subpoena has been stated in his moving papers, and none exists to CRLA's knowledge. In order to allow potential parties fair opportunity to appear before the Court on these important issues in which they claim a vital interest, CRLA respectfully requests that the only scheduling order or order to show cause that the Court issue at this time be one that gives any potential intervenor 45 days to file a motion to intervene under Federal Rule 24, or whatever other motion to participate in these proceedings such putative parties deem appropriate. Petitioners should be given reasonable time to oppose and the potential intervenors reasonable time to reply; we suggest 21 and 14 days respectively, with a hearing as the Court may direct.

Once the identity of the parties and the scope of the issues is resolved in connection with the motions to intervene, the Court should set a reasonable schedule for briefing and hearing on the merits having heard from the parties the Court has allowed after those motions to appear and be heard on the merits. CRLA will seek to coordinate its briefing with any party authorized to

--------

[4]CRLA is represented by a California law firm and is still seeking local counsel in the District of Columbia. California counsel begs the Court's indulgence if we have failed to observe any tenet of local practice or rule, including in the form or substance of these papers.

-9-

intervene as a Respondent in an effort to brief fully but without repetition the difficult and

important issues of administrative procedure and attorney duties and ethics these proceedings

present.

## II.
## THE COURT SHOULD NOT ENTER THE THIRD PARAGRAPH OF PETITIONERS' PROPOSED ORDER TO SHOW CAUSE, SETTING THE SCOPE OF THE MERITS HEARING AND EVIDENTIARY STANDARDS FOR OPPOSITION.

The third paragraph of Petitioners' proposed Order to Show Cause states:

IT IS FURTHER ORDERED that, [1] unless the Court determines otherwise, all issues raised by the Petition and supporting papers, and any opposition to the Petition, will be considered at the hearing on the Petition, and [2] the allegations of said Petition shall be deemed admitted unless controverted by a specific factual showing. [Bracketed numbers added for convenient reference]

Whatever the Court may elect to do with the other relief CRLA and Petitioners

respectively request, these particular provisions are unnecessary and improper. The Court has

full discretion to consider whichever issues it deems appropriate at the times and in the order it

considers best, just as it has the power to determine which issues the Petition does or does not

raise. Clause [1] of the quoted paragraph thus is completely unnecessary. Similarly, the law sets

the standard for the evidentiary or legal force of any allegation in the Petition, whether Petitioner

is obligated to support any such allegation, and what the standard is for the pleading and

evidentiary response necessary for CRLA or any Respondent in Intervention to contest any such

allegation. Clause [2], with its suggested standard for deemed admissions, is also altogether

unnecessary (if not downright erroneous).

CRLA accordingly respectfully requests that whatever scheduling or show-cause order the

Court may issue should omit the paragraph quoted above.

-10-

## CONCLUSION

For all of the foregoing reasons, Respondent CRLA respectfully requests that the Court

deny Petitioners' Motion for an Order to Show Cause to the extent necessary to order (1) that

any potential intervenors file their motions to intervene (or similar applications to participate in

these proceedings on whatever ground they wish to assert) on or before 45 days from the date of

the Court's Order; with 21 days for Petitioners to oppose any such motions and 14 days for

Potential Intervenors to reply; (2) that the Court defer scheduling briefing and hearing on the

merits of the Petition until after any motions to intervene or for similar relief are determined, and

then set a schedule appropriate in light of the identity of the parties and the scope of the issues;

and (3) that any order the Court issue not include the terms stated the third paragraph of

Petitioners' proposed Order to Show Cause.


