# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION
3333 K STREET, NW, 3RD FLOOR
WASHINGTON, DC 20007,

                    Petitioners,

    v.

CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.
631 HOWARD STREET, #300
SAN FRANCISCO, CA 94105,

                    Respondent.

No. 1:07-mc-00123-EGS

**MOTION TO INTERVENE
PURSUANT TO FEDERAL RULE
OF CIVIL PROCEDURE 24**

Date:     [TO BE DETERMINED]
Time:     [TO BE DETERMINED]
Before:  The Honorable Emmet G. Sullivan

JOHN P. CORRADO (D.C. Bar No. 380948)
Jcorrado@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW, #5500
Washington, DC 20006-1888
Tel.: (202) 887-1500

JACK W. LONDEN (CA SBN 85776)
STUART C. PLUNKETT (CA SBN 187971)
WENDY M. GARBERS (CA SBN 213208)
JLonden@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Tel.: (415) 268-7000

Attorneys for Interveners JEANNIE BARRETT, ALEGRIA DE LA CRUZ,
VANESSA FRANK GARCIA, PHYLLIS KATZ, TERI SCARLET,
ARTURO RODRIGUEZ, AND KIRK AH-TYE

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

Please take notice that Jeannie Barrett, Alegria De La Cruz, Vanessa Frank Garcia, Phyllis Katz, Teri Scarlet, Arturo Rodriguez, and Kirk Ah-Tye (the "Attorney-Interveners") hereby move, pursuant to Rule 24 of the Federal Rules of Civil Procedure, to intervene as Respondents in the above-captioned action. Respondent California Rural Legal Assistance, Inc. ("CRLA") consents to this intervention.

The grounds for this Motion are as follows:

1.      On October 17, 2006, Petitioner Kirt West, Inspector General of the Legal Services Corporation Office of Inspector General ("OIG"), served Respondent CRLA with an administrative subpoena *duces tecum*. On March 23, 2007, OIG filed with this Court a petition for summary enforcement of its subpoena.

2.      The subpoena seeks confidential and private information concerning CRLA's clients, and full compliance with it would infringe upon the attorney-client privilege. Full compliance would also infringe upon the work-product privilege.

3.      CRLA's clients have statutory and constitutional rights to the confidentiality of their meetings and communications with their attorneys. *See, e.g.*, Cal. Evid. Code § 954; *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981); Fed. R. Evid. 501 (incorporating state law on privilege); CAL. CONST., Article I, Section I; *Hooser v. Super. Ct. of San Diego County*, 84 Cal. App. 4th 997, 1003-07 (2000). Attorney-Interveners have legal and ethical obligations to keep secret their clients' confidential information. *See, e.g.*, Cal. Bus. & Prof. Code § 6068(e)(1); *see also* California Rule of Professional Conduct 3-100; 42 U.S.C. § 2996e(b)(3), referencing *ABA Code of Professional Responsibility* DR4-101(B).

1

4.      If the Court grants OIG's petition to enforce the subpoena, the harm to Attorney-Interveners and their clients will be irreparable.  Attorney-Interveners may face suspension or disbarment for turning over the confidential and privileged information, resulting in the loss of their livelihoods.  Additionally, the confidentiality of the clients' communications with Attorney-Interveners will be violated, placing many in danger of retaliation by private parties or the government.

5.      Attorney-Interveners have Constitutional standing to object to OIG's subpoena both on their own behalf and on behalf of their clients.

6.      Furthermore, Attorney-Interveners meet every requirement for intervention as of right pursuant to Fed. R. Civ. P. 24(a)(2), or, alternatively, every requirement for permissive intervention pursuant to Fed. R. Civ. P. 24(b)(2).

7.      Attorney-Interveners cannot rely on CRLA to oppose enforcement of the subpoena because CRLA and Attorney-Interveners are not similarly situated.  Unlike CRLA, Attorney-Interveners are members of, and subject to discipline by, the State Bar of California.  Moreover, unlike Attorney-Interveners, CRLA risks losing federal funding for failure to comply with OIG's demand.

8.      By Order dated April 18, 2007, this Court required that any motions to intervene be filed by May 18, 2007.  Attorney-Interveners' Motion to intervene is thus timely.

//

//

//

//

9.      As required by Fed. R. Civ. P. 24(c), accompanying this motion, Attorney-Interveners submit a Proposed Response in Intervention.


Dated: May 18, 2007                              Respectfully submitted,


                                                By:  /s/ John P. Corrado
                                                     _____
                                                     John P. Corrado (D.C. Bar No. 380948)
                                                     MORRISON & FOERSTER LLP
                                                     2000 Pennsylvania Ave., NW, #5500
                                                     Washington, DC  20006-1888
                                                     Tel: (202) 887-1500

                                                     Jack W. Londen (CA SBN 85776)
                                                     Stuart C. Plunkett (CA SBN 187971)
                                                     Wendy M. Garbers (CA SBN 213208)
                                                     MORRISON & FOERSTER LLP
                                                     425 Market Street
                                                     San Francisco, CA 94105-2482
                                                     Tel.: (415) 268-7000

                                                     Attorneys for Interveners

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>and<br><br>KIRT WEST,<br>INSPECTOR GENERAL OF THE<br>LEGAL SERVICES CORPORATION<br>3333 K STREET, NW, 3RD FLOOR<br>WASHINGTON, DC 20007,<br><br>               Petitioners,<br><br>   v.<br><br>CALIFORNIA RURAL LEGAL<br>ASSISTANCE, INC.<br>631 HOWARD ST., #300<br>SAN FRANCISCO, CA 94105,<br><br>               Respondent. | No. 1:07-mc-00123-EGS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**<br><br>Date:    [TO BE DETERMINED]<br>Time:    [TO BE DETERMINED]<br>Before:  The Honorable Emmet G. Sullivan |

JOHN P. CORRADO (D.C. Bar No. 380948)
JCorrado@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW, #5500
Washington, DC 20006-1888
Tel.: (202) 887-1500

JACK W. LONDEN (CA SBN 85776)
STUART C. PLUNKETT (CA SBN 187971)
WENDY M. GARBERS (CA SBN 213208)
JLonden@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Tel.: (415) 268-7000

Attorneys for Interveners JEANNIE BARRETT, ALEGRIA DE LA CRUZ,
VANESSA FRANK GARCIA, PHYLLIS KATZ, TERI SCARLET,
ARTURO RODRIGUEZ, AND KIRK AH-TYE

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

STATEMENT OF FACTS ............................................................................................. 1

ARGUMENT .................................................................................................................. 5

I.     ATTORNEY-INTERVENERS ARE ENTITLED TO INTERVENE
AS A MATTER OF RIGHT PURSUANT TO FED. R. CIV. P.
24(a)(2) ................................................................................................................ 5

     A.    Attorney-Interveners Have Standing to Intervene. .................................. 6

          1.    Attorney-Interveners (and Their Clients) Face
Imminent Injury in Fact. ............................................................ 6

          2.    Attorney-Interveners' (and Their Clients') Imminent
Injuries Are Traceable to OIG's Actions. .................................. 8

          3.    A Favorable Decision Will Enable Attorney-
Interveners (and Their Clients) to Avoid Injury. ...................... 8

     B.    Attorney-Interveners Otherwise Satisfy the Requirements
for Intervention as a Matter of Right. ..................................................... 9

          1.    Attorney-Interveners Filed Their Motion to Intervene
in a Timely Manner. .................................................................... 9

          2.    Attorney-Interveners Have a Legally Protected
Interest in This Action. ............................................................... 9

          3.    Resolution of the Action May Impair Attorney-
Interveners' Abilities to Protect Their Clients'
Rights. ........................................................................................ 10

          4.    CRLA and Attorney-Interveners' Interests Differ. ................... 10

II.    ATTORNEY-INTERVENERS SHOULD ALSO BE PERMITTED
TO INTERVENE UNDER FED. R. CIV. P. 24(B)(2). ......................................... 11

     A.    Attorney-Interveners' Response in Intervention Presents
Independent Grounds for Subject Matter Jurisdiction. ........................... 12

