**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

UNITED STATES OF AMERICA

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION
3333 K STREET, NW, 3RD FLOOR
WASHINGTON, DC 20007,

                Petitioners,

v.

CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.
631 HOWARD ST., #300
SAN FRANCISCO, CA 94105,

                Respondent.

No. 1:07-mc-00123-EGS

**REPLY IN SUPPORT OF MOTION TO INTERVENE PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 24**

Date:    [TO BE DETERMINED]
Time:    [TO BE DETERMINED]
Before:  The Honorable Emmet G. Sullivan

JOHN P. CORRADO (D.C. Bar No. 380948)
JCorrado@mofo.com
MORRISON & FOERSTER LLP
2000 Pennsylvania Ave., NW, #5500
Washington, DC 20006-1888
Tel.: (202) 887-1500

JACK W. LONDEN (CA SBN 85776) (*pro hac vice*)
STUART C. PLUNKETT (CA SBN 187971) (*pro hac vice*)
WENDY M. GARBERS (CA SBN 213208) (*pro hac vice*)
JLonden@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, CA 94105-2482
Tel.: (415) 268-7000

Attorneys for Interveners KIRK AH-TYE, JEANNIE BARRETT,
ALEGRIA DE LA CRUZ, VANESSA FRANK GARCIA,
PHYLLIS KATZ, ARTURO RODRIGUEZ, and TERI SCARLETT

**TABLE OF CONTENTS**

**INTRODUCTION** ............................................................................................................................. 1

**I.     ATTORNEY-INTERVENERS HAVE STANDING TO INTERVENE**. ........................ 2

    **A.     Attorney-Interveners Have Sufficiently Alleged that the Subpoena Seeks their Clients' Confidential and Privileged Information**....................................................... 3

    **B.     Attorney-Interveners Have Established Threatened Injury**. ................................. 4

**II.    ATTORNEY-INTERVENERS MEET RULE 24(a)(2) REQUIREMENTS**.................. 7

**III.   PERMISSIVE INTERVENTION IS ALSO PROPER**. ................................................... 9

**CONCLUSION** ............................................................................................................................. 11

# TABLE OF AUTHORITIES

## CASES

*Beckman Indus., Inc. v. International Ins. Co.*,
   966 F.2d 470 (9th Cir. 1992) ................................................................................................ 4

*DSMC, Inc. v. Convera Corp.*,
   273 F. Supp. 2d 14 (D.D.C. 2002) .................................................................................... 5, 6

*EEOC v. National Children's Ctr.*,
   146 F.3d 1042 (D.C. Cir. 1998) ........................................................................................... 9

\* *Fund for Animals, Inc. v. Norton*,
   322 F.3d 728 (D.C. Cir. 2003) ...................................................................................... 5, 7, 8

*International Brotherhood of Teamsters v. J. F. Partyka & Son, Inc.*,
   176 F.R.D. 429 (D. Mass 1997) ........................................................................................... 9

\* *Jones v. Prince George's County*,
   348 F.3d 1014 (D.C. Cir. 2003) ........................................................................................... 1

*Lake Investors Dev. Group v. Egidi Dev. Group*,
   715 F.2d 1256 (7th Cir. 1983) .............................................................................................. 4

*Lowary v. Lexington Local Board of Education.*,
   704 F. Supp. 1456 (D. Ohio 1988) ....................................................................................... 9

\* *Lujan v. Defenders of Wildlife*,
   504 U.S. 555 (1992) ............................................................................................................. 2

*Reich v. ABC York-Estes Corp.*,
   157 F.R.D. 668 (N.D. Ill. 1994) ........................................................................................... 9

\* *Trobovich v. United Mine Workers of America*,
   404 U.S. 528 (1972) ............................................................................................................. 7

*United States v. AT&T*,
   642 F.2d 1285 (D.C. Cir. 1980) ........................................................................................... 4

*United States v. Union Elec. Co.*,
   64 F.3d 1152 (8th Cir. 1995) ................................................................................................ 5

## STATUTES

Omnibus Consolidated Recessions and Appropriations Act of 1996, §509(i), Pub. L. 104-
   134, 110 Stat. 1321, 1321-59 (April 26, 1996) .................................................................... 6

Fed. R. Civ. P. 24 ....................................................................................................... 1, 4, 7, 9

Interveners Kirk Ah-Tye, Jeannie Barrett, Alegria De La Cruz, Vanessa Frank Garcia, Phyllis Katz, Arturo Rodriguez, and Teri Scarlett (collectively, "Attorney-Interveners") submit this reply memorandum in support of their Motion to Intervene in the pending action.

