# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION
3333 K STREET, NW, 3RD FLOOR
WASHINGTON, DC 20007,

                 Petitioners,

    v.

CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.
631 HOWARD STREET, #300
SAN FRANCISCO, CA 94105,

                 Respondent.

No. 1:07-mc-00123-EGS

**MOTION FOR LEAVE TO FILE
BRIEF OF *AMICUS CURIAE* LOS
ANGELES COUNTY BAR
ASSOCIATION**

Before:  The Honorable Emmet G. Sullivan

PHILIP W. HORTON (District of Columbia Bar # 375667)
Arnold & Porter LLP
555 12 St., N.W.
Washington, DC 20004
Tel:  (202) 942-5787
Fax:  (202) 942-5999
Email:  Philip.Horton@aporter.com

CLARE PASTORE (California State Bar # 135933)
USC Gould School of Law
University Park
Los Angeles, CA  90089
Tel: (213) 821-4410
Fax: (213) 740-5502
Email:  cpastore@law.usc.edu

## MOTION FOR LEAVE TO FILE BRIEF OF *AMICUS CURIAE*

The Los Angeles County Bar Association (the Association) applies for permission to file the attached *amicus curiae* brief. The Association is the largest local voluntary bar association in the United States, with more than 27,000 members. For over 130 years, the Association has represented the interests of its members, the majority of whom are practicing lawyers in the Los Angeles area. In addition to meeting the professional needs of its members, the Association actively promotes the administration of justice, access to the judicial system, and the role of lawyers in facilitating these. The Association also includes a Professional Responsibility and Ethics Committee, which has frequently issued opinions regarding attorneys' duty of confidentiality and the applicability of statutory privileges and constitutional protections for client communication and secrets. Significant among the Association's concerns are ensuring access to justice for low-income clients and protecting the confidentiality of the attorney-client relationship. This case involves both. The Executive Committee of the Association's Board of Trustees accordingly has approved the filing of this application and brief. [1]

Counsel for the Association have read the parties' principal briefs that focus on the duties of legal services lawyers and the interpretation of the statutes governing grantees of the Legal Services Corporation. Counsel believe that the analysis, history, and policy considerations raised in the brief accompanying this application will help to inform the Court as to the unique aspects

---

[1] The Association is frequently approached by parties in litigation regarding the filing of amicus briefs. After such a request, the Association's Amicus Briefs Committee and either the Board of Trustees or the Board's Executive Committee make independent assessments on the filing and content of any brief. That process was followed in this case. The views expressed in this brief are those of the Association regarding the legal issues confronting the Court.

1

of California's stringent protections for confidentiality, privacy, and privilege. The Association therefore requests leave to file this brief *amicus curiae*.

Pursuant to the local rules, amicus co-counsel Clare Pastore spoke by telephone on September 19, 2007 with Helen Hong of the United States Department of Justice, counsel for petitioners in this matter, to determine whether petitioners opposed the filing of this amicus brief. Ms. Hong informed Ms. Pastore that it was petitioners' position that the matter had been adequately briefed by the parties and on that basis petitioners opposed the filing. Ms Hong indicated that if petitioners were able to review the proposed amicus brief before filing, they might or might not oppose its filing.

Respectfully submitted,

Dated: September 19, 2007

PHILIP W. HORTON (Bar No. 375667)
Arnold & Porter LLP
555 12th St. N.W.
Washington, DC 20004
202 942 5787


CLARE PASTORE
USC Gould School of Law
Los Angeles, CA 90089
213 821 4410

Attorneys for *Amicus Curiae*
Los Angeles County Bar Association

2

# Exhibit A

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION
3333 K STREET, NW, 3RD FLOOR
WASHINGTON, DC 20007,

                Petitioners,

   v.

CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.
631 HOWARD STREET, #300
SAN FRANCISCO, CA 94105,

                Respondent.

No. 1:07-mc-00123-EGS

**BRIEF OF *AMICUS CURIAE* LOS
ANGELES COUNTY BAR
ASSOCIATION**

Before:  The Honorable Emmet G. Sullivan

PHILIP W. HORTON (District of Columbia Bar # 375667)
Arnold & Porter LLP
555 12 St., N.W.
Washington, DC 20004
Tel:  (202) 942-5787
Fax:  (202) 942-5999
Email:  Philip.Horton@aporter.com

CLARE PASTORE (California State Bar # 135933)
USC Gould School of Law
University Park
Los Angeles, CA  90089
Tel: (213) 821-4410
Fax: (213) 740-5502
Email:  cpastore@law.usc.edu

# <u>TABLE OF CONTENTS</u>

I. INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

    A.   Protection of the Private Information of Persons
          Consulting Attorneys, Including the Names of Such
          Persons, Is of Vital Concern to California . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

          1.   California's Statutory Duty of Confidentiality Is Virtually Absolute . . . . 2

          2.   California Has Many Times Rejected Attempts to Lessen
               Protection for the Confidential Information of Clients . . . . . . . . . . . . . . 4

          3.   Unlike in Other States, California Courts Are Powerless
               to Create Exceptions to the Attorney-Client Privilege . . . . . . . . . . . . . . . 6

          4.   The Duties of California Attorneys Are Extensive
               When Confidential Information Is Sought . . . . . . . . . . . . . . . . . . . . . . . . 7

    B.   California Courts Have Frequently Recognized That Many
          Clients and Potential Clients Have Valid and Compelling
          Reasons for Privacy in the Fact of Their Consultation with
          Attorneys, as Well as in the Content of Such Communications. . . . . . . . . . . . . . 9