Respectfully,

MARTIN R. GLICK (California State Bar No. 40187)
BERNARD A. BURK (California State Bar No. 118083)
HOWARD RICE NEMEROVSKI CANADY
FALK & RABKIN
A Professional Corporation

By: _____
                Bernard A. Burk

Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Telephone:    415/434-1600
Facsimile:    415/217-5910
E-mail: bburk@howardrice.com

*Attorneys For Respondent California Rural Legal Assistance, Inc.*

-11-

## DECLARATION OF WILLIAM HOERGER

I, William Hoerger, declare as follows:

1.    I am an attorney licensed to practice in the State of California. I am one of the four Directors of Litigation, Advocacy and Training at California Rural Legal Assistance, Inc. ("CRLA"), a senior managerial and supervisorial position. After service as a public defender and, later, in the general counsel's office of the California Agricultural Labor Relations Board, I have been a legal aid attorney employed by CRLA for nearly 25 years. I have been the CRLA managers principally responsible for interacting with the Legal Services Corporation ("LSC") Office of Inspector General ("OIG") in connection with the investigation the OIG began in December 2005, and with responding to the OIG's requests for documents and information from CRLA in connection with that investigation, including but not limited to the OIG's administrative subpoena at issue in these proceedings.

2.    I have personal knowledge of each of the facts stated in the above Response, except those stated on information and belief, and as to those I believe them to be true. If called upon to do so I could and would competently so testify.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct, and that this Declaration was executed at San Francisco, California on April 9, 2007.

WILLIAM HOERGER

-12-

## PROOF OF SERVICE BY MAIL AND EMAIL

I am employed in the City and County of San Francisco, State of California. I am over the age of eighteen (18) years and not a party to the within action; my business address is Three Embarcadero Center, 7th Floor, San Francisco, California 94111-4024.

I am readily familiar with the practice for collection and processing of documents for mailing with the United States Postal Service of Howard Rice Nemerovski Canady Falk & Rabkin, A Professional Corporation, and that practice is that the documents are deposited with the United States Postal Service with postage fully prepaid the same day as the day of collection in the ordinary course of business.

On April 9, 2007, I served the following document(s) described as RESPONSE AND PARTIAL OPPOSITION OF RESPONDENT CALIFORNIA RURAL LEGAL ASSISTANCE, INC. TO PETITIONERS' MOTION FOR ORDER TO SHOW CAUSE; DECLARATION OF WILLIAM HOERGER IN SUPPORT; [PROPOSED] SCHEDULING ORDER on the persons listed below by email to the email address below, and by placing the document(s) for deposit in the United States Postal Service through the regular mail collection process at the law offices of Howard Rice Nemerovski Canady Falk & Rabkin, A Professional Corporation, located at Three Embarcadero Center, 7th Floor, San Francisco, California, to be served by mail addressed as follows:

Peter D. Kiesler
Jeffrey A. Taylor
Arthur R. Goldberg
Helen H. Hong
Department of Justice
20 Massachusetts Ave., N.W.
Room 6107
Washington, D.C. 20530
*E-mail helen.hong@usdoj.gov*

Laurie Tarantowicz
LSC-Office of Inspector General
3333 K. Street, NW, 3rd Floor
Washington, D.C. 20007

I declare under penalty of perjury that the foregoing is true and correct. Executed at San Francisco, California on April 9, 2007.

Bernard A. Burk

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA,

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION,
3333 K STREET, NW, 3RD FLOOR,
WASHINGTON, D.C. 20007
Petitioners,
v.
CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.,
631 HOWARD ST., #300
SAN FRANCISCO, CA 94105

Respondent.

Misc. No. 1:07-MC-00123

[Proposed] SCHEDULING ORDER

Petitioners' Motion for an Order to Show Cause in the above-captioned matter and

Respondent's Partial Opposition thereto having come before the Court, and good cause

appearing,

IT IS HEREBY ORDERED that any motion by any interested party to intervene in these

proceedings (or participate as a party on any other basis), shall be filed and served within 45 days

of the date of this Order;

- 1 -

IT IS FURTHER ORDERED that Petitioners and Respondent shall have 21 days from service of any motion to intervene (or for comparable relief) to oppose or otherwise respond thereto; and the moving party shall have 14 days thereafter to reply;

IT IS FURTHER ORDERED that the parties will appear and be heard on any motion or motions to intervene (or for comparable relief) before the Court on _____, 2007 at

_____;

IT IS FURTHER ORDERED that briefing and hearing on the merits of Petitioners' Petition shall be deferred until the identity of the parties participating and the scope of the issues is resolved by the motions referred to above;

Petitioners' Motion for Order to Show Cause is otherwise **DENIED**.