     B.    Attorney-Interveners' Motion to Intervene Is Timely. ............................ 12

     C.    Attorney-Interveners' Pleading and the Main Action Have
Questions of Law and Fact in Common. ................................................. 12

CONCLUSION ............................................................................................................. 13

# TABLE OF AUTHORITIES

## CASES

\*   *American Immigration Lawyers Ass'n v. Reno,*
      199 F.3d 1352 (D.C. Cir. 2000) ................................................................. 7, 10

     *Caplin & Drysdale, Chartered v. United States,*
      491 U.S. 617 (1989) ................................................................................. 7, 10

     *EEOC v. National Children's Ctr.,*
      146 F.3d 1042 (D.C. Cir. 1998) ..................................................................... 11

\*   *Frye v. Tenderloin Housing Clinic, Inc.,*
      38 Cal. 4th 23 (2006) ................................................................................. 3, 11

\*   *Fund for Animals, Inc. v. Norton,*
      322 F.3d 728 (D.C. Cir. 2003) ............................................................. 5, 6, 9, 10

\*   *Hooser v. Super. Ct. of San Diego County,*
      84 Cal. App. 4th 997 (2000)........................................................................ 2, 8

     *In re Vitamins Antitrust Class Actions,*
      215 F.3d 26 (D.C. Cir. 2000) ......................................................................... 11

\*   *Jones v. Prince George's County,*
      348 F.3d 1014 (D.C. Cir. 2003) ................................................................ 5, 6, 9

     *Kowalski v. Tesmer,*
      543 U.S. 125 (2004) ......................................................................................... 7

     *Lujan v. Defenders of Wildlife,*
      504 U.S. 555 (1992) ......................................................................................... 6

     *Powers v. Ohio,*
      499 U.S. 400 (1991) ......................................................................................... 7

     *Roeder v. Islamic Republic of Iran,*
      333 F.3d 228 (D.C. Cir. 2003) ......................................................................... 6

     *Sierra Club v. EPA,*
      292 F.3d 895 (D.C. Cir. 2002) ......................................................................... 6

     *Trbovich v. United Mine Workers,* 404 U.S. 528 (1972) .................................. 10

     *United States Dep't of Labor v. Triplett,*
      494 U.S. 715 (1990) ................................................................................... 7, 10

*United States v. American Tel. & Tel. Co.*,
  642 F.2 (D.C. Cir. 1980) .................................................................................................. 9

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ......................................................................................................... 3

## STATUTES

42 U.S.C. § 2996, *et seq.*, ......................................................................................... 1, 3, 12

28 U.S.C. § 1331 ........................................................................................................... 12

Cal. Bus. & Prof. Code § 6068(e)(1) ........................................................................... 3, 6

Cal. Bus. & Prof. Code § 6078 ................................................................................... 3, 6, 7

Cal. Evid. Code § 954 .................................................................................................. 2, 8

Cal. Evid. Code § 955 ...................................................................................................... 7

Cal. Rule Prof. Conduct 3-100 ......................................................................................... 3

Fed. R. Civ. P. 24 ...................................................................................... 1, 2, 5, 6, 9, 10, 11

Fed. R. Evid. 501 ............................................................................................................. 8

The Omnibus Appropriations Act of 1996, Pub. L. No. 104-134 ...................................... 12

**INTRODUCTION**

Interveners, Jeannie Barrett, Alegria De La Cruz, Vanessa Frank Garcia, Phyllis Katz, Teri Scarlet, Arturo Rodriguez, and Kirk Ah-Tye (the "Attorney-Interveners") submit this Memorandum of Points and Authorities in support of their Motion to Intervene in this proceeding pursuant to Rule 24(a)(2), or, alternatively, pursuant to Rule 24(b)(2), of the Federal Rules of Civil Procedure.  Attorney-Interveners seek intervention to protect confidential and privileged information concerning their clients, as Attorney-Interveners' ethical obligations require them to do.  Respondent California Rural Legal Assistance, Inc. ("CRLA") consents to this intervention.

**STATEMENT OF FACTS**

Attorney-Interveners are attorneys licensed to practice law in the State of California, where they are employed by CRLA.  (Response in Intervention ("Response") ¶¶ 9-15.)  CRLA is a nonprofit organization that provides legal services to low-income Californians.  CRLA receives funding from the Legal Services Corporation ("LSC"), a nonprofit federal agency created by the Legal Services Corporation Act ("LSCA") for the "purpose of providing financial support for legal assistance in noncriminal proceedings or matters to persons financially unable to afford legal assistance."  42 U.S.C. § 2996b(a).

CRLA has many missions, but among its most critical is providing attorneys to represent and advise California's low-wage laborers.  These laborers are vital to California's rural agricultural economy and are susceptible to mistreatment and legal abuses by their employers and others.  They often do not know their legal rights and cannot afford to hire lawyers to help them.  Many of these laborers nevertheless choose not to seek the legal assistance CRLA and its attorneys provide because the laborers fear retaliation from their employers and others.  Those who do become clients of CRLA attorneys also fear retaliation, and this fear often affects the scope of the legal services they request.

The CRLA clients' fears of retaliation arise from the nature of their legal problems. They come to CRLA regarding employment issues and fear retaliation from their employers, which would cut off their livelihood. (Response ¶ 49.)

Other CRLA clients seek representation for housing issues and fear retaliation from their landlords or the public housing authority that would result in the loss of their homes. Others seek representation for educational issues concerning minor children, whose interests would be ill-served if their educational difficulties were to become publicly known. Still other clients seek assistance with domestic violence problems and fear additional violence in the event that the abusive family member discovers the client has contacted a lawyer.

The confidentiality of CRLA's legal services — and often the mere fact that the clients sought legal advice — is therefore crucial. If these clients were told upon arrival at CRLA that their names and the fact of the consultations could not be kept secret, many would leave rather than identify themselves. It is common for CRLA's and the Attorney-Interveners' clients to instruct their attorneys not to take any action (such as writing a letter to an employer or landlord) that would reveal they had sought advice from an attorney. (Response ¶¶ 48-60.)

It is not merely the wish of CRLA's and the Attorney-Interveners' clients that their confidences be protected; it is also their right. A client's right to prevent disclosure of confidential information communicated to the client's attorneys is guaranteed by California's Evidence Code. *See* Cal. Evid. Code § 954 ("[T]he client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer[.]"). Article I, Section I, of the California Constitution also gives attorneys' clients a right of privacy, which protects from disclosure their identities and the fact that they have consulted an attorney, until such time as they choose to make the representation public. *See Hooser v. Super. Ct. of San Diego County*, 84 Cal. App. 4th 997, 1003-07 (2000). The United States Supreme Court has recognized the importance of the attorney-client privilege, stating that its purpose "is to encourage full and frank communication between attorneys and

their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

Unlike CRLA, Attorney-Interveners are licensed to practice law by the State Bar of California. Like all California attorneys, an Attorney-Intervener has a statutory obligation to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Cal. Bus. & Prof. Code § 6068(e)(1); *see also* California Rule of Professional Conduct 3-100; the Legal Services Corporation Act, 42 U.S.C. § 2996e(b)(3) (citing ABA *Code of Professional Responsibility* DR 4-101(B)). The "confidences" and "secrets" that must be preserved include, among other things, the names of clients and the existence of an attorney-client consultation. Because CRLA is a legal services organization and not licensed by the State Bar of California, it is not subject to discipline by the State Bar, like Attorney-Interveners are. *See Frye v. Tenderloin Housing Clinic, Inc.*, 38 Cal. 4th 23, 45 (2006).

Failure to meet their statutory and ethical obligations can result in serious consequences for Attorney-Interveners. Among other things, they can be suspended, or even disbarred, thereby losing their means of livelihood. Cal. Bus. & Prof. Code § 6078.

On March 16, 2006, Kirt West, head of the Legal Services Corporation, Office of the Inspector General ("OIG"), sent a Data/Document Request for several categories of computer data and documents to CRLA. (Response ¶ 29.) The Data Request sought attorney-client privileged or otherwise confidential information concerning each and every client to whom CRLA had provided legal services in any of its 22 service offices at any time during the period of January 1, 2003, through October 31, 2005, including those represented by Attorney-Interveners in this action. For example, the Data Request instructed CRLA to release to OIG copies of records identifying all client names and client-identifying information, such as addresses, phone numbers, financial information, alien status, and spouses' names. (Response ¶ 29.) The Document Request sought documents relating to CRLA's internal policies and procedures in each service office. It also sought documents relating to how CRLA litigates types of cases and individual cases.