## INTRODUCTION

The Office of the Inspector General's (the "OIG") opposition skirts the only real issue—does this action impact Attorney-Interveners' interests such that they should be permitted to participate? The answer to that question is clearly yes. Through this action, the OIG seeks production of confidential and privileged information about Attorney-Interveners' clients. Attorney-Interveners both have standing to assert their clients' rights and are ethically obligated to do so. In fact, the relief that the OIG seeks cannot be ordered without putting Attorney-Interveners at risk of violating their professional obligations and subjecting them to discipline by the State Bar of California. Accordingly, it is only fair that Attorney-Interveners be permitted to participate herein.

Contrary to the OIG's view, the ultimate merits of the case are not before the Court. Federal Rule of Civil Procedure 24 does not require that prospective interveners prove their case when seeking to intervene, but requires only that they plead facts to show a "concrete and cognizable interest in the litigation." *See Jones v. Prince George's County,* 348 F.3d 1014, 1018 (D.C. Cir. 2003). Attorney-Interveners have done this—they have alleged that ***the subpoena seeks confidential and privileged information concerning their clients*** and that requiring production of this information would put Attorney-Interveners at risk of violating their ethical duties and professional obligations. The OIG's request to impose heightened pleading standards for intervention should be rejected.

1

The OIG's argument that the privilege claims are not ripe in light of the "blanket refusal" of California Rural Legal Assistance, Inc. ("CRLA") to produce general categories of documents is also without merit. The subpoena seeks confidential and privileged information about Attorney-Interveners' clients. Through this action, the OIG is requesting a court order enforcing the subpoena. That is all that is necessary to make Attorney-Interveners' claims judiciable.

The fact that CRLA is a party to this action is no reason to prevent Attorney-Interveners from being heard. The burden of showing inadequacy of representation is minimal. Attorney-Interveners have more than satisfied it. CRLA and Attorney-Interveners are not identically situated. Attorney-Interveners are personally subject to discipline by the State Bar of California for violation of their ethical duties; CRLA is not. Moreover, Attorney-Interveners are the ones with the human, attorney-client relationships. The Attorney-Interveners are thus in a better position to present their clients' views, which the law implicitly recognizes in extolling the sacrosanct nature of the attorney-client relationship.

All Attorney-Interveners seek is the ability to participate in this litigation and to present the Court with their clients' and their own perspectives. It is unclear why the OIG is opposed to their being heard. In any event, Attorney-Interveners satisfy all standards for intervention and respectfully request that the Court grant their motion.

I.  **ATTORNEY-INTERVENERS HAVE STANDING TO INTERVENE.**

There is no dispute on the legal requirements for standing. Standing requires that: (1) there be an actual or threatened injury; (2) there be a causal connection between the injury and the conduct; and (3) the injury may be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

Attorney-Interveners' Response in Intervention (hereinafter, "Response") pleads facts that satisfy these three prongs: namely, that the OIG's subpoena seeks confidential and

privileged information regarding Attorney-Interveners' clients, which, if disclosed, would violate the clients' privacy interests and put Attorney-Interveners at risk of violating their professional obligations. (Response ¶¶ 6, 21- 26, 29, 48, 58-59.) The OIG's arguments that Attorney-Interveners lack standing are without merit.

### A. Attorney-Interveners Have Sufficiently Alleged that the Subpoena Seeks Their Clients' Confidential and Privileged Information.

The OIG argues that Attorney-Interveners do not sufficiently plead that their clients' private information is sought by the subpoena. The OIG harps on the fact that the Response does not specifically reference 2003-2005, the date range for which the OIG claims information is sought by the subpoena. This argument is one of semantics, and not of substance.

In numerous places in their Response, Attorney-Interveners allege that the subpoena seeks *their* clients' confidential and privileged information. For example, paragraph 48 of the Response states:

> OIG's request for client names purports to require CRLA to disclose the identity of clients who expect and are entitled to have their identities and the fact of their legal representation remain private and confidential. ***These clients include clients of Attorney-Interveners***, and fall into several categories.

(Response ¶ 48 (emphasis added); *see also* ¶¶ 23, 41, 58-59.) Although the Response does not specifically recite the years purportedly covered by the subpoena (2003-2005), it alleges, in the most simple and direct terms, that the subpoena seeks confidential and privileged information concerning Attorney-Interveners' clients.[1] This allegation is all that is necessary for Attorney-Interveners to establish standing.

---

[1] Notwithstanding the OIG's fixation with the fact that Attorney-Interveners did not specifically recite the 2003 to 2005 timeframe, some of the requests in the subpoena are not bounded by the 2003-2005 limitation. For example, Request No. 5 in Appendix A reaches back

(Footnote continues on next page.)