    C.   The Court Should Be Especially Reluctant to Uphold
          the Sweeping Subpoena Here Because of the Strength
          of the State Interest in Regulating Attorneys and The
          Ambiguity in the Federal Statutory Scheme . . . . . . . . . . . . . . . . . . . . . . . . . . 13

          1.   The Plain Language and Context of OIG's Authority,
               as Well as Canons of Construction, Support the Use
               of California Attorney-client Privilege . . . . . . . . . . . . . . . . . . . . . . . . . 13

          2.   The Court Should Also Look to the California
               Constitution in Determining What Client
               Information must Be Disclosed . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

III. CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

i

# TABLE OF AUTHORITIES

**FEDERAL CASES**

Bronx Legal Services v. Legal Services Corp.,
    64 Fed.Appx. 310 (2d. Cir. 2003) ........................................... 8

Erlenbaugh v. U.S.,
    409 U.S. 239 (1972) ...................................................... 14

Hunton v. Williams,
    952 F. Supp. 843 (D.D.C. 1997) ...................................... 14, 15

Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.,
    5 F.3d 1508 (D.C.Cir. 1993) ............................................ 14

Sixty-two Cases of Jam v. U.S.,
    340 U.S. 593 (1951) ..................................................... 14

United States v. Legal Services for New York City,
    249 F.3d 1077 (D.C.Cir. 2001) .......................................... 8

**STATE CASES**

In re Advisory Opinion No. 544,
    103 N.J.399 (1986) ...................................................... 16

Barber v. Municipal Court,
    24 Cal. 3d 742 (1979) .................................................... 2

City & County of S.F. v. Superior Court,
    37 Cal. 2d 227 (1951) .................................................... 2

Com v. Herrick,
    442 Pa. Super. 412 (Pa. Super. 1995) .................................... 7

Dickerson v. Superior Court,
    135 Cal. App. 3d 93 (1982) .............................................. 7

Glade v. Superior Court,
    76 Cal. App. 3d 738 (1978) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Hays v. Wood,
    25 Cal. 3d 772 (1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

Hoiles v. Superior Court,
    157 Cal. App. 3d 1192 (1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Holland v. Thacher,
    199 Cal. App. 3d 924 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Hooser v. Superior Court,
    84 Cal. App. 4th 997 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 11, 12, 13

Imposition of Sanctions in Alt v. Cline,
    224 Wis. 2d 72 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

In re Jordan,
    7 Cal. 3d 930 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Mitchell v. Superior Court,
    37 Cal. 3d 591 (1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 15

People ex rel. Department of Corps. v. Speedee Oil Change Sys., Inc.,
    20 Cal. 4th 1135 (1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

People v. Gionis,
    9 Cal. 4th 1196 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

People v. Kor,
    129 Cal. App. 2d 436 (1955) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

Roberts v. City of Palmdale,
    5 Cal. 4th 363 (1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

Rosso, Johnson, Rosso & Ebersold v. Superior Court,
    191 Cal. App. 3d 1514 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Southern California Gas Company v. Public Utilities Commission,
    50 Cal. 3d 31 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Welfare Rights Organization v. Crison,
    33 Cal. 3d 766 (1983) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

State v. Harris,
    159 Conn. 521 (1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

Taylor v. Taylor,
    45 Ill. App. 3d 352 (1977) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Tien v. Superior Court,
    139 Cal. App. 4th 528 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11, 12

## STATUTES

22 NYCRR § 1200.19(C) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

42 U.S.C. § 2996e(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

California Business and Professions Code §6068(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . passim

California Evidence Code § 954 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

California Government Code §8847 et seq., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

California Government Code §9149.20 et seq., . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

California Government Code §53296 et seq . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

## MISCELLANEOUS AUTHORITIES

ABA Model Rule of Professional Conduct 1.6 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ABA Model Rule of Professional Conduct 1.6(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

84 Op. Att'y Gen. 71 (2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

Thomas Bost, "Corporate Lawyers After the Big Quake: The Conceptual Fault Line in the
Professional Duty of Confidentiality," 19 Geo.J. Legal Ethics 1089 (2006) . . . . . . . . . . . . . . . . 1

Corporations Committee of the Business Law Section
     of the California State Bar, "Conflicting Currents: The Obligation
     to Maintain Inviolate Client Confidences and the New
     SEC Attorney Conduct Rules," 32 Pepp. L.Rev. 89 (2004) . . . . . . . . . . . . . . . . . . . . . 5,6

Charles S. Doskow, <u>The Government Attorney and the Right to Blow the Whistle:</u>
     <u>The Cindy Ossias Case and Its Aftermath,</u> 25 Whittier L.Rev. 21 (2003) . . . . . . . . . . . . 5

Steven Gillers and Roy D. Simon, <u>Regulation of Lawyers:</u>
     <u>Statutes and Standards</u> 748 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Kevin E. Mohr, "California's Duty of Confidentiality: Is It Time for a
     Life-Threatening Criminal Act Exception?" 39 San Diego L.Rev. 307 (2002) . . . . . . . . 1

Mark L. Tuft, "For Your Eyes Only,"
     25 DEC L.A. Law. 26 (2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Vapnek, Tuft, Peck & Wiener,
     <u>California Practice Guide: Professional Responsibility</u> (2006) . . . . . . . . . . . . . . . . . . . . 9

Fred C. Zacharias, "Privilege and Confidentiality in California,"
     28 U.C. Davis L.Rev. 367(1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

v

# I. INTRODUCTION

"If a lawyer could not promise to maintain the confidentiality of his client's secrets, the only advice he or she could provide would be "'Don't talk to me.'" <u>Southern California Gas Company v. Public Utilities Comm'n</u>, 50 Cal.3d 31, 37 (1990), *quoting* <u>Welfare Rights Organization v. Crison</u>, 33 Cal.3d 766, 771 n.3 (1983). If the Inspector General's sweeping subpoena is upheld in this case, that will indeed be the only advice California legal services attorneys can safely give their most vulnerable clients.