Dated: _____, 2007

_____
UNITED STATES DISTRICT JUDGE

- 2 -

# EXHIBIT B

# CALIFORNIA RURAL LEGAL ASSISTANCE, Inc.



**Central Office**
631 Howard St., #300
San Francisco, CA 94105
Telephone 415.777.2752
Fax 415.543.2752
www.crla.org

José R. Padilla
*Executive Director*

Luis C. Jaramillo
*Deputy Director*

Ralph Santiago Abascal
*General Counsel*
**(1934-1997)**

William G. Hoerger
Ilene Jacobs
Michael Meuter
Cynthia L. Rice
*Directors of Litigation, Advocacy,
and Training*

Michael Meuter
*Migrant Unit Director*

Regional Offices

Coachella
Delano
El Centro
Fresno
Gilroy
Lamont
Madera
Marysville
Modesto
Monterey
Oceanside
Oxnard Basic
Oxnard Migrant
Paso Robles
Salinas
San Luis Obispo
Santa Barbara
Santa Cruz
Santa Maria
Santa Rosa
Stockton
Watsonville

LSC

[via Federal Express]
[via e-mail transmission]

April 14, 2005

Kirt West, Inspector General
Laurie Tarantowicz, Assistant Inspector General and Legal Counsel
LEGAL SERVICES CORPORATION
3333 K Street, N.W., 3rd Floor
Washington, DC 20007-3522

RE:   OIG compliance investigation of California Rural Legal Assistance, Inc.
      Data and Document Requests of March 16, 2005

Dear Mr. West and Ms. Tarantowicz:

Executive Director Jose Padilla has asked me to coordinate CRLA's response to your above-referenced Requests of March 16.

With respect to your **Data Request,** our responses are being sent to you today directly by Karen Smith, CRLA's Administrative Director of Training, Technology & Other Support, from her office in Stockton. These responses include:

— We are currently providing full responses to item I. A, B, C, D, E, F, G, I, L, M, N, O, P, Q, R, and S.
— We are currently providing partial responses to item I. J, H and K.
— We are also currently providing full responses to item II. A through Y without exception.
— We are also providing the information in the form you have requested under item III.

With respect to your **Document Request,** please find accompanying this letter five cartons of material responding to the large majority of your Requests. With respect to each enumerated request, you will find a cover sheet that I hope adequately apprises you as to what we are providing today; identifies where we are continuing to assemble information and documentation in anticipated further response(s); notes where we need additional clarification from you as to the scope or nature of your Request; and alerts you to requests that we are currently unable to respond to for various reasons ranging from failure to find any responsive information or records to the apparent existence of legal impediments to providing the requested information. Let me note that with respect to those items for which we continue to assemble information, we will do our best to forward this

Kirt West and Laurie Tarantowicz
April 14, 2006
Page 2

information as it becomes available.

As I am certain you can appreciate, your request for data and documents was very broad and has required very substantial time to amass the materials that we are providing today. We hope that we can work with you now to focus more specifically on the issues you are investigating, and that you can inform us of those so that we can respond directly to them.

It seems appropriate to review with you at this point the difficulties CRLA confronts under California law in responding to certain, limited portions of your Requests concerning client identities for files that were open during the period of 2003 through 2005. While we have previously discussed with your Office orally and in writing the underlying California law applicable to this issue, the majority of those discussions occurred during the tenure of Mr. West's predecessor. Additionally, Ms. Tarantowicz recently advised us informally that the OIG believes that the litigation before the District and Circuit Courts of Appeal in the Legal Services of New York City and the Bronx Legal Services cases confirms the OIG's position vis a vis access to client names. We welcome your appreciation of the value in discussing this issue; and we here further respond with our views concerning the different issues that appear to be raised under California law by some of your pending requests.