In response, CRLA produced all the data requested including client-identifying information, but it did not produce clients' names, street addresses, telephone numbers, and spouses' names.  CRLA objected to disclosing the client names and certain other information on grounds of attorney-client privilege, work-product privilege, and privacy.  CRLA outlined for OIG the applicable California law regarding its attorneys' confidentiality obligations.  (Response ¶ 30.)

CRLA thereafter met and conferred with OIG, in an attempt to resolve the issue without sacrificing its clients' rights to protection of privilege, confidentiality, and privacy.  CRLA's efforts were unavailing.  (Response ¶ 31.)  On July 19, 2006, the President of the American Bar Association sent a letter to OIG and LSC expressing concern, based on the work of a Presidential Task Force on Attorney-Client Privilege, about OIG's request for confidential client names and confidential information.  The letter urged OIG to use well-established protocols that involve unique identifiers to avoid the problem of disclosing confidential information.  The request fell on deaf ears.  (Response ¶ 33.)

On July 25 and August 2, 2006, CRLA and OIG conferred about possible resolution of the issues that had arisen regarding the Data/Document Request.  OIG declined to accept proposals to resolve the issues in ways consistent with the legal and ethical obligations of California attorneys as to confidential client information.

On October 17, 2006, OIG served CRLA with a subpoena *duces tecum* that amounted to the same information requested in the Data/Document Request seven months earlier.  The subpoena seeks computer program data fields that would reveal, when linked together, client-identifying information including client names, client addresses and telephone numbers, problem codes, dates of representation, and adverse parties.  OIG also sought non-redacted versions of a number of documents CRLA had already produced.  (Response ¶ 35.)  Beginning on November 17, 2006 and on various dates thereafter, CRLA produced some documents and data in response to the subpoena, but refused to produce client-identifying information, such as names, street

4

addresses, telephone numbers and spouses' names.  CRLA objected to these requests on grounds of the attorney-client privilege and confidentiality.  (Response ¶ 36.)

OIG was unwilling to discuss CRLA's proposals about resolving the disagreement. Instead, on March 23, 2007, OIG filed a petition for summary enforcement of its subpoena. (Response ¶ 37.)

**ARGUMENT**

Attorney-Interveners satisfy the requirements for both intervention as of right and permissive intervention set forth in Rule 24 of the Federal Rules of Civil Procedure. Accordingly, Attorney-Interveners respectfully request that they be permitted to intervene in this action.

## I.    ATTORNEY-INTERVENERS ARE ENTITLED TO INTERVENE AS A MATTER OF RIGHT PURSUANT TO FED. R. CIV. P. 24(a)(2).

In the D.C. Circuit, parties have the right, under Rule 24(a)(2), to intervene in an action if they meet four requirements: (1) the application to intervene must be timely; (2) the applicant must demonstrate a legally protected interest in the action; (3) the action must threaten to impair or impede that interest; and (4) no party to the action can be an adequate representative of the applicant's interests.  *See Fund for Animals Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003). Attorney-Interveners fully satisfy these four requirements and otherwise have standing to intervene.

When deciding a Rule 24(a) motion to intervene as of right, the threshold question is whether the prospective intervener has a "concrete and cognizable interest in [the] litigation." *Jones v. Prince George's County*, 348 F.3d 1014, 1018 (D.C. Cir. 2003).  The court should not consider the merits of the putative intervener's claims.  "[U]nder Rule 24(a)(2), the question is not whether the applicable law assigns the prospective intervener a cause of action.  Rather, the question is whether the individual may intervene in an already pending cause of action."  *Id*.[1]

---

[1] Courts in the D.C. Circuit have differed on how a prospective intervener must show this "concrete and cognizable interest."  The D.C. Court of Appeals has held that a third party seeking to intervene as of right must meet the

(Footnote continues on next page.)

5

### A.     Attorney-Interveners Have Standing to Intervene.

As a threshold matter, Attorney-Interveners have standing to intervene.  Standing requires three things:  "*First*, the plaintiff must have suffered an 'injury in fact' — an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent,' not 'conjectural' or 'hypothetical.'  *Second*, there must be a causal connection between the injury and the conduct complained of — the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court.'  *Third*, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (internal citations omitted; emphasis added); *Sierra Club v. EPA*, 292 F.3d 895, 898 (D.C. Cir. 2002).  Attorney-Interveners satisfy these three elements.

### 1.     Attorney-Interveners (and Their Clients) Face Imminent Injury in Fact.

Attorney-Interveners face imminent injury to their own rights and to their clients' rights. They face injury in their own right because enforcement of OIG's subpoena — without intervention by Attorney-Interveners — would subject Attorney-Interveners to legal and ethical liabilities for failing to protect their clients' confidences.  In California, a lawyer is required by statute to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."  Cal. Bus. & Prof. Code § 6068(e)(1).  Failure to comply with the California statute can result in suspension or disbarment.  Cal. Bus. & Prof. Code § 6078.  If they assist their employer, CRLA, in complying with the subpoena, Attorney-Interveners will risk the loss of their law licenses and thus their livelihoods.  Compliance with the OIG's

---

(Footnote continued from previous page.)

standing requirements imposed by Article III of the Constitution and the specific requirements of Rule 24(a)(2).  *See Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731-32 (D.C. Cir. 2003); *Jones*, 348 F.3d at 1018.  Conversely, the Court of Appeals has also held that "any person who satisfies Rule 24(a) will also meet Article III's standing requirement."  *Roeder v. Islamic Republic of Iran*, 333 F.3d 228, 233 (D.C. Cir. 2003).  The courts' divergence about requirements, however, is of no import here.  Attorney-Interveners meet every requirement for both Article III standing and Rule 24(a) intervention as of right, and should be permitted to intervene in this action.

subpoena would also intrude on Attorney-Interveners' right to work-product privilege. Accordingly, Attorney-Interveners must be permitted to intervene in this action in order to "preserve the secrets of [their] client[s]" and to protect their livelihoods. Cal. Bus. & Prof. Code § 6078(e)(1).

In addition, Attorney-Interveners have standing to assert their clients' attorney-client privilege and privacy rights. The Supreme Court has twice held the attorney-client relationship sufficient to give attorneys standing to raise their clients' rights. *See Caplin & Drysdale, Chartered v. United States,* 491 U.S. 617, 624 (1989); *United States Dep't of Labor v. Triplett*, 494 U.S. 715, 720 (1990) *but see Kowalski v. Tesmer*, 543 U.S. 125, 130-31 (2004) (denying attorneys standing to assert interests of *future*, *unknown* clients). Furthermore, under California Evidence Code section 955, an attorney must take affirmative steps to protect clients' rights and privileges: "[t]he lawyer who received or made a communication subject to the privilege . . . *shall* claim the privilege whenever he is present when the communication is sought to be disclosed . . . ." Cal. Evid. Code § 955 (emphasis added).

The Court of Appeals for the D.C. Circuit has held that "to establish third party standing 'there must exist some hindrance to the third party's ability to protect his or her own interests.'" *American Immigration Lawyers Ass'n v. Reno*, 199 F.3d 1352, 1362 (D.C. Cir. 2000) (quoting *Powers v. Ohio*, 499 U.S. 400, 411 (1991)). That hindrance is present here. CRLA's and Attorney-Interveners' clients are low-income individuals with greatly limited ability to secure counsel. Some of them are unlikely to know their legal rights or even know about the pendency of this proceeding and, thus, lack the ability to protect their rights. These clients are also unlikely to step forward to assert the attorney-client privilege for the same reason they rely on it: they fear a retaliatory action will cut off their livelihood or access to housing, etc. Unable and unwilling to assert the attorney-client privilege for themselves, the clients rely on their attorneys to do so, as they should. Under *Caplin & Drysdale*, *Triplett*, and *American Immigration Lawyers*, Attorney-Interveners have standing to advocate for protection of their clients' privacy interests. Injury to the clients may be severe if this Court grants OIG's petition; disclosure of the

clients' privileged documents and information — and even their identities — will violate the clients' statutory and constitutional rights. *See, e.g.*, Cal. Evid. Code § 954 (recognizing client's "privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer"); Fed. R. Evid. 501 (incorporating state law on privilege); *Hooser*, 84 Cal. App. 4th at 1005 (holding that under Article I, Section I, of the California Constitution, "the identity of an attorney's clients is sensitive personal information that implicates the clients' rights of privacy").  Moreover, revelation of this confidential information may subject the clients to retaliation from private parties and government agencies.