What Attorney-Interveners claim is no mystery: they represented clients at CRLA between 2003 and 2005 (the time period identified in the subpoena) and obtained confidential and privileged information from those clients during that period, which is called for by the subpoena. The allegations in their Response on this topic are more than sufficient to satisfy any notice pleading standard. *See Lake Investors Dev. Group v. Egidi Dev. Group*, 715 F.2d 1256, 1258 (7th Cir. 1983) ("In evaluating the motion to intervene, the district court must accept as true the non-conclusory allegations of the motion and cross-complaint."); *accord United States v. AT&T*, 642 F.2d 1285, 1291 (D.C. Cir. 1980). They should certainly be sufficient here—as the requirements for pleadings in intervention are especially lenient. *See, e.g., Beckman Indus., Inc. v. International Ins. Co.*, 966 F.2d 470, 474 (9th Cir. 1992) (Courts have approved intervention motions without any formal pleading whatsoever.).

If the Court has any remaining doubts on this subject, Attorney-Interveners are certainly willing to submit an amended responsive pleading or supplemental declarations to further clarify that the OIG's subpoena seeks confidential and privileged information about their clients. But, the materials before the Court are more than adequate to establish this point and satisfy Rule 24. Attorney-Interveners believe that putting them through further procedural hoops would only serve to delay resolution of the merits.

### B. Attorney-Interveners Have Established Threatened Injury.

The OIG argues that Attorney-Interveners' claims are not ripe because CRLA has not "appropriately identifi[ed] what information it will seek to withhold on specific claims of privilege and what information it will disclose." (Opposition to Motion to Intervene by

---

(Footnote continued from previous page.)

as far as 1998, and Request No. 1 in Appendix A—which seeks client-identifying information from the data fields from the "CLIENTSW table" of the CRLA's electronic records—has no time limit at all.

4

Attorney-Intervenors, p. 4 (hereinafter, "Opposition.").) In addition to being factually inaccurate, this argument misses the point. Attorney-Interveners need not wait until the Court enters an order requiring production of all of the information the subpoena requests, before seeking to assert their clients' rights. Nor need they wait until CRLA cuts some sort of deal with the OIG, with which Attorney-Interveners may not agree.[2]

All that is required for standing is that Attorney-Interveners establish actual or *imminent* injury—in other words, *threat* of injury satisfies the first prong of Article III standing. *See Funds for Animals, Inc. v. Norton*, 322 F.3d 728, 732-34 (D.C. Cir. 2003). Attorney-Interveners have done this. The OIG is seeking enforcement of a subpoena that calls for information which, if produced, would violate their clients' rights. The law does not require Attorney-Interveners to wait until the Court enters an order compelling compliance with the subpoena before they contest it. *See, e.g., United States v. Union Elec. Co.*, 64 F.3d 1152, 1162 (8th Cir. 1995) ("[I]ntervention may be based on an interest that is contingent upon the outcome of the litigation."). Nor does the law require them to wait for CRLA to negotiate a deal with the OIG (with which Attorney-Interveners might not agree) before seeking to contest the subpoena.

The OIG cites *DSMC, Inc. v. Convera Corp.*, 273 F. Supp. 2d 14, 26 (D.D.C. 2002), an opinion of this Court, for the following proposition: "[m]any courts outside this Circuit have held such potential harm . . . to be too attenuated to justify intervention as of right because that harm is contingent on intervening events." This selective quotation is very misleading. The language that the OIG elides is key to the Court's ruling: The quotation in its entirety is "[m]any

---

[2] Given the stakes and the threat to CRLA's mission and operations, Attorney-Interveners are concerned that CRLA may accede to a compromise that does not comply with their professional obligations or their clients' rights. Attorney-Interveners should have a seat at the table while the issues are litigated and negotiated.

courts outside this Circuit have held such potential harm *caused by an indemnification agreement* to be too attenuated to justify intervention as of right because that harm is contingent on intervening events" (omitted part of quotation emphasized). In *DSMC*, there were two contingencies that had to take place before the prospective intervener would suffer any harm. First, there needed to be an adverse decision on the merits, and, then, the losing party needed to successfully sue for indemnification. These facts of *DSMC* are inapposite here. An adverse decision on the merits, namely an order requiring CRLA to produce all of the information requested by the OIG, would be all that is necessary for Attorney-Interveners and their clients to suffer harm. Unlike *DSMC,* there is no additional contingency present here.