The briefs of the parties describe the dispute, and those of California Rural Legal Assistance (CRLA) and the attorney-intervenors set forth in detail the danger to CRLA's clients and consultees of disclosure of their personal information, especially without any guarantee that the information will not be disseminated further. The Los Angeles County Bar Association submits this brief to clarify and expand upon the history, scope, and importance of California's unique protections for the confidential, private, and privileged information transmitted between attorney and client, and to urge this Court to quash or modify the subpoena at issue.

# II. ARGUMENT

**A.     Protection of the Private Information of Persons Consulting Attorneys, Including the Names of Such Persons, Is of Vital Concern to California**

California's attorneys are subject to the strictest confidentiality requirements in the nation.[1] First, in contrast to many states whose confidentiality requirements are embodied in bar

---

[1]See, e.g., Thomas Bost, "Corporate Lawyers After the Big Quake: The Conceptual Fault Line in the Professional Duty of Confidentiality," 19 Geo.J. Legal Ethics 1089, 1089 (2006) (California "has the distinction of having the strictest confidentiality rules in the nation."); Kevin E. Mohr, "California's Duty of Confidentiality: Is It Time for a Life-Threatening Criminal Act Exception?" 39 San Diego L.Rev. 307, 309 (2002) ("California, which has not adopted the [ABA] Model Rules, has the strictest duty of confidentiality of any state. . . ."), Steven Gillers

1

rules, California's are both statutory and constitutional. The importance of these sources has been regularly affirmed by the state's highest court, which has many times noted that "the protection of confidences and secrets is not a rule of mere professional conduct, but instead involves public policies of *paramount importance*. . . ." In re Jordan, 7 Cal.3d 930, 940-41 (1972) (emphasis added); Barber v. Municipal Court, 24 Cal.3d 742, 752 (1979) (same), Glade v. Superior Court, 76 Cal.App.3d 738, 746 (1978) (same). "Protecting the confidentiality of communications between attorney and client is fundamental to our legal system." People ex rel. Dep't of Corps. v. Speedee Oil Change Sys., Inc., 20 Cal.4th 1135, 1146 (1999).

Thus, even though respecting the confidentiality of attorney-client communication "may occasionally result in the suppression of relevant evidence, the Legislature has determined that these concerns are outweighed by the importance of preserving confidentiality in the attorney-client relationship." Mitchell v. Superior Court, 37 Cal.3d 591, 599 (1985). This vindicates the state's belief that the benefits derived from preserving confidentiality "justify the risk that unjust decisions may sometimes result from the suppression of relevant evidence." City & County of S.F. v. Superior Court, 37 Cal.2d 227, 235 (1951); *accord* People v. Gionis, 9 Cal.4th 1196, 1204 (1995).

### 1.    California's Statutory Duty of Confidentiality Is Virtually Absolute

Moreover, and more importantly, California's confidentiality rule for attorneys is virtually absolute. For more than a century, Business and Professions Code § 6068(e), which requires attorneys to "maintain inviolate the confidence, and at every peril to himself or herself to

---

and Roy D. Simon, Regulation of Lawyers: Statutes and Standards 748 (2006) (Until 2003, "unlike every other jurisdiction in the United States, California had no exceptions to its duty of confidentiality.")

preserve the secrets, of his or her client," contained no exceptions of any sort.[2]  Even today, the

sole express exception to the statutory duty to "preserve the secrets" of clients, added in 2003, is

that the attorney may (but is not required to) reveal confidential information relating to the

representation *only* "to the extent that the attorney reasonably believes [] necessary to prevent a

criminal act that the attorney reasonably believes is likely to result in death . . . or substantial

bodily harm. . . ." Cal. Bus. & Prof. Code § 6068(e)(2).

   Thus, even where other states or the ABA's Model Rules of Professional Conduct allow

or require disclosure of client confidences, California's duties do not.  For example, the ABA's

Model Rules of Professional Responsibility, adopted by many states, allow the disclosure of

confidential information to prevent reasonably certain death or substantial bodily harm, even if

not as the result of a criminal act (Model Rule 1.6(b)(2)).  The Model Rules likewise allow

disclosure to prevent the client from committing certain financial or property crimes or frauds

(Rule 1.6(b)(2)), to prevent, mitigate or rectify substantial injury to financial interests or property

resulting from client crime in which the attorney's services were used (Rule 1.6(b)(3)), to secure

legal advice about the lawyer's compliance with the rules (Rule 1.6(b)(4)), to respond to

allegations in a proceeding concerning the lawyer's representation (Rule 1.6(b)(5)), or to prevent

substantial injury to an organizational client when an officer or employee has violated the law or

a legal obligation to the organization and lesser steps have failed (Rule 1.13(c)(2)).  California

---

[2]The origin of California's § 6068(e) is the Field Code developed by David Dudley Field
for New York in the mid-1800s. It was likely brought to California by Field's brother, Steven J.
Field, who later served as Chief Justice of the California Supreme Court. The first incarnation of
today's Section 6068(e) was adopted in 1872 as Section 282 of the California Code of Civil
Procedure. *See* Mark L. Tuft, "For Your Eyes Only," 25 DEC L.A. Law. 26 (2002).

recognizes none of these exceptions to its duty.[3]

## 2. California Has Many Times Rejected Attempts to Lessen Protection for the Confidential Information of Clients

For more than 17 years, the California bar unsuccessfully sought to convince the state

Supreme Court to adopt a rule of professional responsibility allowing disclosure of confidential

information in certain critical situations such as those set forth in ABA Model Rule 1.6. Three

times during this period, in 1987, 1989, and 1992, such rules were proposed, only to be rejected

by the state Supreme Court each time.[4] Both a broad rule which would have allowed disclosures

when ordered by a court, when needed for attorney self-defense, and to prevent criminal acts

likely to result in death or serious bodily harm and a narrower version which included only the

latter exception were rejected, the latter twice.[5] Only after a legislative change in 2003, adding

the narrow death or substantial bodily harm exception to § 6068(e) discussed above, was a bar

rule adopted.