**California Law Generally Protects the Existence of Non-Publicly-Manifested Attorney-Client Relationships and the Identities of Those Clients**

For Mr. West's benefit, we begin by reviewing the applicable California law that generates our core concern. California's Business and Professions Code (statutory enactments of general applicability) mandate California attorneys to assert on behalf of their clients not only all privileges of which the clients are holders (*e.g.*, lawyer-client privilege as defined in California Evidence Code Sections 950-955), but additionally and separately "to maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." (*Id.*, § 6068, subd. (e)(1).) I emphasize that this is a statutory mandate and not a normative opinion of a private or professional association.

California appellate courts have ruled that the "confidence" and "secrets" protected under Section 6068, subd. (e)(1) include the identities of clients and the existence of attorney-client relationships unless and until the relationship is disclosed or manifested to third parties through, *e.g.*, the filing of a lawsuit, the open representation of the client in dealing with third parties, etc. (Hooser v. Superior Court (2000) 84 Cal.App.4th 997, 1005-1006 [101 Cal.Rptr.2d 341, 347]; People v. Speedee Oil Change Systems, Inc. (1999) 20 Cal.4th 1135, 1147-1148 [86 Cal.Rptr.2d 816, 825].) Again, it is appropriate to emphasize that application of this statutory mandate to matters of client identity and the existence of the attorney-client relationship is not a normative or

Kirt West and Laurie Tarantowicz
April 14, 2006
Page 3

disciplinary interpretation by a private, professional association but is the result of express
statutory mandates enacted by the California Legislature and interpretative rulings by the State's
appellate courts that have the direct force of law.  I note parenthetically that the attorney's duty
under those laws  to preserve these confidences continues after the attorney's services end.
(Speedee, supra, 20 Cal.4th, at 1147 [86 Cal.Rptr.2d, at 825].)

        It is also worth recalling here that not every "appearance" by counsel on behalf of a client
results in revelation of client identity.  This issue was discussed between us during your earlier
compliance audit of 2002-2004; it arises in the context of advocacy and proceedings before
certain federal and state administrative agencies.  Under the respective federal or state statutory
schemes that authorize those agencies and their respective administration of benefits or services,
the identities of recipients or persons using or claiming the services, and/or contesting
applicability of services or sanctions, is confidential and may not be made a matter of public
record nor otherwise disclosed.  In January 2002, we provided you a series of memoranda
explaining the confidentiality requirements and protections for clients participating in the
proceedings of some six agencies.   Our view was and remains that the confidentiality protections
afforded participants or recipients under those acts are not waived by their election to proceed by
counsel.

        Allow me to close this portion of my discussion with the reassurance that the concerns
articulated here do not arise only when the OIG is reviewing CRLA compliance.   CRLA
confronts these concerns and asserts our clients' statutory rights during the ordinary course of
providing legal assistance and representation.

**The "LSNYC" Litigation Did Not Address California's Obligations Upon Its Lawyers and
Protections of Its Residents Who Consult Lawyers**

        I address here the two cases which Ms. Tarantowicz recently, informally advised us
judicially establish in your view the OIG's authority for accessing all client names under any
circumstance except when client identity is protected by the federal attorney-client privilege.
(U.S. v. Legal Services for New York City (D.C. Cir. 2001) 249 F.2d 1077, affirming, (D.D.C.
2000) 100 F.Supp.2d 42 (collectively, the "LSNYC case"); Bronx Legal Services, et al. v. Legal
Services Corp. (2nd Cir. 2003) 64 Fed.appx. 310 [2003 U.S.App. LEXIS 10299], affirming,
(S.D.N.Y. 2002) 20002 U.S.Dist. LEXIS 14674 (collectively, the "Bronx case") .)  Our analysis
leads to the conclusion that these decisions neither address nor resolve the legal issues raised by
some of your Office's recent requests to CRLA.