**2.      Attorney-Interveners' (and Their Clients') Imminent Injuries Are Traceable to OIG's Actions.**

OIG seeks production of information and documents concerning CRLA's and Attorney-Interveners' clients, which triggers Attorney-Interveners' legal and ethical obligations and threatens to violate the clients' statutory and constitutional rights.  OIG is therefore the source of Attorney-Interveners' and their clients' imminent injury in fact.  There would be no disclosure of the confidential information at issue in this case absent the actions taken by OIG.  Any imminent injuries in this dispute are traceable to OIG's actions, and the second prong of the standing test is thus satisfied.

**3.      A Favorable Decision Will Enable Attorney-Interveners (and Their Clients) to Avoid Injury.**

Attorney-Interveners seek to oppose enforcement of OIG's subpoena.  Specifically, Attorney-Interveners hope to secure an order that the confidential documents and information may be withheld or that the information may be produced in a manner consistent with the Attorney-Interveners' duties and the clients' rights.  Such an order will prevent OIG from obtaining the confidential client information at issue, and therefore will enable Attorney-Interveners to comply with their legal and ethical obligations and protect the rights of their clients.  Accordingly, Attorney-Interveners have Article III standing to intervene in this action.

8

**B.      Attorney-Interveners Otherwise Satisfy the Requirements for Intervention as a Matter of Right.**

Upon finding that a prospective intervener has standing, courts in the D.C. Circuit turn to the specific requirements of Fed. R. Civ. P. 24(a) to determine whether to grant a motion to intervene as of right. *Jones*, 348 F.3d at 1018; *Fund for Animals*, 322 F.3d at 731-32.

**1.      Attorney-Interveners Filed Their Motion to Intervene in a Timely Manner.**

For intervention as of right, "timeliness is to be judged in consideration of all the circumstances, especially weighing the factors of time elapsed since the inception of the suit, the purpose for which intervention is sought, the need for intervention as a means of preserving the applicant's rights, and the probability of prejudice to those already parties in the case." *United States v. American Tel. & Tel. Co.*, 642 F.2 1285, 1295 (D.C. Cir. 1980) (holding intervention timely, despite elapsing of "significant time," because intervention caused little delay and was necessary to preserve intervener's rights); *see also Fund for Animals*, 322 F.3d at 735 (finding timely a motion to intervene filed two months after the Response).

Attorney-Interveners satisfy this timeliness standard. The instant action was just recently filed. No briefing on the merits has occurred, and no order on the merits has been issued. Moreover, the Court has already considered the timeliness issue and ordered that motions for intervention be filed by May 18, 2007. (April 18, 2007 Order.) In accordance with the Court's instruction, Attorney-Interveners timely filed the instant Motion.

**2.      Attorney-Interveners Have a Legally Protected Interest in This Action.**

Courts in the D.C. Circuit have held that where a would-be intervener "has suffered a cognizable injury sufficient to establish Article III standing, she also has the requisite interest under Rule 24(a)(2)." *Jones*, 348 F.3d at 1018; *Fund for Animals*, 322 F.3d at 735. As set forth above in Part I.A, Attorney-Interveners have a concrete legal interest in this action because OIG's petition requires the disclosure of documents and information that Attorney-Interveners are legally required to keep secret and subjects them to professional discipline, including the

possible loss of their law licenses. Moreover, attorneys have standing to assert the rights of their clients, and therefore have a legally protected interest in asserting the attorney-client privilege and other privacy rights on behalf of their clients. *See Caplin & Drysdale*, *Chartered*, 491 U.S. at 624; *United States Dep't of Labor v. Triplett*, 494 U.S. at 720; *American Immigration Lawyers Ass'n*, 199 F.3d at 1362.

### 3. Resolution of the Action May Impair Attorney-Interveners' Abilities to Protect Their Clients' Rights.

To determine whether disposition of the action may impair the applicant-intervener's interests, the D.C. Circuit "look[s] to the 'practical consequences of denying intervention, even where the possibility of future challenge to the regulation remains available.'" *Fund for Animals*, 322 F.3d at 735 (citations omitted). "Regardless of whether the [applicant-intervener] could reverse an unfavorable ruling by bringing a separate lawsuit," intervention should be permitted if "the task of reestablishing the status quo . . . will be difficult and burdensome." *Id.*

Here, if the Court grants OIG's petition to enforce its administrative subpoena, CRLA will call upon the Attorney-Interveners to disclose confidential client information, in violation of Attorney-Interveners' ethical obligations and in violation of their clients' rights. Attorney-Interveners should thus be permitted to intervene because such disclosure cannot later be undone.

### 4. CRLA and Attorney-Interveners' Interests Differ.

Under Rule 24(a)(2), intervention is proper if no party to the action can be an adequate representative of the applicant's interests. *See Fund for Animals*, 322 F.3d at 731. The applicant-intervener's burden of showing inadequate representation is minimal: it is sufficient to show that representation "may be" inadequate. *Id.* at 735 (citing *Trbovich v. United Mine Workers*, 404 U.S. 528 n.10 (1972)).[2] The Attorney-Interveners meet this minimal burden.

---

[2] In the D.C. Circuit, the cases are inconsistent as to who bears the burden with respect to this factor. The language of some cases, particularly those that quote the above passage from *Trbovich*, suggest that the burden is on the aspiring intervener to show that the representation may be inadequate. Others declare that the burden is on the opponent of intervention, because Rule 24(a)(2) states that if its first three factors are satisfied, "intervention 'shall' be permitted 'unless' the applicant's interest is already adequately represented." *Fund for Animals*, 322 F.3d at 736 n.7 (citations omitted). To the degree the Court concludes it is the Attorney-Interveners' burden, they meet it.

As a nonprofit legal services corporation, CRLA is not a member of the State Bar of California and thus not subject to discipline by the State Bar for failure to meet ethical obligations. *See Frye*, 38 Cal. 4th at 45. CRLA, on the other hand, faces the threat of loss of its funding for failure to comply with the subpoena. In its May 3, 2006 letter to OIG, CRLA wrote that "CRLA as a federal grantee wants to do nothing to jeopardize its status, and similarly do nothing that clashes with federal law, its grant conditions or with your investigation." (Response ¶ 32.) The individual Attorney-Interveners face no such dilemma, and are therefore free of a constraint that exists for CRLA in pursuing the protection of confidential client information from disclosure. Because the interests of CRLA and the Attorney-Interveners differ, it cannot be presumed that CRLA will effectively represent the interests of the Attorney-Interveners and their clients in this case.

For the foregoing reasons, Attorney-Interveners satisfy every requirement for intervention as of right, and their motion to intervene should be granted.

## II.    ATTORNEY-INTERVENERS SHOULD ALSO BE PERMITTED TO INTERVENE UNDER FED. R. CIV. P. 24(B)(2).

Alternatively, Attorney-Interveners should be allowed to intervene permissively because they meet the requirements for permissive intervention under Fed. R. Civ. P. 24(b)(2). "In order to litigate a claim on the merits under Rule 24(b)(2), the putative intervener must ordinarily present: (1) an independent ground for subject matter jurisdiction; (2) a timely motion; and (3) a claim or defense that has a question of law or fact in common with the main action." *EEOC v. National Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).[3]   Attorney-Interveners satisfy this standard.

---

[3] "[T]here is uncertainty over whether standing is necessary for permissive intervention" in the D.C. Circuit. *In re Vitamins Antitrust Class Actions*, 215 F.3d 26, 31 (D.C. Cir. 2000). Nevertheless, as explained in Part I.A, above, the Attorney-Interveners have standing to intervene in this action.