Additionally, the OIG's claim that "some" of the requested information is not protected by privilege is neither here nor there. Attorney-Interveners' and their clients' interests are invaded if one scintilla of privileged information is wrongfully disclosed—this is all that is required for Attorney-Interveners to show threatened injury.[3]

---

[3] In footnote 3 the OIG attacks Attorney-Interveners' allegation that many of their clients legitimately fear retaliation or other harm in the event that their confidential and privileged information were to be disclosed. This cavalier attitude of the OIG regarding the potential injury to clients highlights why Attorney-Interveners should be permitted to intervene in this action. The Attorney-Interveners are necessary to bring into focus the human impact of the OIG's subpoena. The clients' fears of retaliation and other adverse consequences are real.

In mounting its attack, the OIG relies on section 509(i) of the Omnibus Consolidated Recessions and Appropriations Act of 1996, Pub. L. 104-134, 110 Stat. 1321, 1321-59 (April 26, 1996), which prohibits the OIG from disclosing the "financial records, time records, retainer agreements, client trust fund and eligibility records, and client names" it accesses, except to "Federal, State, or local law enforcement official[s] . . . or an official of an appropriate bar association." Notwithstanding this provision, Attorney-Interveners understand that the OIG has **refused** CRLA's request to provide any assurances that the information it produces will not be disclosed to the members of Congress who initiated this investigation, in contravention of section 509(i)'s directive.

(Footnote continues on next page.)

**II.     ATTORNEY-INTERVENERS MEET RULE 24(a)(2) REQUIREMENTS.**

The Attorney-Interveners meet the requirements for intervention as of right. In this regard, Federal Rule of Civil Procedure 24 only requires: (1) that the application be timely, (2) that the applicant demonstrate a legally protected interest in the action, (3) that resolution of the action threatens to harm that interest, and (4) that no party to the action adequately represents the potential intervener's interests. *See, e.g., Fund for Animals, Inc. v. Norton*, 322 F.3d at 731.

The OIG does not dispute that Attorney-Interveners' application is timely. As explained above, the OIG's assertion that Attorney-Interveners have not sufficiently alleged an interest in this action is specious. So is the OIG's claim that Attorney-Interveners' interests are adequately represented by CRLA. "The requirement of the Rule is satisfied if the applicant shows that representation of his interest 'may be' inadequate; and the burden of making that showing should be treated as minimal." *Trobovich v. United Mine Workers of America*, 404 U.S. 528, 538 (1972); *Fund for Animals, Inc. v. Norton*, 322 F.3d at 735 (Demonstrating inadequacy of representation is "not onerous.").

---

(Footnote continued from previous page.)

OIG's refusal is problematic. The investigation was started at the behest of a congressional member of the Dairy Caucus, a group whose interests are adverse to those of the clients CRLA represents. Not coincidently, CRLA has been successful in combating the illegal treatment of low-income workers in the dairy industry. Without any assurances from the OIG that the requested information will not be further disseminated, a congressman could obtain a list of dairy workers who sought legal advice concerning the poor treatment they were receiving at the hands of his constituents. These workers legitimately fear being retaliated against by their employers in a manner that could put their livelihoods in jeopardy. Not only do they fear the loss of their current jobs, but they also legitimately fear being "black-balled" from future employment in the industry and retaliation against family members, who are also dependent on the dairy industry for their livelihoods.

This is just one example of the legitimacy of the fears Attorney-Interveners' clients face. What it underscores is that Attorney-Interveners should be permitted to intervene—they are in a better position to provide the Court with the details of their clients' concerns. This is a perspective that should be heard before the Court rules on the OIG's request.

Attorney-Interveners have satisfied this minimal burden. Attorney-Interveners and CRLA are not identically situated. In the future, their positions may diverge. Unlike Attorney-Interveners, CRLA is not a member of the State Bar of California and is not subject to discipline by that body.[4] The State Bar of California has the power to discipline Attorney-Interveners personally for failure to comply with ethical obligations. Moreover, CRLA's and Attorney-Interveners' concerns about the subpoena are not the same. The Attorney-Interveners' primary allegiance lies with their individual clients. CRLA, on the other hand, is an institution, and has an institutional interest in keeping its funding and operations intact. This interest could cause it to cut a deal regarding the scope of the subpoena or streamlining protocol for gathering, reviewing or producing materials. Attorney-Interveners have no guarantee that the compromises CRLA might be tempted to strike to preserve its funding and dedication to its core mission of legal service to the poor are ones that they will agree are consistent with their professional obligations as attorneys. For example, CRLA could ultimately agree to turn over the millions of pages of documents the OIG is requesting, without first reviewing them for privilege, merely to avoid being forced to divert its personnel and resources to privilege review, at the expense of providing representation to the low-income client base it represents. In contrast to CRLA, Attorney-Interveners are in no position to agree to a deal that would entail producing even a