---

[3]Indeed, on the duty of an attorney toward an organizational client, California's rules not only include no exception to confidentiality, but contain an explicit admonition that "the member shall not violate his or her duty of protecting all confidential information as provided in Business and Professions Code § 6068(e), subdivision (e)." Cal.Rule of Professional Conduct 3-600(B). The differences between the obligations of California attorneys and those in other states have frequently been the subject of advisory opinions by California bar associations, including *amicus* Los Angeles County Bar Association. *See, e.g.* California Bar Committee on Professional Responsibility and Conduct (COPRAC) Formal Op. 1982-69 at 4 n.6 (1982) (discussing Model Code's future crimes exception and California's decision not to adopt it); Los Angeles County Bar Association Professional Responsibility and Ethics Committee Op. 519 (2007) (comparing federal and California law on disclosure of confidences in third party suit against attorney).

[4]Details of the three proposals and of the Supreme Court's statements, can be found in Fred C. Zacharias, "Privilege and Confidentiality in California," 28 U.C. Davis L.Rev. 367, 390, n.18, 19 (1995).

[5]*See* Zacharias, *supra* note 4, at n.18, 19.

4

The strength of California's commitment to the cardinal principle of confidentiality is also vividly illustrated by the recent case of Cindy Ossias, a government attorney who in 2000 helped reveal corruption by the state's Commissioner of Insurance, ultimately leading to his resignation and criminal prosecution. Ms Ossias testified before a state legislative committee about the Insurance Commissioner's unlawful practices and about his direction to her and other government employees to shred incriminating documents, only to have the State Bar open an investigation into whether she had violated her duty of confidentiality. *See* Corporations Committee of the Business Law Section of the California State Bar, "Conflicting Currents: The Obligation to Maintain Inviolate Client Confidences and the New SEC Attorney Conduct Rules," 32 Pepp. L.Rev. 89, 115 (2004) (hereinafter "Conflicting Currents").    Although Ms. Ossias was not disciplined, both the bar and the Attorney General opined that there is no whistleblower exception to § 6068(e), and that a separate set of statutes providing protection to government whistleblowers did not override the confidentiality duties of a government attorney.[6]

After the Ossias investigation and the Attorney General's opinion, the Legislature passed a bill authorizing government attorneys to disclose certain types of serious misconduct by government officials, only to have it vetoed by Governor Gray Davis, who explained in his veto message that it would "chip away" at the attorney-client relationship which is intended to foster candor and that "it is critical that clients know they can disclose in confidence . . . . The effective operation of our legal system depends on the fundamental duty of confidentiality owed by

---

[6]*See* 84 Op. Att'y Gen. 71 (2001) (discussing whistleblower statutes at Cal. Gov. Code §§ 8847 *et seq.*, 9149.20 *et seq.*, 53296 et seq.); *see also* Charles S. Doskow, The Government Attorney and the Right to Blow the Whistle: The Cindy Ossias Case and Its Aftermath, 25 Whittier L.Rev. 21, 37-38 (2003).

lawyers to their clients." [7] Two years later, Governor Arnold Schwarzenegger vetoed a similar

bill, explaining that it would "condone violations of the attorney-client privilege, which is the

cornerstone of our legal system." [8] Given that the only exception to confidentiality California

recognizes is for serious bodily harm or death, and that even public corruption or protection of

whistleblowers are not strong enough interests to override the duty of confidentiality, this Court

should not lightly hold that an administrative investigation aimed in part at determining whether

a legal services program is engaging in activity *that is not prohibited*[9] supports a sweeping order

for attorneys to betray the confidences of 39,000 clients and prospective clients.

### 3. Unlike in Other States, California Courts Are Powerless to Create Exceptions to the Attorney-Client Privilege

In the federal system and some states, courts are free to, and do, develop the law of

attorney-client privilege through the common law system, occasionally altering the duties of

attorneys by judicially expanding or contracting the privilege. *See, e.g.* Fed.R.Ev. 501("privilege

. . . shall be governed by the principles of the common law as they may be interpreted by the

courts of the United States in the light of reason and experience"); State v. Harris, 159 Conn.

---

[7]*See* Veto Message re AB 363 (October 1, 2002), available at http://www.leginfo.ca.gov/pub/01-02/bill/asm/ab_0351-0400/ab_363_vt_20020930.html (last visited September 17, 2007); "Conflicting Currents," *supra*, 32 Pepp. L. Rev at 116 & n.132.

[8]*See* Veto Message re AB 2713 (Sept. 28, 2004), available at http://www.leginfo.ca.gov/pub/03-04/bill/asm/ab_2701-2750/ab_2713_vt_20040928.html (last visited September 17, 2007).

[9]As CRLA discusses in its brief and as the Legal Services Corporation itself has acknowledged, several of the allegations OIG is purportedly investigating, including the claims that CRLA engages in "impact-oriented work," "focus[es] resources on Latino farmworkers," or engages in activities involving no clients, involve activities which *are not prohibited* under the Legal Services Act. *See* CRLA Br. at 33-35. Others, such as "inappropriate lobbying activities" and solicitation of clients involve allegations that have already been rejected by LSC.  Id.