        The OIG initially required LSC's New York City grantee, LSNYC, to provide a list of
case numbers and legal problem codes for cases closed during the relevant period.   LSNYC

Kirt West and Laurie Tarantowicz
April 14, 2006
Page 4

complied. Subsequently, the OIG required LSNYC to provide for the same period the list of case numbers and corresponding client names. LSNYC refused, arguing that compliance would allow the OIG to match client names and problem codes revealing the subject matters of clients' consultations and/or representations. LSNYC argued that these revelations would violate "attorney-client privilege" and "its attorneys' professional obligations". (LSNYC case, *supra*, 100 F.Supp., at 44.) The district court, in rejecting LSNYC's assertion of the attorney-client privilege relied upon the federal, common-law definition.

> The attorney-client privilege does not ordinarily protect the identity of a client, the amount of a fee, or the general purpose of the legal work performed. [citations omitted] Some courts . . . have recognized an "extremely narrow" exception to this rule, when disclosure would implicate the client in criminal wrongdoing, or when disclosure, in conjunction with information already provided, would be tantamount to revealing a "indubitably confidential communication[]. [citations omitted]

(*Id.*, 100 F.Supp., at 44-45; *aff'd*, 249 F.3d, at 1081-1082.) While it's unclear whether the D.C. Circuit relied on the federal attorney-client privilege, in any event it concluded that under applicable New York law and ABA standards, the privilege does not protect generalized information about the subject matter of the representation - although particularized, individual exceptions may be established. (LSNYC case, *supra*, 249 F.3d, at 1080, 1081-1082).

In the Bronx case, the recipient (an LSNYC subgrantee) asserted similarly that its attorneys were prohibited from producing the requested client names because, when coupled with the problem codes previously disclosed, the information constituted a "client secret" under Section 1200.198 of New York's Disciplinary Rules. (Bronx case, *supra*, 20002 U.S.Dist. LEXIS 14674, at 3rd page.) The New York district court rejected this claim on two grounds: *first*, the same Disciplinary Rule provided an exception permitting lawyers to reveal client secrets when "required by law or court order" (*id.*, *aff'd*, 2003 U.S.App LEXIS 10299, at 2nd page); and, *second*, the court, concluding that ABA ethical opinions do not have the force of law, rejected Bronx' reliance on an ABA ethical opinion in the grantee's assertion that the subject matter of the representation constituted a "client secret" within the meaning of the Disciplinary Rule. (*Id.*)

In our view, neither the LSNYC nor Bronx cases address the California situation for at least the following reasons. First, we are not concerned here with the scope of the attorney-client privilege (regardless of which jurisdiction's privilege is relevant), but with the separate California statutory mandate to protect the client's "confidence" and "secrets". Second, unlike the New York disciplinary rule, the California statutory mandate does not provide a comparable exception to the mandate. Third, again unlike the Bronx situation, application of the California

Kirt West and Laurie Tarantowicz
April 14, 2006
Page 5

statutory mandate to client identity and/or existence of the attorney-client relationship is not premised upon a normative or private opinion which does not have the force of law, but instead upon reported appellate decisions which clearly do have the force of law.

As you are aware, our attorneys are members of the California State Bar, an integrated or mandatory bar.