**A.      Attorney-Interveners' Response in Intervention Presents Independent Grounds for Subject Matter Jurisdiction.**

Central to this action is the OIG's assertion of authority under the Legal Services Corporation Act, 42 U.S.C. § 2996, *et seq.*, a federal statute, which gives rise to federal question jurisdiction. *See* 28 U.S.C. § 1331. In addition, Attorney-Interveners' pleading, submitted herewith, raises arguments for privilege and confidentiality, which are grounded in the laws and Constitution of the United States, including the Legal Services Corporation Act, the Omnibus Appropriations Act of 1996, Pub. L. No. 104-134. (Response ¶¶ 44-47.) Accordingly, federal subject matter jurisdiction exists concerning Attorney-Interveners' defenses, and the first prong for permissive intervention is satisfied.

**B.      Attorney-Interveners' Motion to Intervene Is Timely.**

Permitting Attorney-Interveners to intervene at this early stage — when no briefing on the merits has occurred and no ruling has been issued — will not delay the proceedings or prejudice existing parties. Moreover, the Court has issued a scheduling order expressly deferring the examination of the merits until the interested parties have established their right to participate before the Court. Thus, as set forth in more detail above, Attorney-Interveners' Motion to Intervene is timely, and should be granted.

**C.      Attorney-Interveners' Pleading and the Main Action Have Questions of Law and Fact in Common.**

They Attorney-Interveners seek to oppose enforcement of the OIG's administrative subpoena on the grounds that it seeks confidential and attorney-client privileged information, in violation of Attorney-Interveners' legal and ethical obligations and in violation of their clients' rights. OIG, in its petition to enforce its administrative subpoena, argues that the attorney-client privilege does not apply to the documents and information it seeks. Throughout 2006, CRLA objected to OIG's "Data/Document Request" on privilege and confidentiality grounds, and it did the same on November 17, 2006, when it objected to OIG's administrative subpoena. The issue presented by OIG's petition is the same issue Attorney-Interveners hope to litigate: whether the attorney-client privilege and other confidentiality protections apply to the documents and

information OIG has subpoenaed from CRLA.  While the stakes for the interveners and CRLA

may differ, Attorney-Interveners' response and the main action have common questions of law

and fact.  If Attorney-Interveners are allowed to intervene, they intend to coordinate efforts and

presentation with the other parties to avoid any undue delay or repetition.  Accordingly,

Attorney-Interveners should be permitted to intervene in this action.

## CONCLUSION

For the foregoing reasons, Attorney-Interveners' Motion to Intervene should be granted.


Dated: May 18, 2007                                 Respectfully submitted,


                                        By:  /s/ John P. Corrado
                                             John P. Corrado (D.C. Bar No. 380948)
                                             MORRISON & FOERSTER LLP
                                             2000 Pennsylvania Ave., NW, #5500
                                             Washington, DC  20006-1888
                                             Tel: (202) 887-1500

                                             Jack W. Londen (CA SBN 85776)
                                             Stuart C. Plunkett (CA SBN 187971)
                                             Wendy M. Garbers (CA SBN 213208)
                                             MORRISON & FOERSTER LLP
                                             425 Market Street
                                             San Francisco, CA 94105-2482
                                             Tel.: (415) 268-7000

                                             Attorneys for Interveners JEANNIE
                                             BARRETT, ALEGRIA DE LA CRUZ,
                                             VANESSA FRANK GARCIA, PHYLLIS
                                             KATZ, TERI SCARLET, ARTURO
                                             RODRIGUEZ, and KIRK AH-TYE

13

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of May, 2007, I caused a true and correct copy of

the foregoing Motion to Intervene, Response in Intervention, and the Proposed Order, to be

served by First Class Mail, on the following:

Peter D. Keisler
Jeffrey A. Taylor
Arthur R. Goldberg
Helen H. Hong
U.S. DEPARTMENT OF JUSTICE
20 Massachusetts Ave., N.W.
Room 6107
Washington, D.C. 20530
*E-mail helen.hong@usdoj.gov*

Bernard A. Burk
HOWARD, RICE, NEMEROVSKY, CANADY,
FALK & RABKIN P.C.
Three Embarcadero Center
Seventh Floor
San Francisco, CA 94111-4024
*E-mail* bburk@howardrice.com

Laurie Tarantowicz
LSC-OFFICE OF INSPECTOR GENERAL
3333 K. Street, N.W., 3rd Floor
Washington, D.C. 20007

/s/ Michael V. Sachdev
Michael V. Sachdev

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION
3333 K STREET, NW, 3RD FLOOR
WASHINGTON, DC 20007,

        Petitioners,

   v.

CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.
631 HOWARD STREET, #300
SAN FRANCISCO, CA 94105,

        Respondent.

No. 1:07-mc-00123-EGS

**RESPONSE IN INTERVENTION TO
THE INSPECTOR GENERAL'S
PETITION FOR SUMMARY
ENFORCEMENT OF
ADMINISTRATIVE SUBPOENA**

Before:  The Honorable Emmet G. Sullivan

JOHN P. CORRADO (D.C. Bar No. 380948)
JCorrado@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW, #5500
Washington, DC 20006-1888
Tel.: (202) 887-1500

JACK W. LONDEN (CA SBN 85776)
STUART C. PLUNKETT (CA SBN 187971)
WENDY M. GARBERS (CA SBN 213208)
JLonden@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Tel.: (415) 268-7000

Attorneys for Interveners JEANNIE BARRETT, ALEGRIA DE
LA CRUZ, VANESSA FRANK GARCIA, PHYLLIS KATZ,
TERI SCARLET, ARTURO RODRIGUEZ, and KIRK AH-
TYE

Pursuant to Federal Rule of Civil Procedure 24, Jeannie Barrett, Alegria De La Cruz, Vanessa Frank Garcia, Phyllis Katz, Teri Scarlet, Arturo Rodriguez, and Kirk Ah-Tye (collectively, the "Attorney-Interveners") seek to intervene in this above-captioned action and respond to the Legal Services Corporation Office of Inspector General's Petition for Summary Enforcement of Administrative Subpoena *Duces Tecum* and allege as follows:

## <u>INTRODUCTION</u>

1.      California Rural Legal Assistance, Inc. ("CRLA"), is a legal aid organization, dedicated to providing legal representation to low-income Californians.  Attorney-Interveners are attorneys who are licensed by the State Bar of California and employed by CRLA to represent the aforementioned individuals.

2.      On October 17, 2006, Legal Services Corporation Office of Inspector General ("OIG") served CRLA with a subpoena *duces tecum*, seeking information from computer data fields that includes confidential and attorney-client privileged information regarding each and every client to whom CRLA had provided legal services in any of its offices from January 1, 2003, through October 31, 2005, including the names of the clients and a host of client-identifying information such as the addresses, phone numbers, problem codes, dates of representation, financial information, alien status, spouses' names, and adverse party information.  The subpoena also seeks documents comprised of attorney-work product, including materials relating to CRLA's internal policies and procedures for each and every service office and materials relating to how CRLA litigates individual cases and types of cases.

3.      CRLA had previously produced documents and information in response to an administrative request for information that OIG issued seven months earlier, seeking the same information.  While CRLA produced much of the requested information, it refused to produce confidential and attorney-client privileged information, including client names and the street addresses, phone numbers, spouses' names, and alien status of the clients.  *See, e.g., People v. Chapman*, 36 Cal. 3d 98, 110 (1984) (The attorney-client privilege protects against an attorney's

disclosure of a client name to someone who "already *has* evidence of the substance of a communication between attorney and client" and seeks to be able to link that evidence with the client's name.); *In re Osterhoudt*, 722 F.2d 591, 593-94 (9th Cir. 1983); *In re Witnesses Before the Special March 1980 Grand Jury*, 729 F.2d 489, 493 (7th Cir. 1984). CRLA also refused to produce certain materials protected by work-product privilege and objected based on the sheer burden of producing the thousands of documents requested.

4.      In response to the OIG's multiple requests for information, CRLA has repeatedly offered to discuss means of producing additional information that is not privileged and in ways that would not involve undue burden.