---

[4] While CRLA must theoretically abide by section 6167 of California Business and Professions Code and "not do or fail to do any act the doing of which or the failure to do which would constitute a cause for discipline of a member of the State Bar," the consequences of failing to honor this obligation would not be the same for CRLA as they would be for Attorney-Interveners. CRLA cannot be disbarred.

scintilla of privileged information.  An Attorney-Intervener who did so could risk professional discipline and the loss of his or her license and livelihood.[5, 6]

### III.  PERMISSIVE INTERVENTION IS ALSO PROPER.

The OIG misstates the standard for permissive intervention, arguing that Rule 24(b) requires a legal interest. (Opposition, p.11.)  It does not.  Permissive intervention only requires: (1) that there is a claim or defense that has a question of law or fact in common—as opposed to the heightened standard of legal interest, (2) that there is an independent ground for subject matter jurisdiction, and (3) that the motion is timely.  *EEOC v. National Children's Ctr.*, 146 F.3d 1042, 1046 (D.C. Cir. 1998).  Even the OIG does not dispute that Attorney-Interveners satisfy these requirements.  Tellingly, the OIG does not claim that permitting Attorney-

---

[5] Besides any discipline that Attorney-Interveners potentially face from the State Bar of California, Attorney-Interveners also run the risk of being subject to discipline by CRLA—quite possibly losing their jobs—should they interfere with any deal cut between CRLA and the OIG.  This is yet another example of how Attorney-Interveners' interests are not completely the same as CRLA's.

[6] The OIG cites several cases for the proposition that in similar subpoena enforcements matters, brought by the OIG against other legal aid organizations, the courts have not required intervention by individual attorneys.  This statement of the law is misleading.  The courts in the cases that the OIG cite did not even address the issue of intervention because, for whatever reason, the individual attorneys did not seek to intervene.

Similarly, the cases that the OIG cites for the proposition that courts reject Rule 24 motions where the interests are aligned are not helpful.  Two of the cases—*International Brotherhood of Teamsters v. J. F. Partyka & Son, Inc.,* 176 F.R.D. 429 (D. Mass 1997) and *Lowary v. Lexington Local Board of Education.*, 704 F. Supp. 1456 (D. Ohio 1988)—are union cases and the potential interveners were union members.  The court in *International Brotherhood of Teamsters* denied intervention based on the reasoning that it would be paradoxical if a union could not assume full responsibility for the very grievance that it decided to pursue.  In the third case that the OIG cites—*Reich v. ABC York-Estes Corp.*, 157 F.R.D. 668 (N.D. Ill. 1994)—the court denied intervention because the employees had only an economic interest in the litigation and, thus, did not have a direct and substantial interest, not, as the OIG states, because the parties interests were aligned.

Interveners to participate in this action would delay it in any significant manner—and it would not.

Instead, the OIG merely rehashes its specious claim that Attorney-Interveners' interests are adequately represented by CRLA and argues that permitting Attorney-Interveners to intervene would not add any "unique information," to the case. Attorney-Interveners respectfully disagree. Attorney-Interveners are human beings. They are the ones who represent and form relationships with their clients. If nothing else, allowing Attorney-Interveners to intervene will bring into focus the human impact of the OIG's subpoena. Attorney-Interveners are also the individuals whose professional obligations as attorneys are at stake. Their views should be heard before the Court makes any ruling impacting them and their clients.

## CONCLUSION

For the foregoing reasons, Attorney-Interveners' Motion to Intervene should be granted.

Dated: June 11, 2007                    Respectfully submitted,


By: /s/ John P. Corrado
    John P. Corrado (D.C. Bar No. 380948)
    MORRISON & FOERSTER LLP
    2000 Pennsylvania Ave., NW, #5500
    Washington, DC  20006-1888
    Tel: (202) 887-1500

    Jack W. Londen (CA SBN 85776)
    Stuart C. Plunkett (CA SBN 187971)
    Wendy M. Garbers (CA SBN 213208)
    MORRISON & FOERSTER LLP
    425 Market Street
    San Francisco, CA 94105-2482
    Tel.: (415) 268-7000

    Attorneys for Interveners KIRK AH-TYE, JEANNIE BARRETT, ALEGRIA DE LA CRUZ, VANESSA FRANK GARCIA, PHYLLIS KATZ, ARTURO RODRIGUEZ, and TERI SCARLETT