6

521 (1970) (recognizing informant privilege), Com v. Herrick, 442 Pa.Super. 412, 432 (Pa.

Super. 1995) (comparing Pennsylvania's statutory and common law privileges); Imposition of

Sanctions in Alt v. Cline, 224 Wis.2d 72, 100 (1999) (Bradley, J., dissenting and criticizing

majority's recognition of nonstatutory expert witness privilege).

In California, by contrast, there is an unbroken line of authority forbidding the state's

courts from reducing the scope of the attorney-client privilege, even in circumstances where

public policy might seem to favor or demand it. *See, e.g.*, Roberts v. City of Palmdale, 5 Cal. 4th

363, 373 (1993) (courts are forbidden to "imply unwritten exceptions to existing statutory

privileges;" *see also* Holland v. Thacher, 199 Cal.App. 3d. 924, 930-31 (1988) (refusing to imply

exception to attorney-client privilege to permit cross-complaints among lawyers); Hoiles v.

Superior Court, 157 Cal.App. 3d 1192, 1199 (1984) (declining to imply exception to privilege for

closely held corporations; noting that California courts are not free to follow practice of judicial

expansion or contraction of privilege under Federal Rule of Evidence 501); Dickerson v.

Superior Court, 135 Cal.App. 3d 93, 101 (1982) (attorney must claim privilege on behalf of

client unless client instructs otherwise and mere allegation of fraud is insufficient to invoke

crime-fraud exception to attorney-client privilege).

### 4. The Duties of California Attorneys Are Extensive When Confidential Information Is Sought

In virtually every state, the duty of attorneys to maintain confidentiality is expressly

excused when a court order to the contrary is issued. *See, e.g.*, Martyn, Fox & Wendel, The Law

Governing Lawyers (2007-08 Edition) (2007) 112-119 (chart showing each state's lawyer code

provisions regarding confidentiality; showing California one of only four states with no

exception to confidentiality requirement for compliance with court order). Such was the case, for example, in the New York professional responsibility rules at issue in <u>United States v. Legal Services for New York City</u>, 249 F.3d 1077, 1082 n.4 (D.C.Cir. 2001) and <u>Bronx Legal Services v. Legal Services Corp.</u>, 64 Fed.Appx. 310, 311 (2d. Cir. 2003).[10] In California, by contrast, no such exception is express in the confidentiality requirements of Business and Professions Code § 6068(e).

While California attorneys generally must obey court orders (Business and Professions Code § 6103), authority suggests they must seek review, perhaps even appellate review, before obeying an order to disclose confidential information covered by the attorney-client privilege, even though the attorney risks being held in contempt of court in the meantime. For example, in <u>People v. Kor</u>, 129 Cal.App.2d 436, 447 (1955), the Court of Appeal held that the trial judge had erred in requiring an attorney to testify as to the contents of conversations with his client. The attorney had testified only under threat of contempt of court. <u>Id.</u> at 441. The Court of Appeal overturned the client's conviction but two of the three justices on the panel, including Presiding Justice Shin, agreed that rather than testify as ordered, "Defendant's attorney should have chosen to go to jail and take his chances of release by a higher court," <u>id.</u> at 101, and that the admonition should be taken as "a suggestion to any and all attorneys who may have the misfortune to be confronted by the same or a similar problem." <u>Id.</u> Notably, the most authoritative practice guide

---

[10]In addition to the provision regarding court orders, New York's confidentiality obligation also allows revelation of, *inter alia*, client confidences as necessary to prevent future crime by a client, to establish or collect the lawyer's fee or defend the lawyer against accusations of wrongful conduct, and to withdraw an opinion or representation given by the lawyer in certain circumstances. *See* 22 NYCRR § 1200.19(C) (D.R. 4-101(C)). None of these exceptions applies in California, although as discussed above, a narrower crime-prevention exception was added to California's statutory duty of confidentiality and disciplinary rules in 2003.

8

on professional responsibility for California attorneys is far from reassuring on the comfort

attorneys ordered to violate their confidentiality duty can take from the fact that a court so orders,

saying only (and without citation to authority) that "it is doubtful that an attorney would be

disciplined for obeying a final court order mandating disclosure." Vapnek, Tuft, Peck & Wiener,

California Practice Guide: Professional Responsibility (2006), § 7:104. As intervenors point out,

(AI Br. at 22 n8) OIG likewise offers no binding authority for the proposition that an attorney's

obligations under § 6068e must give way to a court order. Indeed, the state Supreme Court in

1987 rejected a proposed rule of professional conduct which would have included (inter alia) the

ability to disclose confidences when ordered by courts.[11] In short, California courts, the

Legislature, and the state bar association have all made unmistakably clear, over many decades,

that California's reputation for valuing the confidentiality obligations of attorneys more highly

than any other state, is well-deserved. This Court should not disregard that state judgment unless

absolutely necessary.

**B.    California Courts Have Frequently Recognized That Many Clients and Potential Clients Have Valid and Compelling Reasons for Privacy in the Fact of Their Consultation with Attorneys, as Well as in the Content of Such Communications**

The briefs of CRLA and the attorney-intervenors provide extensive discussion of the

types of clients and prospective clients who consult CRLA and the compelling reasons they have

for desiring that not only the content but also the fact of those consultations remain confidential.

*See* Brief of Attorney-Intervenors (hereinafter "AI Br.") at 2-5, CRLA Br. at 4-6.    California

courts have frequently recognized the importance of these interests, preventing disclosure of

client names even against important countervailing interests.

---

[11]*See* Zacharias, *supra* note 4 at n.18.