One other issue is worth consideration here. The LSNYC courts concluded that the attorneys' ethical obligations imposed under New York's Code of Professional Responsibility were trumped by Section 509(h) of the 1996 Appropriations Act. The court's decision not to enforce the *attorneys'* ethical obligations as a limitation on the grantee's disclosure obligations was based on the conclusion that those *attorneys'* duties were expressly qualified under the very law they asserted by an exemption for complying with a legal duty to disclose under Section 509(h). (LSNYC case, *supra*, 2003 U.S. App LEXIS 10299, at p. 2.) That reasoning appears inapplicable here. Not only are California attorneys' state-law duties of non-disclosure here not qualified as were those duties under the law relied upon by the LSNYC lawyers, but the instant situation features third parties whose rights were never considered, let alone decided by the LSNYC cases - - the state-resident clients whose rights to confidentiality and maintenance of their secrets (including the fact of their consultations with lawyers) are expressly guaranteed by Section 6068(e)(1). Whether or not California lawyers may be immune from professional sanction for disclosing information pursuant to federal demand does not address the *client's* right under California law to have the information not disclosed - an issue separate from the question of attorney professional responsibility.

These concerns are very real for persons who seek CRLA assistance. Section 509 subd. (i) authorizes the OIG to provide any information obtained under subd. (h) to any local, State or Federal law enforcement agency without limitation and without any predicate suspicion of criminal wrong-doing (by the client, the attorney or any other individual). Law-enforcement officials, particularly local officials, have been historically mis-used (at times unwittingly) by, among others, employers and landlords to achieve extra-legal "remedies" such as forcible evictions from housing (both conventional rental and labor camps), forcible removal from employment sites, and intimidation. These mis-uses of authority may and do occur solely upon the employer or landlord learning that their employee or tenant has consulted with CRLA. Not infrequently, clients and would-be clients are so fearful that their consultation with CRLA might be found out, that it is necessary for our staff to arrange off-site and "after hours" interviews. Indeed, some agricultural workers, prohibited by employers from leaving their labor camps on pain of not merely termination but physical assaults, can only consult with CRLA staff under cover of darkness when they can slip away from their camps un-noticed. Finally, it is our impression from previous discussions with your staff that, notwithstanding the apparent

Kirt West and Laurie Tarantowicz
April 14, 2006
Page 6

limitations on disclosure of subd. (i), it is virtually impossible for your Office to withhold information from members of Congress particularly where, as here, an investigation is Congressionally-requested.

This question of clients' entitlement to have their statutory confidences protected cannot be separated from the question of whether our lawyers are exposed to prejudice by complying with your Requests since the state law mandates that attorneys assert those rights on behalf of the clients. (§ 6068, subd. (e), *supra*.)  In short, CRLA does not merely have "standing" to assert the rights of those who consult with us - - we are obligated to do so.

Your current Document Request requires production of, *inter alia*, the client names for *all* cases that were open at any time during 2003 through 2005 (somewhere between 30,000 and 40,000 files) regardless of the nature of the representation and regardless of whether the lawyer-client relationship was ever revealed or disclosed to third parties (as is critical under, *e.g.*, Hooser, *supra*).   We are currently attempting to estimate the staff time that would be required to evaluate each file in accord with Hooser. The considerations described above suggest, and indeed apparently require, your and our mutual attempts to satisfy your legitimate needs for information appropriate to your investigation and our statutory obligations.  Indeed, whatever your entitlement to the requested information may be, better practice would appear to me to compel a resolution that does not compromise either the recipients' obligations to their clients nor those clients' state-afforded rights.

Inasmuch as Mr. West was not then the Inspector General, allow me to recall that during the prior 2002-2004 compliance audit, the issue of revealing client names also arose with respect to CRLA representation before agencies whose proceedings were confidential.   Conscientious discussions of your needs and uses of the information resulted in developing a procedure that satisfied both OIG and CRLA concerns.   I believe that process is appropriate to invoke, again. While our ability in such a process to evaluate whether we are reasonably protecting the interests of our clients is vastly more difficult when we are not advised of the nature of the investigation or of the compliance issues, we are more than willing and able to work with you to develop practices appropriate to the legitimate needs of all concerned.

Kirt West and Laurie Tarantowicz
April 14, 2006
Page 7


       I look forward to working further with you to achieve appropriate, reasonable resolution of our respective concerns.