5.      OIG has been unwilling to discuss CRLA's proposals to resolve the disagreement. Instead, OIG filed a petition for summary enforcement of its subpoena *duces tecum* in this Court, on March 23, 2007.

6.      Faced with a request for disclosure of a client's confidential information, a California attorney is obligated, both under California law and under the ethical rules that govern him or her, to resist such disclosure. *See* Cal. Bus. & Prof. Code § 6068(e)(1); *see also* California Rule of Professional Conduct 3-100; 42 U.S.C. § 2996e(b)(3) (referencing ABA *Code of Professional Responsibility* DR 4-101(B)). If no such effort is made, a California attorney may be subject to discipline, including disbarment, resulting in the loss of his or her livelihood. *See* Cal. Bus. & Prof. Code § 6078.

7.      In contrast to Attorney-Interveners, CRLA is not subject to discipline by the State Bar of California. Nonprofit legal aid Corporation like CRLA need not register with the State Bar. *See Frye v. Tenderloin Housing Clinic, Inc.*, 38 Cal. 4th 23, 45 (2006). Accordingly, CRLA does not face the same disciplinary consequences as Attorney-Interveners for failure to prevent disclosure of client confidences.

8.      To protect their clients' rights, to fulfill their duties to their clients, and to meet the legal and ethical standards imposed under California law, Attorney-Interveners seek to

intervene in the OIG's enforcement action to protect against disclosure of confidential and privileged information concerning their clients.

## PARTIES

### Attorney-Interveners

9. Jeannie Barrett is, and at all relevant times was, a citizen of California, employed as the Directing Attorney of CRLA's Santa Maria office, and licensed to practice law in California.

10. Alegria De La Cruz is, and at all relevant times was, a citizen of California, employed as the Directing Attorney of CRLA's Fresno migrant office, and licensed to practice law in California.

11. Vanessa Frank Garcia is, and at all relevant times was, a citizen of California, employed as a staff attorney at CRLA's Oxnard office, and licensed to practice law in California.

12. Phyllis Katz is, and at all relevant times was, a citizen of California, employed as a staff attorney at CRLA's Watsonville office, and licensed to practice law in California.

13. Teri Scarlet is, and at all relevant times was, a citizen of California, employed as the Directing Attorney of CRLA's Gilroy, Salinas, and Monterey offices, and licensed to practice law in California.

14. Arturo Rodriguez is, and at all relevant times was, a citizen of California, employed as a staff attorney at CRLA's Coachella migrant office and the Assistant Directing Attorney of CRLA's El Centro office, and licensed to practice law in California.

15. Kirk Ah-Tye is, and at all relevant times was, a citizen of California, employed as the Directing Attorney of CRLA's Santa Barbara office, and licensed to practice law in California.

### Respondent CRLA

16. Respondent CRLA is a California corporation, headquartered in San Francisco, California. It is a nonprofit, legal aid organization that serves the legal needs of low-income

persons in California.  It is the largest legal aid program in the State.  CRLA was founded in 1966.  It has 22 service offices in communities across California.

17.     CRLA employs California-licensed attorneys and non-attorney staff to provide services to low-income individuals.  Each year, CRLA provides many thousands of low-income Californians with no-cost services, including legal advice, representation, and a variety of community education and outreach programs.  CRLA's attorneys have had a positive impact on the lives of many thousands of low-income individuals and have improved conditions for farmworkers, new immigrants, disadvantaged families, school children, the elderly, the physically-challenged, and entire communities.

18.     CRLA receives funding from grants by the Legal Services Corporation ("LSC"), a federally-funded nonprofit corporation established by Congress under the Legal Services Corporation Act ("LSCA"), 42 U.S.C. § 2996 *et seq.*

### Petitioner Kirt West, OIG's Inspector General

19.     Petitioner Kirt West is the head of OIG.  OIG's offices are located in Washington, D.C.  Subject to a number of important limitations, OIG has statutory authority to monitor and audit grant recipients of the LSC for compliance with the LSCA and related laws and regulations.

### FACTUAL BACKGROUND

### CRLA, Its Attorneys, and Their Clients

20.     CRLA employs attorneys who represent and advise low-income persons in California, including low-wage farmworkers.

21.     These laborers are vital to California's rural agricultural economy and are susceptible to mistreatment and legal abuses by labor contractors, employers, and others.  The workers often do not know their legal rights and cannot afford to hire lawyers to help them.  Many of these laborers nevertheless choose not to seek the legal assistance CRLA and its attorneys provide because the laborers fear retaliation from their employers and others.  Many of

those who seek legal help from CRLA attorneys also fear retaliation, and this fear often affects the scope of the legal services they request.  The clients' fears of retaliation arise from the nature of their legal problems.  Many clients seek representation for employment issues and fear retaliation from a labor contractor or employer that would cut off their livelihood.

22.    Other CRLA clients seek representation for housing issues and fear retaliation from their landlords that would result in the loss of their homes.  Other clients seek assistance with domestic violence problems and fear additional violence in the event that the abusive family member discovers the client has contacted a lawyer.  Still others seek representation for educational issues concerning minor children, whose interests would be ill-served if their educational difficulties were to become publicly known.

23.    The confidentiality of communications with attorneys employed by CRLA — and often the very fact that a person has sought legal help — is therefore crucial.  If these clients were told upon arrival at CRLA that their names and the fact of the consultations could not be kept secret, many would leave rather than identify themselves.  It is common for CRLA's and the Attorneys-Interveners' clients to instruct their attorneys not to take any action (such as writing a letter to an employer or landlord) that would reveal they had sought advice from an attorney.

24.    It is not merely the wish of CRLA's and the Attorneys-Interveners' clients that their confidences be protected; it is also their right.  A person's right to prevent disclosure of confidential information communicated to attorneys, either in seeking legal help before an engagement to provide legal assistance has begun, or in obtaining it after there is such an engagement, is guaranteed by California law.  *See* Cal. Evid. Code § 954 ("[T]he client, whether or not a party, has a privilege to refuse to disclose, and to prevent another from disclosing, a confidential communication between client and lawyer[.]").  Article I, Section I, of the California Constitution also gives the clients a right of privacy, which protects from disclosure their identities and the fact that they have consulted an attorney, until such time as they choose to make the representation public.  *See Hooser v. Super. Ct. of San Diego County*, 84 Cal. App. 4th 997, 1003-07 (2000).  The United States Supreme Court has recognized the importance of

the attorney-client privilege, stating that its purpose "is to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).

25.     Unlike CRLA, the Attorney-Interveners are licensed to practice law by the State Bar of California. Like all California attorneys, Attorney-Interveners have a statutory obligation to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client." Cal. Bus. & Prof. Code § 6068(e)(1); *see also* California Rule of Professional Conduct 3-100; ABA *Code of Professional Responsibility* DR 4-101(B). The "confidence[s]" and "secrets" that must be preserved include, among other things, the names of clients and the existence of an attorney-client consultation.

26.     Failure to meet these statutory and ethical obligations can result in serious consequences for the Attorney-Interveners. Among other things, they can be suspended, disbarred, or otherwise subject to discipline. Cal. Bus. & Prof. Code § 6078; *see also* California Rule of Professional Conduct 3-100. In other words, compliance with OIG's subpoena could cost the Attorney-Interveners the loss of their licenses and thus their livelihoods.

### OIG's Investigation and Demand for Client Information

27.     Since December 2005, OIG has been conducting an investigation of CRLA.

28.     Repeatedly during the investigation, CRLA has asked OIG to make arrangements to safeguard the rights of CRLA's clients and respect CRLA's attorneys' legal and ethical obligations with regard to confidential and privileged information. OIG has refused.

29.     On March 16, 2006, Kirt West, LSC's Inspector General, sent a letter to Jose Padilla, Executive Director of CRLA, including a "Data/Document Request" for numerous categories of documents and data. Among the categories, the Data Request instructed CRLA to release to OIG information for each and every client to whom CRLA had provided legal services in any of its offices from January 1, 2003, through October 31, 2005. The Data Request asked

for client names and client-specific information including but not limited to "problem codes" (classifying the nature of the client's problem), client addresses, client phone numbers, client spouses' names, dates of representation, alien status, financial information, and the names of adverse parties. The Document Request asked for numerous categories of documents including materials regarding each and every offices' internal policies and procedures and regarding strategies applied to litigating certain types of cases.