9

For example, in <u>Rosso, Johnson, Rosso & Ebersold v. Superior Court</u>, 191 Cal.App.3d
1514 (1987), the Court of Appeal vacated a trial court's order that a law firm disclose the names
of potential clients who had responded to an advertisement encouraging women who had used
the Dalkon Shield contraceptive device to contact the law firm.   Analogizing the situation to the
doctor-patient privilege, the court held that disclosing the names would effectively reveal a
confidential communication (the nature of the legal problem for which they had consulted an
attorney), and thus the names were privileged against disclosure. <u>Id.</u> at 1519.[12]  The court noted
that while disclosure of the client's identity "usually says nothing regarding the reason for legal
counsel or the content of the communication with the attorney," it did do so in the Dalkon Shield
case. <u>Id.</u>

California's courts have also recognized the types of legal problems in which clients and
prospective clients may have particularly compelling interests in privacy:

> A spouse who consults a divorce attorney may not want his or her spouse or other
> family members to know that he or she is considering divorce.  Similarly, an
> employee who is concerned about conduct in his workplace, an entrepreneur
> planning a new business endeavor, an individual with questions about the criminal
> or tax consequences of his or her acts, or a family member who desires to rewrite
> a will may also consult an attorney with the expectation that the consultation

---

[12]Notably, among the contested names were both clients who did not become parties to a
lawsuit and prospective clients who did not end up becoming clients. <u>Id.</u> at 1518. Prospective
clients who merely consult attorneys but do not sign retainers, like many of those whose
information is sought by OIG here, enjoy rights of privacy and privilege in California. Ev.Code.
§ 951, <u>Hooser v. Superior Court</u>, 84 Cal.App.4th 997, 1003 (2000) ("the attorney-client privilege
applies to all confidential communications made to an attorney during preliminary discussions of
the prospective professional employment, as well as those made during the course of any
professional relationship resulting from such discussions.")

The <u>Rosso</u> decision is also noteworthy because it would have been easy for the Court of Appeal
to deny the writ on procedural grounds, since it was filed six months after the contested order
itself and well after the 60 day period to appeal. 191 Cal.App. 3d at 1517.

itself, as well as the matters discussed therein, will remain confidential until such
time as the consultation is disclosed to third parties. . . .

Hooser v. Superior Court, 84 Cal.App.4th 997, 1005-06 (2000).  The declarations and briefs of

CRLA and the attorney-intervenors establish that much of the information sought by OIG here is

far more sensitive than the examples in Hooser, since the problems are equally or more severe

and the clients are even much less sophisticated and more vulnerable than the clients of most

attorneys.  *See* AI Br. 2-5, CRLA Br. 4-6, and declarations cited therein.  Likewise, client

identity has been protected where disclosure might "implicate the client in unlawful activities and

disclosure of the client's name might serve to make the client the subject of official investigation

or expose him to criminal or civil liability."  Hays v. Wood, 25 Cal.3d 772, 785 (1979).  As

CRLA and the attorney-intervenors note, some of the information sought by OIG falls into this

category, especially as to prospective clients with criminal law problems or irregular immigration

status.  If OIG sought either solely names or solely case codes revealing the type of legal

problem, this might not be true, but since it seeks both, the revelation of confidential information

(the nature of particular clients' individual problems) is inevitable.

Even where revelation of names would *not* reveal the nature of a client's problem, or

where the nature of the problem is already known, California courts have protected identifying

information from disclosure when important privacy interests are implicated.  For example, just

last year the California Court of Appeal overturned an order requiring an attorney to provide to

the defendant in a wage and hour class action lawsuit the names of potential class members who

had contacted plaintiffs' counsel.  Tien v. Superior Court, 139 Cal.App.4th 528 (2006).  Even

though the names of all class members were already known to the defendant (because all were

11

employees), the court held that their constitutional privacy interests precluded disclosure, explaining in language strikingly applicable here that

> One of the more sensitive contexts is the employment context. Employees may be reluctant to engage in any act their employer may perceive as adversarial for fear of retaliation. Therefore, if employees feel their employer will be informed whenever they contact an attorney suing the employer, many would be deterred from exercising their right to consult counsel.

Id. at 541.

The state Supreme Court has also protected client names from disclosure even where the disclosure would *not* reveal the nature of the consultation or legal problem. In Hooser v. Superior Court, a judgment creditor of an attorney sought the attorney's client list, ostensibly to determine the prospect of funds likely to come to the attorney. 84 Cal.App.4th at 1002-03. Despite the "wide scope of inquiry concerning property and business affairs of the judgment debtor," the Court rejected the request for the names because of the state constitutional privacy interest of those clients. Id. at 1002, 1007.

Hooser also suggests the sort of balanced approach this Court could adopt in the matter at hand. As the Supreme Court explained, the California privacy right "does not provide absolute protection against disclosure of personal information; rather it must be balanced against the countervailing public interests in disclosure." Id. at 1004. These interests include the "general public interest in facilitating the ascertainment of truth in connection with legal proceedings, in obtaining just results in litigation [and] in facilitating the enforcement of judgments. . . ." Id. (citations omitted). Thus, in evaluating a request for disclosure of sensitive personal information, the court must

> consider the purpose of the information sought, the effect that disclosure will have

12

on the affected persons and parties, the nature of the objections urged by the party resisting disclosure and availability of alternative, less intrusive means for obtaining the requested information. Based on an application of these factors, the more sensitive the nature of the personal information that is sought to be discovered, the more substantial the showing of the need for the discovery that will be required before disclosure will be permitted.

Id.

Here, as attorney-intervenors show, much of the information sought (particularly that regarding clients and prospective clients with criminal or immigration issues, domestic violence problems, or potential employment claims against hostile employers), is highly sensitive. Thus, the Court should be certain that the information OIG seeks is truly necessary to its investigation, and that no less intrusive means of obtaining it are available, before requiring disclosure.