                        Very truly yours,

                        William G. Hoerger
                        Director of Litigation, Advocacy and Training

cc:    Helaine Barnett, LSC President

# EXHIBIT C

# CALIFORNIA RURAL LEGAL ASSISTANCE, Inc.



**Central Office**
631 Howard St., #300
San Francisco, CA 94105
Telephone 415.777.2752
Fax 415.543.2752
www.crla.org

José R. Padilla
*Executive Director*

Luis C. Jaramillo
*Deputy Director*

Ralph Santiago Abascal
*General Counsel*
(1934-1997)

William G. Hoerger
Ilene Jacobs
Michael Meuter
Cynthia L. Rice
*Directors of Litigation, Advocacy, and Training*

Michael Meuter
*Migrant Unit Director*

**Regional Offices**

Coachella
Delano
El Centro
Fresno
Gilroy
Lamont
Madera
Marysville
Modesto
Monterey
Oceanside
Oxnard Basic
Oxnard Migrant
Paso Robles
Salinas
San Luis Obispo
Santa Barbara
Santa Cruz
Santa Maria
Santa Rosa
Stockton
Watsonville

≡LSC

[via facsimile 202-337-6616 and
Ltarantowicz@oig.lsc.gov]]

August 4, 2006

Laurie Tarantowicz, Legal Counsel OIG
LEGAL SERVICES CORPORATION
3333 K Street, N.W., 3rd Floor
Washington, D.C. 20007-3522

Re:    **Response to IG**
        **In the Matter of Client Names**

Dear Laurie:

As you have requested, this letter will address the principal outstanding issues raised by the March 16, 2006 data and document requests the Office of Inspector General ("OIG") has propounded to California Rural Legal Assistance ("CRLA") in connection with the OIG investigation begun in December 2005.

Before addressing those issues, we'd like to thank you for reconsidering the scope and/or terms for production of some of OIG's requests. Our recent discussions have proved helpful in clarifying and resolving a number of outstanding issues, but at least one significant issue remains unresolved at this point.

That issue is, of course, what you often refer to as OIG's request for CRLA's "client names," though that shorthand is not entirely accurate. "Confidential Client Information" is more apt: In addition to clients' names, OIG has demanded that CRLA produce, in a linked electronic database, a wide range of personal and identifying information, including among other matters clients' addresses, telephone numbers, referral source, dates of representation, "problem codes" (that is, the subject matter about which the client requested CRLA's assistance), financial information, adverse parties, and even identifying information concerning the clients' spouses. And in addition to requesting this information for clients associated with a number of specific past or pending client matters, OIG has requested this information for *every* client to whom CRLA has provided legal services *at any time during the past three years*, thus seeking information on what we conservatively estimate is at least *35,000* client files.

As we have explained in our discussions with you, the breadth and magnitude of these requests creates grave concerns and conflicting duties for CRLA.

1

Whatever the OIG's rights to inspect or use this information may eventually prove to be, it cannot be disputed that the client information requested is personal, confidential and private. And at a time when personal information security breaches are reported almost weekly at private-sector companies and government agencies alike (the serious data breach at the Veterans' Administration is just one recent example), OIG's request that this vast mass of personal and private information be produced in a linked electronic database without detailed restrictions on its accessibility or use dramatically increases the risk of improper dissemination. In this concentrated form, a hacker bent on mischief, or LSC or OIG personnel engaging in the kind of innocent neglect regularly reported in the media, could easily expose the personal identifying and financial information of thousands of CRLA clients to theft or misuse. Is all of this information about all of these people in this particular form really necessary?