30.     On or about April 14, 2006, CRLA produced several thousands of documents including much of the data requested by the OIG. The produced data was linked to a case number that could be used to group the data for a particular client, thereby potentially linking together client names, problem codes, dates of representation, adverse parties and other client-identifying information. CRLA objected to disclosing the client names and the spouses' names, street addresses, phone numbers, and resident alien card numbers of the clients. In objecting, CRLA outlined for the OIG the applicable law regarding its attorneys' confidentiality obligations. While CRLA produced documents in response to the Document Request (and continues to do so), CRLA objected to the Document Request, in part, by raising the attorney work-product privilege and by objecting to the burden of collecting and producing such a enormous number of documents.

31.     CRLA thereafter met and conferred with OIG, in an attempt to resolve the issue without sacrificing its clients' rights. CRLA's efforts were unavailing.

32.     CRLA faces a threat to its federal funding if it continues to assert its clients' rights against disclosure of confidential and privileged information. In its May 3, 2006 letter to OIG, CRLA wrote that "CRLA as a federal grantee wants to do nothing to jeopardize its status, and similarly do nothing that clashes with federal law, its grant conditions or with your investigation."

33.     On July 19, 2006, the President of the American Bar Association sent a letter to OIG and LSC expressing concern, based on the work of a Presidential Task Force on Attorney-Client Privilege, about OIG's request for confidential client names and confidential information.

The letter urged OIG to use well-established protocols that involve unique identifiers to avoid the problem of disclosing confidential information. His request fell on deaf ears.

34.     Between March 2006 and October 2006, CRLA and OIG conferred about possible resolution of the issues that had arisen regarding the Data/Document Request. OIG declined to accept proposals to resolve the issues in ways consistent with the legal and ethical obligations of California attorneys as to confidential client information.

35.     On October 17, 2006, OIG served CRLA with a subpoena *duces tecum*, seeking computer program data fields that included client names, problem codes, dates of representation, and adverse parties. The subpoena *duces tecum* included the same Data/Document Request that the OIG had issued seven months earlier. OIG also sought non-redacted versions of a number of documents CRLA had already produced.

36.     Beginning around November 17, 2006, and on various dates thereafter, CRLA produced documents and data in response to the subpoena. With respect to the client-identifying information, CRLA produced everything but the client names and the spouse names, street addresses, phone numbers, and alien status. CRLA objected to producing this information on grounds of the attorney-client privilege and confidentiality. CRLA also produced (and continues to produce) numerous documents in response to the Document Request. With respect to the work-product privilege, CRLA objected to producing documents relating to litigating specific cases and litigating in specific priority areas. CRLA also objected to the subpoena on the grounds of burden.

37.     On March 23, 2007, OIG filed a petition for summary enforcement of its subpoena with this Court, which initiated the above-captioned proceeding.

**Legal Protections Surrounding Confidentiality and Privacy**

38.     California's statutes protecting the attorney-client privilege recognize a client's "privilege to refuse to disclose, and to prevent another from disclosing, a confidential

communication between client and lawyer . . . ."  Cal. Evid. Code § 954.  Federal privilege law is to the same effect.  *See, e.g., Baird v. Koerner*, 279 F.2d 623 (9th Cir. 1960).

39.     A California attorney is required by statute to "maintain inviolate the confidence, and at every peril to himself or herself to preserve the secrets, of his or her client."  Cal. Bus. & Prof. Code § 6068(e)(1).  This obligation is broader than just protecting attorney-client privileged communications, but requires California attorneys to protect all confidential client information, regardless of whether it is privileged.  Failure to protect such information from disclosure may result in suspension or disbarment.  *Id*. at § 6078.

40.     California courts have recognized that the attorney-client privilege protects against an attorney's disclosure of a client name to someone who, like OIG here, "already *has* evidence of the substance of a communication between attorney and client" and seeks to be able to link that evidence with the client's name.  *People v. Chapman*, 36 Cal. 3d 98, 110 (1984).  Federal courts have also recognized, under both California law and federal common law, that client names are privileged and not to be disclosed in circumstances where disclosure of the identity of the client is in substance a disclosure of the confidential communication in the relationship between lawyer and client.  *See, e.g., In re Osterhoudt*, 722 F.2d 591, 593-94 (9th Cir. 1983); *In re Witnesses Before the Special March 1980 Grand Jury*, 729 F.2d 489, 493 (7th Cir. 1984).

41.     Moreover, although the services a lawyer provides to a client often necessarily involve disclosure of the client's name and the fact that the lawyer represents that client, this is not true of many of CRLA's clients.  Many of CRLA's clients only disclose their identities to CRLA and its attorneys based on the understanding that the lawyers will be obligated to keep their identities and related confidential information secret, unless and until the clients authorize disclosure.

42.     Attorney-Interveners and their clients also have a Constitutional right to privacy that protects the clients' identities from disclosure.  As the California Court of Appeal has recognized, "the identity of an attorney's clients is sensitive personal information that implicates

the clients' rights of privacy." *Hooser*, 84 Cal. App. 4th at 1005 (2000). The privacy protection afforded to the clients' identities lasts until there is a public disclosure of the representation, through, for example, the filing of a lawsuit. *Id.* at 1006. Until that time, "the client's identity is itself a matter of privacy, subject to the protection against involuntary disclosure through compelled discovery against the attorney." *Id.*

43.     Additionally, Attorney-Interveners' work product is privileged under federal and California law. *See* Cal. Civ. Proc. Code § 2018.030.

44.     LSC and OIG are subject to federal statutory restrictions against interfering with attorneys' compliance with professional responsibilities. The Legal Services Corporation Act states as follows (42 U.S.C. § 2996e(b)(3)):

> [LSC] shall not, under any provision of this subchapter, interfere
> with any attorney in carrying out his professional responsibilities
> to his client as established in the Canons of Ethics and the Code of
> Professional Responsibility of the American Bar Association . . . or
> abrogate as to attorneys in programs assisted under this subchapter
> the authority of a State or other jurisdiction to enforce the
> standards of professional responsibility generally applicable to
> attorneys in such jurisdiction. [LSC] shall ensure that activities
> under this subchapter are carried out in a manner consistent with
> attorneys' professional responsibilities.

45.     Section 509(h) of the Omnibus Appropriations Act of 1996, Pub. L. No. 104-134, and subsequent provisions re-enacting the same language in federal appropriations legislation, addresses information that "shall be made available" to those auditing or monitoring the activities of recipients of LSC funds "[n]otwithstanding Section 1006(b)(3) of the [LSCA]." Although Section 509(h) generally grants OIG access to "financial records, time records, retainer agreements, client trust fund and eligibility records, and client names," Section 509(h) expressly precludes OIG from seeking any information that is subject to the attorney-client privilege.

46.     Further, Section 509(h) does not authorize OIG to override attorneys' professional responsibilities as to the manner of making the specific categories of information available. It does not provide for access to this information without taking any steps to protect the clients' privacy rights or the confidentiality of the information, nor does it indicate any Congressional

intent to override state law that applies to issues of client confidentiality or that otherwise governs the attorney-client relationship.

47.    Section 509(i) of the Omnibus Appropriations Act of 1996, Pub. L. No. 104-134, and subsequent provisions re-enacting the same language in federal appropriations legislation, prohibits disclosure of "any name or document referred to in [Section 509(h)], except to — (1) a federal, state, or local law enforcement official; or (2) an official of an appropriate bar association for the purpose of enabling the official to conduct an investigation of a rule of professional conduct."