**C.    The Court Should Be Especially Reluctant to Uphold the Sweeping Subpoena Here Because of the Strength of the State Interest in Regulating Attorneys and the Ambiguity in the Federal Statutory Scheme**

OIG does not dispute that the plain language of Section 509(h) prohibits it from seeking documents protected by the attorney-client privilege from grantees. However, it contends that because this is a federal enforcement proceeding, only federal privilege applies. Petition at 17. Attorney-intervenors amply show (AI Br. at 10-16) that much of the information OIG seeks, including client names in certain circumstances, is protected even under the federal attorney-client privilege, and *amicus* agrees. However, *amicus* believes there are some differences between state and federal privilege that are relevant here, and show in this section why state privilege and state constitutional provisions should govern.

**1.    The Plain Language and Context of OIG's Authority, as Well as Canons of Construction, Support the Use of California Attorney-client Privilege**

First, the statute on which OIG relies, section 509(h), does not itself qualify "attorney-

13

client privilege" by including the term "federal." Thus, as a textual matter, OIG's reading is not

compelled by the statute itself.  *C.f.* <u>Sixty-two Cases of Jam v. U.S.</u>, 340 U.S. 593, 596 (1951)

("Our problem is to construe what Congress has written. . . .It is for us to ascertain—neither to

add nor to subtract, neither to delete nor to distort.")

Second, reading "attorney-client privilege" in section 509(h) to refer to the privilege as

defined by the states in which the regulated attorneys practice is consistent with the direction in

the Legal Services Act that LSC respect the professional responsibilities of its grantees' attorneys

and not abrogate "the authority of a State or other jurisdiction to enforce the standards of

professional responsibility" applicable to attorneys.  42 U.S.C. § 2996e(b)(3).[13]

Third, the cases on which OIG relies for the proposition that only the federal privilege is

applicable are distinguishable in an important way.  <u>Linde Thomson Langworthy Kohn & Van</u>

<u>Dyke, P.C. v. Resolution Trust Corp.</u>, 5 F.3d 1508 (D.C.Cir. 1993)  (Pet. at 17) and <u>Hunton v.</u>

<u>Williams</u>, 952 F.Supp. 843 (D.D.C. 1997) (Pet. at 16), both involved the Resolution Trust

Corporation's investigations following the savings and loan crisis.  However, neither case

concerned an investigation whose purpose was to supervise the professional work of attorneys,

and neither was carried out under a  statutory scheme such as this one, which explicitly requires

the regulating agency to respect state professional responsibility requirements.[14]

---

[13] *C.f.* <u>Erlenbaugh v. U.S.</u>, 409 U.S. 239, 243 (1972) (statutes addressing the same subject matter generally should be read "as if they were one law.")

[14] Moreover, in enforcing the subpoena, the court in <u>Hunton & Williams</u> rejected the position OIG asserts here, that the requesting agency need not provide any guarantees of confidentiality for the requested information.  Instead, the court held that it was "appropriate for the court to ensure that the confidential information of innocent parties be protected.  Parties have a legitimate expectation that even the fact of their engagement will not become a matter of public knowledge."  952 F.Supp. at 857.  Accordingly, the court directed the parties to agree

14

Finally, as Attorney-Intervenors point out, OIG's authority to thwart California's requirements for attorneys should also be read narrowly because of the general presumption against attributing to Congress an intent to preempt state law where no such preemption is express, especially in an area of traditional state control such as the regulation of attorneys. *See* AI Br. at 25-26.

Since there is no conflict between the requirements of Section 509(h) that the attorney-client privilege be respected and the use of state attorney-client privilege for that purpose, and since the use of state privilege is consistent with both the LSC Act and general canons of construction, this Court should look to California law to determine the scope of attorney-client privilege applicable in this investigation.

2. **The Court Should Also Look to the California Constitution in Determining What Client Information must Be Disclosed**

Although California's attorney-client privilege is statutory (see Cal. Ev. Code § 954), and derives in large part from the common law,[3] it overlaps in part with the Constitutional guarantee of privacy. As discussed in Section B above, the state's courts have often protected the names of attorneys' clients from disclosure under the Constitution, even when the statutory privilege was inapplicable.

Thus, this Court should be guided not only by the contours of California's attorney-client privilege, but also by the Constitutional privacy guarantee which complements it. Indeed, it would be perverse to protect the name of clients if a state's statutory attorney-client privilege

---

upon confidentiality measures. Id.

[3]*See, e.g.*, Mitchell v. Superior Court, 37 Cal.3d 591, 599 (1984) ("The attorney-client privilege has been a hallmark of Anglo-American jurisprudence for almost 400 years.")

15

required it, but not if a stronger source of state authority, such as California's Constitution, did so.[4]  That is, in interpreting the scope of materials protected by the attorney-client privilege in section 509(h), the Court should look to both the Constitution and the privilege's statutory incarnation.   This would achieve consistency in interpreting Section 509(h) as well, since the protections due the clients of legal services attorneys should depend upon the substantive policy and law of the jurisdiction where they seek or receive legal services, not whether that state places its protections in its Evidence Code or its Constitution.[5]

//

//

//

//

//

//

//

---

[4]*Amicus* notes that while some California decisions protect the names of an attorney's clients from disclosure based on the statutory privilege and some based on the Constitution, in some states the attorney-client privilege alone has served that purpose. *See, e.g.*, In re Advisory Opinion No. 544, 103 N.J.399, 406 (1986) (attorney-client privilege protects clients' identities if disclosure would reveal other information such as their mental and financial status); Taylor v. Taylor, 45 Ill.App.3d 352 (1977) (in domestic relations cases, attorney permitted not to reveal client's address to court when client legitimately feared physical reprisal from spouse).