Of even greater concern are the conflicting duties OIG's demands create. CRLA of course acknowledges its obligation to cooperate appropriately in OIG's inquiries, just as it always has in the past. But CRLA is a law firm, and has the duty under California law "[t]o maintain inviolate the confidence, and at every peril to [itself] to preserve the secrets, of [its] client[s]." Cal. Bus. & Prof. Code §6068(e)(1). Each client has a right of privacy protected by the California Constitution to consult an attorney confidentially, and California lawyers have a duty to preserve the confidentiality of the client's identity and consultation in the absence of a "compelling" showing on the part of the requesting party of the need for the disclosure, including considering the "availability of alternative, less intrusive means for obtaining the requested information." *Hooser v. Superior Court*, 84 Cal. App. 4th 997, 1004-06 (2000).

We have asked you in the course of our discussions what creates the need in OIG's inquiry for so much information about so many people. You have refused to say. We have requested an understanding of the thrust and basis for OIG's investigation so that we could explore whether the number of clients, the amount or type of information or the manner in which it was produced could be adjusted to reduce the burden on CRLA or preserve any of its clients' privacy. You have refused to discuss this in any respect. You even insisted in a recent call that the information concerning clients' *spouses* OIG has demanded was an important part of your investigation, but declined to explain how that could possibly be the case.

Leaving aside the duties of confidentiality that attach to the client identity information OIG seeks, the requests also invade the attorney-client privilege. OIG has made it clear that it seeks no material protected by the attorney-client privilege, but determining which material in which files is privileged requires individualized examination and analysis of each of the 35,000 or more files the OIG's demand covers. And while we appreciate that, in ordinary civil practice, the client's identity and the general subject matter of the consultation often are not privileged, in a Legal Aid practice those facts are privileged far more frequently. That is because the indigent frequently consult legal aid programs like CRLA in confidence, because disclosure of the fact and nature of their consultation to those against whom the clients are exploring their rights could result in their firing, eviction or even physical harm. The amount of resources necessary to make these individualized privilege determinations on the scale OIG's dragnet inquiry demands is enormous. Once again, our efforts to discuss a reasoned basis to narrow this inquiry or develop a rational protocol to simplify the effort have simply been refused. We again ask you to reconsider.

2

In the absence of the required "compelling" showing (or, indeed, any showing at all) that would justify this intrusion into our clients' confidences, or any willingness to entertain less intrusive means for obtaining the information that is genuinely central to the OIG's investigation, you force CRLA to violate our obligations to our clients and the State Bar if we comply with your demands. While we understand your position that the 1996 LSC appropriations rider gives OIG the power to obtain certain specified information, nothing in that provision suspends the OIG's statutory duty to exercise this power " *in a manner* consistent with attorneys' professional responsibilities." 42 U.S.C. §2996e(b)(3) (emphasis added). The professional and ethical dilemma into which we are thrust, the potential compromise to the trust of the needy who often seek our assistance in confidence, and the prejudice to our mission that will result, all beg for a different approach on OIG's part, and we ask you to reconsider and to discuss with us how OIG's investigatory powers can be exercised in a manner consistent with CRLA's professional responsibilities.

In our last telephone call, you insisted that we provide you with a decision by today on whether CRLA would immediately and unconditionally comply with the OIG's demands. We reiterate our belief that further discussion and exploration of OIG's practical needs and of possible means of narrowing the scope or structuring the manner of production to accommodate those needs to CRLA's legal and ethical duties could significantly reduce or entirely resolve this conflict, and again urge you and Inspector General West to consider this course. In the absence of some understanding why CRLA's clients' privacy rights are eclipsed by the OIG's needs, and in light of OIG's refusal to explore less intrusive means of achieving its legitimate goals in a manner consistent with CRLA's professional responsibilities, we have regretfully concluded that compliance with OIG's demands would violate our duties to our clients and the State Bar. Having carefully considered CRLA's legal and ethical duties, we are very sorry to say we cannot comply with OIG's demands for the Client Confidential Information described above on the terms OIG has dictated at this time.

We remain available to discuss these issues with you further, and continue in the hope you will accept our invitation to do so.

Please contact me to let me know how OIG proposes to proceed.

Very truly yours,

Jose Padilla
CRLA Executive Director

3