### Invasion of Client Privacy, Confidentiality, and Privilege

48.    OIG's request for client names purports to require CRLA to disclose the identity of clients who expect and are entitled to have their identities and the fact of their legal representation remain private and confidential.  These clients include clients of Attorney-Interveners, and fall into several categories:

49.    <u>Confidential Counseling Clients</u>.  The large majority of Attorney-Interveners' clients who fall within OIG's request have a right to the continued confidentiality of their identity and the fact of their legal consultation.  In most if not all of these cases, the client's identity and the fact of representation are also protected by the attorney-client privilege.  The largest group of such clients are those who have sought and received legal advice from Attorney-Interveners and whose identities were never disclosed to a third party or otherwise made public. Many of these individuals are in desperate need of advice and counseling concerning their legal rights as employees, in areas such as wage and hour, discrimination and harassment, and occupational safety and health.  Often, these clients ask for and receive legal advice from Attorney-Interveners and other CRLA attorneys, but refuse to allow their attorney to take any action that would jeopardize their anonymity.  For example, an attorney may recommend writing a letter to the client's employer on behalf of the client, but the client will refuse to allow it for fear that revelation to the employer that the employee has sought advice from a lawyer would

result in retaliation. The client in this situation does not authorize the attorney to instigate any court or administrative proceeding that would result in disclosure of the client's identity. Absent authorization to disclose the client's name and related information, the privilege applies, and disclosure of this information would be a violation of the attorney's professional obligations.

50.     <u>Confidential Pre-Litigation Clients</u>. Attorney-Interveners currently represent clients in sensitive matters, such as discrimination cases, in which the clients have not yet decided to make their claims public by filing a lawsuit or taking some other action. Attorney-Interveners are in the process of investigating potential claims and providing advice to these clients. In many cases, the clients have requested that the attorney not disclose the client's name or the fact of representation until the client makes a final decision regarding whether to proceed with a public filing.

51.     <u>Domestic Violence Clients</u>. Attorney-Interveners currently represent clients in domestic violence matters, in which retaliation is a serious risk. In such cases, the abuser's discovery that the client consulted an attorney can have terrible consequences. Many of these clients will begin the process of obtaining a temporary restraining order against their abuser, only to halt the process for fear of retaliation.

52.     <u>Confidential Juvenile Clients</u>. Attorney-Interveners also represent juveniles in proceedings in which the client's confidentiality must be maintained. For example, Attorney-Interveners have represented juvenile clients in expulsion hearings before local school boards where the hearing was closed to maintain confidentiality. Parental consent is at least one of the prerequisites to disclosing information from such a proceeding, including the identity of the juvenile. *See* Cal. Educ. Code § 49076. In most, if not all, of the cases, the clients' parents have not authorized the attorney to disclose information from expulsion hearings. Attorney-Interveners have also been appointed to represent clients in matters related to proceedings in juvenile court. Pursuant to court orders, information from these proceedings is confidential and can only be released pursuant to an order of the court after notice to the juvenile. *See* Cal. Welf.

& Inst. Code § 827.  There is no court order in any of these cases authorizing the release of information concerning the proceeding.

53.    <u>Confidential Public Housing Clients</u>.  Attorney-Interveners also represent clients in certain public housing disputes in which the client's confidentiality must be maintained under applicable law.  For example, Attorney-Interveners have represented clients who have received notices to terminate a public housing tenancy.  The federal regulations concerning Public Housing Lease and Grievance Procedures guarantee clients the right to a confidential hearing, unless the client consents to a public hearing.  *See* 24 C.F.R. § 966.56(b)(3).  In most, if not all, of these representations, the clients have not consented to public hearings.

54.    <u>Landlord-Tenant Clients</u>.  Attorney-Interveners represent clients in disputes with private landlords as well.  These clients may have legally valid claims against landlords whose properties do not comply with health or housing codes, yet these clients may decide not to pursue the claims for fear of retaliation.

55.    <u>Confidential Unemployment Benefits Clients</u>.  Attorney-Interveners represent clients in matters related to unemployment benefits in which the client's confidentiality must be maintained under applicable law.  For example, Attorney-Interveners have represented clients in administrative proceedings concerning applications for unemployment benefits.  The California Unemployment Insurance Code provides that information from these proceedings must remain confidential, and not open to the public.  *See* Cal. Unemp. Ins. Code § 1094.

56.    <u>Confidential Disabled Student-Clients</u>.  Attorney-Interveners represent clients in matters related to educational services for students with disabilities.  These clients have a right to confidentiality under the Individuals with Disabilities Education Act and the Family Educational Rights and Privacy Act, among other provisions.  *See* 20 U.S.C. § 1232g(b); 34 C.F.R. § 99.30.

57.    <u>Confidential Public Assistance Clients</u>.  Even those clients who do authorize Attorney-Interveners to represent them in certain proceedings are still entitled to protection of their identity.  Pursuant to state and federal law, the representation of clients concerning certain public assistance programs before administrative agencies remains confidential, even after the

attorney appears on behalf of the client.  For example, clients who have applied for or
participated in public assistance programs such as the cash assistance program under CalWorks
and the Food Stamps program are ensured confidentiality under state and federal law.  *See* Cal.
Welf. & Inst. Code § 11325.93(h).  In most, if not all, of the cases, the clients have not
authorized their CRLA attorney to disclose their identity or the fact of the representation.

58.    Attorney-Interveners' clients seek and accept the services from attorneys
employed by CRLA with the expectation and understanding that both their confidential
information, including but not limited to confidential attorney-client communications, and the
very fact that they are consulting a CRLA attorney and any other confidential information about
the matter will be kept secret unless the clients consent to disclosure.

59.    CRLA's production of the identity of clients in the foregoing categories would
breach the clients' expectation of, and right to, privacy and confidentiality concerning their
identity and the fact of their legal representation.  The production of the identity of these clients,
along with the other confidential information that OIG is demanding, would also invade the
attorney-client privilege.

60.    A substantial portion of Attorney-Interveners' clients would not utilize the
organization's vital services if they knew their names and legal problems would be disclosed to a
third party or otherwise made public.  Many of these clients genuinely fear retaliation if the fact
that they have sought legal advice is made public.  Retaliation in fact occurs.  For example,
Attorney-Interveners have handled many cases involving acts of retaliation taken by employers,
spouses and landlords after learning that the client had consulted a lawyer.

//

//

//

//

**PRAYER FOR RELIEF**

WHEREFORE, Attorney-Interveners pray:

1.      That the Petition for Summary Enforcement of Administrative Subpoena *Duces Tecum* be denied, as full compliance by CRLA with OIG's October 17, 2006 subpoena would be contrary to the attorney-client privilege, Attorney-Interveners' professional obligations, and their clients' rights under applicable law;

2.      For reasonable attorneys' fees and other costs, if and to the extent provided by law; and

3.      For such other and further relief as the Court may deem just and proper.


Dated: May 18, 2007                              Respectfully submitted,


                                       By:  /s/ John P. Corrado
                                              John P. Corrado (D.C. Bar No. 380948)
                                              MORRISON & FOERSTER LLP
                                              2000 Pennsylvania Ave., NW, #5500
                                              Washington, DC  20006-1888
                                              Tel: (202) 887-1500

                                              Jack W. Londen (CA SBN 85776)
                                              Stuart C. Plunkett (CA SBN 187971)
                                              Wendy M. Garbers (CA SBN 213208)
                                              MORRISON & FOERSTER LLP
                                              425 Market Street
                                              San Francisco, CA 94105-2482
                                              Tel.: (415) 268-7000

                                              Attorneys for Interveners JEANNIE
                                              BARRETT, ALEGRIA DE LA CRUZ,
                                              VANESSA FRANK GARCIA, PHYLLIS
                                              KATZ, TERI SCARLET, ARTURO
                                              RODRIGUEZ, and KIRK AH-TYE

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION
3333 K STREET, NW, 3RD FLOOR
WASHINGTON, DC 20007,

                  Petitioners,

   v.

CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.
631 HOWARD STREET, #300
SAN FRANCISCO, CA 94105,

                  Respondent.

No. 1:07-mc-00123-EGS

**[PROPOSED] ORDER GRANTING**
**MOTION TO INTERVENE**

THIS MATTER having come before the Court on a Motion to Intervene pursuant to Fed.

R. Civ. P. 24, the Court, having considered the Interveners' motion and opposition thereto,

**HEREBY ORDERS** that the Motion is **GRANTED.**

        **IT IS FURTHER ORDERED** that the parties, including Interveners, are directed to file

by _____, 2007, a joint recommendation for future proceedings.

Dated: _____, 2007.

                  _____

                  The Honorable Emmet G. Sullivan
                  United States District Judge