[5]It is also worth noting that all federal courts in California have adopted the California Rules of Professional Responsibility as rules of practice.  Thus, interpreting the scope of section 509(h) as *amicus* urges also has the virtue of avoiding the situation whereby the substantive protection of client information would flow from the happenstance of whether OIG happens to file its enforcement proceeding in federal court in Washington or California.

## III. CONCLUSION

For all of the foregoing reasons, *amicus curiae* Los Angeles County Bar Association

respectfully urges this Court to quash or modify the subpoena.

Respectfully submitted,

Dated: September 19, 2007

PHILIP W. HORTON (DC Bar No. 375667)
Arnold & Porter LLP
555 12th St., N.W.
Washington, DC 20004
202 942 5787


CLARE PASTORE
USC Gould School of Law
Los Angeles, CA 90089
213 821 4410

Attorneys for *Amicus Curiae*
Los Angeles County Bar Association

17

## **PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1616 Beverly Boulevard, Los Angeles, California 90026. I am employed in the office of a member of the bar of this court at whose direction the service was made.

On September 20, 2007, I served the foregoing document:

### **MOTION FOR LEAVE TO FILE BRIEF OF AMICUS CURIAE LOS ANGELES COUNTY BAR ASSOCIATION**

on the parties in this action by electronic mail and placing a true and correct copy of each document thereof, enclosed in a sealed envelope, addressed as follows:

Arthur R. Goldberg
Helen H. Hong
U.S. Department of Justice
Civil Division
20 Massachusetts Ave., N.W.
Room 7104
Washington, D.C. 20530
Email: helen.hong@usdoj.gov

Martin R. Glick
Bernard A. Burk
Howard Rice Nemerovski Canady Falk & Rabkin
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Email: bburk@howardrice.com

Chong S. Park
Edward H. Meyers
Saveria B. Harris
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Email: emeyers@kirkland.com

Jack W. Londen
Wendy Garbers
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
Email: WGarbers@mofo.com

Laurie Tarantowicz
LSC-Office of Inspector General
3333 K. Street, NW, 3rd Floor
Washington, D.C. 20007
Service via US mail only

I am readily familiar with the business' practice of collection and processing correspondence for mailing with the United States Postal Service. I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Los Angeles, California.

Executed on September 20, 2007, at Los Angeles, California.



GENEVA TIEN

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

and

KIRT WEST,
INSPECTOR GENERAL OF THE
LEGAL SERVICES CORPORATION
3333 K STREET, NW, 3RD FLOOR
WASHINGTON, DC 20007,

                          Petitioners,

    v.

CALIFORNIA RURAL LEGAL
ASSISTANCE, INC.
631 HOWARD STREET, #300
SAN FRANCISCO, CA 94105,

                          Respondent.

No. 1:07-mc-00123-EGS

**[PROPOSED] ORDER GRANTING
LEAVE TO FILE BRIEF OF
AMICUS CURIAE LOS ANGELES
COUNTY BAR ASSOCIATION**

Before:  The Honorable Emmet G. Sullivan

PHILIP W. HORTON (District of Columbia Bar # 375667)
Arnold & Porter LLP
555 Twelfth Street N.W.
Washington, DC 20004
Tel:  (202) 942-5787
Fax:  (202) 942-5999
Email:  Philip.Horton@aporter.com


CLARE PASTORE (California State Bar # 135933)
USC Gould School of Law
University Park
Los Angeles, CA  90089
Tel: (213) 821-4410
Fax: (213) 740-5502
Email:  cpastore@law.usc.edu

Good cause having been shown, the Motion for Leave to File Brief of *Amicus Curiae* Los Angeles County Bar Association is hereby GRANTED.

Dated: September ___, 2007

_____

HONORABLE EMMET G. SULLIVAN
United States District Judge

## PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

     I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action. My business address is 1616 Beverly Boulevard, Los Angeles, California 90026. I am employed in the office of a member of the bar of this court at whose direction the service was made.

On September 20, 2007, I served the foregoing document:

### PROPOSED ORDER GRANTING LEAVE TO FILE BRIEF OF AMICUS CURIAE LOS ANGELES COUNTY BAR ASSOCIATION

on the parties in this action by electronic mail and by placing a true and correct copy of each document thereof, enclosed in a sealed envelope, addressed as follows:

Arthur R. Goldberg
Helen H. Hong
U.S. Department of Justice
Civil Division
20 Massachusetts Ave., N.W.
Room 7104
Washington, D.C. 20530
Email: helen.hong@usdoj.gov

Martin R. Glick
Bernard A. Burk
Howard Rice Nemerovski
     Canady Falk & Rabkin
A Professional Corporation
Three Embarcadero Center, 7th Floor
San Francisco, California 94111-4024
Email: bburk@howardrice.com

Chong S. Park
Edward H. Meyers
Saveria B. Harris
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Email: emeyers@kirkland.com

Jack W. Londen
Wendy Garbers
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94105-2482
Email: WGarbers@mofo.com

Laurie Tarantowicz
LSC-Office of Inspector General
3333 K. Street, NW, 3rd Floor
Washington, D.C. 20007
Service via US mail only

     I am readily familiar with the business' practice of collection and processing correspondence for mailing with the United States Postal Service. I know that the correspondence is deposited with the United States Postal Service on the same day this declaration was executed in the ordinary course of business. I know that the envelope was sealed and, with postage thereon fully prepaid, placed for collection and mailing on this date, following ordinary business practices, in the United States mail at Los Angeles, California.

     Executed on September 20, 2007, at Los Angeles, California.

GENEVA TIEN