## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

```
_____
                                )
UNITED STATES OF AMERICA,       )
et al.,                         )
                                )
              Petitioners,      )
                                ) Misc. Action No. 07-123 (EGS)
         v.                     )
                                )
CALIFORNIA RURAL LEGAL          )
ASSISTANCE, INC.,               )
                                )
              Respondent.       )
_____)
```

## MEMORANDUM OPINION

Pending before the Court is the petition of the United States and the Office of the Inspector General of the Legal Services Corporation ("LSC-OIG" or "Inspector General") for summary enforcement of an investigative subpoena issued pursuant to section 6(a)(4) of the Inspector General Act of 1978, 5 U.S.C. app. 3 §§ 1-13.[1]  Respondent California Rural Legal Assistance, Inc. ("CRLA") and intervenors, CRLA staff attorneys Jeannie Barrett, Alegria de la Cruz, Vanessa Frank Garcia, Phyllis Katz, Teri Scarlet, Arturo Rodriguez, and Kirk Ah-Tye ("attorney-intervenors") resist the subpoena, arguing that much of the information requested is privileged under state and federal law and, in addition, that CRLA is prohibited from disclosing the

---

[1]  In response to concerns raised by the Court, LSC-OIG has withdrawn its request for certain categories of information contained in the original subpoena.  This Opinion and Order relate to the subpoena as modified.

requested information under the California state professional responsibility code and related state laws.  Respondent further argues that the information requested is not relevant to any legitimate lawful purpose and that the subpoena is unduly burdensome and unreasonable.

Upon careful consideration of the pleadings, case law, and the entire record in this case, the Court concludes that the subpoena shall be enforced.  As a threshold matter, the Court concludes that California professional responsibility rules do not prohibit disclosure of the requested information and, in addition, that state privileges do not apply to the subpoena. The Court further concludes that the subpoena is enforceable because the information requested is reasonably relevant to a legitimate lawful purpose and because compliance with the subpoena is not unduly burdensome, particularly if conducted in accordance with the proposed data review protocol submitted by petitioners.  Finally, the Court concludes that, although respondent and the attorney-intervenors have raised legitimate privacy and confidentiality concerns with respect to the representation of their clients, these concerns may be addressed by the entry of an appropriate protective order.  Accordingly, and for the reasons set forth below, it is hereby **ORDERED** that the petition is **GRANTED.**

I.    **BACKGROUND**

The Legal Services Corporation ("LSC") is a private, non-profit corporation established by the Legal Services Corporation Act of 1974 ("LSC Act"), 42 U.S.C. §§ 2996-2996l.  LSC is authorized to provide financial assistance in the form of grants to qualified individuals and organizations for the purpose of providing legal assistance to the poor.  *Id.* § 2996e(a)(1)(A). CRLA is a California non-profit corporation, founded in 1966 to provide a wide range of free legal assistance and representation to low-income communities in California.  CRLA Opp'n to Petition for Enforcement ("CRLA Opp'n"), Declaration of William G. Hoerger ("Hoerger Decl."), Docket No. 28-2, ¶ 13.  In 2006, CRLA received about $6.8 million, representing roughly sixty percent (60%) of its $11.2 million budget, in LSC grants.  Hoerger Decl. ¶ 15.

In late 2005, Congress forwarded to LSC-OIG a complaint from a confidential source,[2] which alleged that CRLA was not expending its federal grant assistance in accordance with statutory directives.  Petition for Summary Enforcement of Subpoena Duces Tecum ("Petition") Exhibit C, Declaration of Laurie Tarantowicz ("Tarantowicz Decl."), Docket No. 1-3, ¶ 4.  Among other things,

---

[2]    Petitioners assert the complaint came from a former CRLA employee; CRLA suggests that it came from members of Congress at the behest of the dairy industry, against which CRLA regularly litigates.  *See* CRLA Opp'n, Docket No. 28, at 8; Petitioners' Reply in Support of Petition ("Pet. Reply"), Docket No. 45, at 6.  The source of the complaint is irrelevant to the issues here.

by law LSC must ensure that "grants and contracts are made so as to provide the most economical and effective delivery of legal assistance to persons in both urban and rural areas," 42 U.S.C. § 2996f(a)(3); that grantees refrain from political activity; that no federal funds are used in fee-generating cases; that no federal funds are used to provide legal assistance for or on behalf of an alien, unless certain criteria are met; and that no grants are awarded to private law firms expending 50 percent or more of their resources or time litigating issues "in the broad interests of a majority of the public," *id.* § 2996f(b)(5). *See generally* 42 U.S.C. § 2996f; *see also* Omnibus Consolidated Rescissions and Appropriations Act of 1996, Pub. L. 104-134, §§ 501-509, 110 Stat. 1321, 1321-50 to -59 (Apr. 26, 1996) [hereinafter 1996 Appropriations Act]. The complaint received by LSC-OIG alleged principally that CRLA (1) impermissibly focused its resources on broad-based "impact" litigation as opposed to legal services work; (2) impermissibly focused its resources on farm worker and Latino issues to the detriment of other underserved populations; (3) impermissibly solicited clients; (4) impermissibly worked on fee-generating cases; and (5) impermissibly performed significant work on cases without an identifiable client. Petition, Docket No. 1, at 4-5.

Upon receipt of the complaint, LSC-OIG launched an investigation pursuant to its powers under the Inspector General

4

Act.  The Inspector General Act charges inspectors general with the duty and responsibility "to conduct, supervise, and coordinate audits and investigations relating to the programs and operations of" their respective departments and agencies.  5 U.S.C. app. 3 § 4(a)(1).  Inspectors general such as LSC-OIG have broad power to "require by subpoena the production of all information, documents, reports, answers, records, accounts, papers and other data in any medium (including electronically stored information . . . ) and documentary evidence necessary in the performance of the functions assigned by [the Inspector General Act]."  *Id.* § 6(a)(4).  Such subpoenas "shall be enforceable by order of any appropriate United States district court."  *Id.*

To aid in its investigation, on March 16, 2006, LSC-OIG served CRLA with an administrative request for information.  In this request, LSC-OIG sought specific categories of data from CRLA's computerized "KEMPS" database, including client names, addresses, dates of representation, and "problem codes" (codes indicating the subject matter for which clients sought assistance).  Tarantowicz Decl. ¶ 5; *see also* CRLA Opp'n, Declaration of Karen Smith ("Smith Decl."), Docket No. 28-1, ¶ 18.  LSC-OIG also sought several categories of documents: (1) CRLA's internal written policies, procedures and/or manuals with regard to timekeeping, case handling, document handling,

compliance, client intake, and case reporting; (2) client intake logs, personnel records, and work plans for CRLA's Modesto office; (3) CRLA Board meeting agendas and minutes; (4) expense records for CRLA's Stockton and Modesto offices; (5) materials from CRLA-hosted conferences; (6) agendas, minutes, and other reports from CRLA task force activities; and (7) client names, intake sheets, statements of facts, retainer agreements, waivers, and timekeeping records for approximately 36 specific matters. Hoerger Decl. ¶ 47.  In response, CRLA turned over approximately 6,000 pages of hard copy documents and several megabytes of data. *See* Hoerger Decl. ¶¶ 45, 48, 56-60, 63, 66, 72; Smith Decl. ¶ 19. However, CRLA withheld and/or redacted all client names and other client identifying information, asserting attorney-client privilege under federal and California state law, as well as confidentiality obligations under California state law.  Hoerger Decl. ¶ 56.  In addition, CRLA withheld and/or redacted information that it determined to be privileged as attorney work product under both federal and California state law.  Hoerger Decl. ¶ 61.

Using the information it received from CRLA, on September 14, 2006, LSC-OIG provided an interim report on its investigation to the Subcommittee on Commercial and Administrative Law of the House Committee on the Judiciary.  *See* Tarantowicz Decl. ¶ 8. This interim report indicated that LSC-OIG had found "substantial

evidence that CRLA violated federal law by: soliciting clients; working a fee-generating case; requesting attorney fees; and associating CRLA with political activities." *Id*. (citing Petition Exhibit 3, Report, Docket No. 1-6).  The interim report also raised "serious concerns" that CRLA may have been engaging in impact litigation to an impermissible extent and conducting litigation without an identifiable client, in violation of congressionally-mandated restrictions.  *Id.*  The report concluded, however, that LSC-OIG could not make final determinations with respect to these and other allegations raised in the anonymous complaint without additional information from CRLA.  *Id.*

Accordingly, on October 17, 2006, LSC-OIG served CRLA with a subpoena *duces tecum* seeking nine categories of documents in connection with its investigation.  *See generally* Petition Exhibit A, Subpoena Duces Tecum, Docket No. 1-1.  First, LSC-OIG sought client identifying information contained in CRLA's KEMPS database, including full name, address, telephone number, spouse name, birth date, and citizenship status.[3]  Tarantowicz Decl.

---

[3]     In its original administrative document request, LSC-OIG sought client identifying information only for those persons whose cases were in open status during any part of the period between January 1, 2003, and October 31, 2005.  *See* Smith Decl. ¶ 18; Hoerger Decl. ¶ 110.  Petitioners note that LSC-OIG intended to limit the scope of Request 1 of its subpoena to this same time period.  Petitioners' Reply at 14, n.9 ("LSC-OIG inadvertently omitted that the same time period limiting its request in the prior data call limited Request 1 to information

¶ 10; Hoerger Decl. ¶ 109; Smith Decl. ¶ 17 (describing content
of CLIENTSW data table).  Second, LSC-OIG requested information
relating to the nature and extent of CRLA's representation
between January 1, 2003 and October 31, 2005, including "'problem
codes,' dates of representation, adverse parties, classification
of each undertaking as a case, matter or activity and amount of
time spent on each undertaking."  Tarantowicz Decl. ¶ 10.  Third,
LSC-OIG requested unredacted copies of all documents CRLA had
provided in response to LSC-OIG's initial administrative request.
*See* Subpoena Duces Tecum ¶ 3.  Fourth, LSC-OIG asked for detailed
information regarding any work CRLA performed with five specific
non-profit organizations, as well as any legislative work
performed by CRLA, between January 2003 and the date of the
subpoena.  *Id.* ¶ 4.  Fifth, LSC-OIG asked for detailed
information regarding CRLA's work with two additional
organizations at any time between January 1998 and the date of
the subpoena.  *Id.* ¶ 5.  Sixth and seventh, LSC-OIG requested
information regarding all conferences CRLA hosted from January
2003 to the date of the subpoena, including lists of CRLA
conference attendees, conference materials, meeting minutes, and

---

for data between January 1, 2003 and October 31, 2005 in the
KEMPS data field from the CLIENTSW table.").  Accordingly, in
granting the petition to enforce LSC-OIG's subpoena, the Court
finds that CRLA need only produce client identifying information
pursuant to Request 1 of the subpoena for those persons whose
cases were in open status during any part of the period between
January 1, 2003, and October 31, 2005.

summaries.  *Id.* ¶¶ 6-7.  Finally, LSC-OIG requested all CRLA Board of Directors meeting packets, as well as all CRLA task force meeting agendas, minutes, summaries and reports from January 2003 to the date of the subpoena.  *Id.* ¶¶ 8-9.

CRLA produced some additional documents in response to LSC-OIG's subpoena but again refused to produce much of the information requested.  *See generally* CRLA's Response to Subpoena Duces Tecum, Petition Exhibit B, Docket No. 1-2.  Specifically, CRLA asserted that disclosure of client names and/or other client identifying information would invade state and federal attorney-client privilege as well as its attorneys' confidentiality obligations under California law.  Although CRLA acknowledged that some of the requested client identifying information was perhaps not privileged, CRLA maintained that in order to identify privileged information it would need to review approximately 39,000 individual hard copy case files, which it claimed was unduly burdensome.  CRLA also objected to LSC-OIG's request for client identifying information as overbroad because the information requested was not reasonably relevant to any legitimate lawful purpose.  Finally, in addition to withholding client identifying information, CRLA declined to produce other information that it determined to be protected under state and federal attorney work product privilege.

For ease of reference, the following table summarizes LSC-OIG's subpoena request, responsive documents produced, documents not produced, and the stated bases for CRLA's objections, as set forth in CRLA's response to the subpoena. *See generally* Petition Exhibit B.

| LSC Request | Documents Produced | Documents Withheld | Bases for Withholding |
|---|---|---|---|
| Request 1: Data fields in CLIENTSW table | None (CRLA provided some documents in response to earlier administrative request) | Client identifying information including name, address & phone, spouse name, green card number, adverse party name | Burdensome; overbroad; attorney-client privilege; state confidentiality obligations |
| Request 2: Data fields in TTIME table for all matters between Jan. 1, 2003, and Oct. 31, 2005 | All fields but Ucode and REASON | Ucode and REASON fields | Burdensome; overbroad; attorney-client privilege; state confidentiality obligations |
| Request 3: Unredacted copies of all documents previously provided | Copies of client intake forms with unredacted financial information | All remaining documents | Duplicative; documents were properly redacted on basis of attorney-client privilege and attorney work product privilege |
| Request 4: Matter numbers, client names, | Produced some responsive documents subject to | Redacted client identifying information | Attorney-client privilege; state confidentiality |

| intake sheets, statements of facts, retainer agreements, co-counsel agreements, timekeeping agreements for work in connection with five organizations and legislative work since Jan. 2003 | objections | from intake sheets, retainer agreements, statements of fact | obligations |
| Request 5: Matter numbers, client names, intake sheets, statements of facts, retainer agreements, co-counsel agreements, timekeeping agreements for work in connection with two organizations since 1998 | Produced some responsive documents subject to objections | Redacted client identifying information from intake sheets, retainer agreements, statements of fact | Attorney-client privilege; state confidentiality obligations |
| Request 6: Lists of attendees at conferences since Jan. 2003 | Produced documents subject to general objections | | |
| Request 7: Materials distributed at conferences | Produced some documents subject to general | Withheld or redacted some documents | Attorney work product privilege |

| since Jan. 2003 | objections | | |
|---|---|---|---|
| Request 8: CRLA Board of Directors meeting packets since Jan. 2003 | Produced documents subject to general objections | | |
| Request 9: CRLA task force meeting agendas, minutes, summaries, reports since Jan. 2003 | Produced documents subject to general objections | Withheld or redacted some documents | Attorney work product privilege |

Shortly after receiving CRLA's response, LSC-OIG filed a petition to enforce its subpoena in this Court.

## II. THIS ACTION

This action has a protracted history.  Soon after it was filed, individual attorneys employed by CRLA moved to intervene, and, separately, CRLA clients moved to intervene.  The Court granted the attorneys' intervention motion but denied the clients' on grounds that the CRLA attorney-intervenors would adequately represent their clients' interests in this matter. *See* Memorandum Opinion and Order, August 6, 2007, Docket No. 24, at 4.  The Court also permitted three organizations to file *amicus curiae* briefs in support of CRLA.  Following extensive briefing on LSC-OIG's petition to enforce its subpoena, the Court held a hearing on the petition.  During the hearing, the Court expressed concerns about the potential burden on CRLA of

reviewing case files for privileged material prior to releasing the subpoenaed information.  The Court also expressed concerns about the need to safeguard any client identifying information CRLA provided to LSC-OIG.  *See* Hearing Transcript, August 19, 2008, at 15, 38, 82-83.

Following several months of attempted mediation before a magistrate judge, LSC-OIG and CRLA submitted a joint status report to the Court indicating that the parties had reached agreements as follows: (1) LSC-OIG would withdraw its request for client identifying information in all juvenile and domestic relations matters; (2) LSC-OIG would withdraw its request for all client telephone numbers, with the exception of area codes; and (3) LSC-OIG would withdraw its request for information in three fields of CRLA's KEMPS database that contained attorney notes. Joint Status Report Docket No. 53, at 2.  In their status report, the parties requested that this Court resolve only "the general issue of whether, and if so, which California state privileges and protections apply."  Joint Status Report at 2.  The parties represented that, once that question is resolved, they would meet and confer to determine the application of the Court's ruling to all withheld or redacted documents and data.  For any issue not resolved by this process, the parties consented in advance to referral to a magistrate judge "for purposes of determining the

applicability of . . . any [] privileges, in specific instances."
Joint Status Report at 3.

On the same day the parties filed their status report,
petitioners filed an unopposed motion to supplement the record to
include two additional documents.  First, petitioners submitted a
proposed protocol for review of potentially privileged material.
*See generally* Proposed Protocol, Docket No. 54-2.  This protocol
was designed to address the Court's concerns about the burden on
CRLA of complying with LSC-OIG's subpoena.  LSC-OIG's proposed
protocol recommends specific time- and resource-saving measures,
as well as a cost-sharing scheme wherein CRLA and LSC-OIG would
equally bear the costs of the review up to $100,000.  Second,
petitioners submitted a proposed protective order to address the
Court's concerns about preserving the confidentiality of CRLA's
clients.  *See generally* Proposed Protective Order, Docket No. 54-
1.  Respondent and attorney-intervenors found "much of
[petitioners'] proposed protective order . . . acceptable," CRLA
and Attorney-Intervenors' Joint Response to Proposed Review
Protocol and Proposed Protective Order ("Joint Resp."), Docket
No. 56, at 14, but suggested several modifications, some of which
were subsequently incorporated into a revised proposed protective
order.  *See generally* Revised Proposed Protective Order, Docket
No. 58-2.  The petition for enforcement, as supplemented by

14

petitioners' proposed data review protocol and revised protective order, is now ripe for consideration by the Court.

## III.  STANDARD OF REVIEW

A court's role in enforcing an administrative subpoena "is a strictly limited one." *FTC v. Texaco, Inc.*, 555 F.2d 862, 871-72 (D.C. Cir. 1977) (en banc).  A court is compelled to enforce an administrative subpoena if it has been issued for a lawful purpose, the documents requested are relevant to that purpose, and the demand is reasonable and not unduly burdensome.  *See Linde Thomson Langworthy Kohn & Van Dyke, P.C. v. Resolution Trust Corp.*, 5 F.3d 1508, 1513 (D.C. Cir. 1993).  "It is not the province of this court to decide the best way for [LSC-OIG] to carry out its responsibilities." *United States v. Legal Services for New York City*, 100 F. Supp. 2d 42, 47 (D.D.C. 2000) ("*LSNYC I*"), *aff'd*, 249 F.3d 1077 (D.C. Cir. 2001).  Rather, "an administrative subpoena must be enforced if the information sought is within the authority of the agency, the demand is not too indefinite and the information sought is reasonably relevant." *RTC v. Walde*, 18 F.3d 943, 946 (D.C. Cir. 1994) (citations omitted).

## IV.  ANALYSIS

In their status report, the parties ask this Court to resolve the threshold question of "whether, and if so, which California state privileges and protections apply" to limit the

scope of LSC-OIG's subpoena.  Joint Status Report at 3.  CRLA asserts that in addition to federal privileges, several state privileges and confidentiality protections prohibit CRLA from disclosing certain information to LSC-OIG.  Petitioners contend that only federal privileges apply to LSC-OIG's subpoena.  For the reasons set forth below, the Court finds that the scope of LSC-OIG's subpoena is limited only by the federal attorney-client and work product privileges.

**A.   Whether California State Privileges and Protections Preclude CRLA From Disclosing Subpoenaed Information**

As both parties acknowledge, the organic LSC Act expressly protects privileged information from disclosure: "[N]either the Corporation nor the Comptroller General shall have access to any reports or records subject to the attorney-client privilege."  42 U.S.C. § 2996h(d).  The LSC Act also recognizes attorneys' professional responsibilities in the states in which they are licensed.  Specifically, section 2996e(b)(3) provides that LSC shall not "interfere with any attorney in carrying out his professional responsibilities to his client as established by the [ethical guidelines] of the [ABA] . . . or abrogate . . . the authority of a state or other jurisdiction to enforce the standards of professional responsibility generally applicable to attorneys in such jurisdiction."[4]  This section was later

---

[4]     Petitioners in this case do not concede that this limitation applies to LSC-OIG.  *See* Pet. Reply at 20, n.14.  The

expressly modified by the 1996 Appropriations Act to provide that "<u>notwithstanding</u> section 1003(b)(3) of the Legal Services Corporation Act (42 U.S.C. § 2996e(b)(3)), financial records, time records, retainer agreements, client trust fund and eligibility records, and client names, for each recipient, <u>shall be made available</u> to any auditor or monitor of the recipient, including any . . . agency that is auditing or monitoring the activities of the Corporation or of the recipient . . . except for reports or records subject to the attorney-client privilege." Pub. L. 104-134, § 509(h), 110 Stat. 1321, 1321-59 ("Section 509(h)")(emphasis added).

Respondent and the attorney-intervenors contend that because LSC is statutorily required to respect attorneys' professional responsibilities under state law, subpoenas issued by LSC-OIG are limited not only by federal privileges but also by applicable state privileges and confidentiality obligations. According to respondent and the attorney-intervenors, CRLA attorneys are prohibited under California state law from disclosing much of the information requested by LSC-OIG in its subpoena. First, they contend, both the attorney-client privilege and the work product privilege as defined by California state law are broader than the

---

D.C. Circuit has held, however, that this provision does impose obligations on the Inspector General. *See United States v. Legal Services for New York City*, 249 F.3d 1077, 1083 (D.C. Cir. 2001) ("*LSNYC II*").

comparable federal privileges.  Second, they argue that

California state law imposes additional confidentiality

obligations that extend beyond the scope of the attorney-client

privilege.  The attorney-intervenors note that a right to privacy

is enshrined in the California Constitution.  *See* Attorney-

Intervenors' Opp'n to Petition at 16 (citing Cal. Const., art.

I., § 1: "All people are by nature free and independent and have

inalienable rights.  Among these are enjoying and defending life

and liberty, acquiring, possessing, and protecting property, and

pursuing and obtaining safety, happiness, and privacy.").  To

that end, they assert, California law strictly prohibits

attorneys from revealing any confidential client information.

*See* Cal. Bus. & Prof. Code § 6068(e)(1) (requiring an attorney to

"maintain inviolate the confidence, and at every peril to himself

or herself to preserve the secrets, of his or her client").  This

duty is reaffirmed in California's professional responsibility

code.  Cal. Rules of Prof'l Conduct R. 3-100(A) ("A member shall

not reveal information protected from disclosure by Business and

Professions Code section 6068, subdivision (e)(1) without the

informed consent of the client . . . .").[5]  Finally, as a policy

---

[5]     According to the attorney-intervenors, California law
permits only one exception to this restriction on disclosing
client secrets.  Specifically, California law provides that a
member may reveal confidential information only where "the
attorney reasonably believes the disclosure is necessary to
prevent a criminal act that the attorney reasonably believes is
likely to result in death of, or substantial bodily harm to, an

matter, respondent and amici argue at length that it is critical
to safeguard the confidentiality of CRLA's low-income clients,
who often face retaliation or violence when it becomes known that
they are seeking legal help.

Petitioners reject respondent's contention that California
state law limits the scope of information to which LSC-OIG is
entitled.  As a threshold matter, petitioners argue that the
Supremacy Clause of the Constitution prohibits CRLA from avoiding
its federal duties by asserting contrary state obligations.
Petitioners raise two additional arguments in support of their
claim that CRLA must disclose all requested material that is not
protected by the federal attorney-client or work product
privileges.  First, they point to a 2000 decision by this Court,
which holds that, pursuant to Section 509(h), a legal services
entity must disclose client names to LSC-OIG, <u>notwithstanding</u> any
obligations under state law to protect client "secrets." *LSNYC
I*, 100 F. Supp. 2d at 47.  Petitioners argue that the language of
Section 509(h) plainly requires CRLA to disclose client names and
any other information that falls within the scope of that
provision, unless that information is protected by attorney-
client privilege.  Second, petitioners assert that it is well-
settled in this Circuit that only federal privileges govern the

individual."  Cal. Bus. & Prof. Code § 6068 (e)(2); *see also* Cal.
Rules of Prof'l Conduct R. 3-100(B).

19

scope of a subpoena issued under federal law.  *See Linde Thomson*,
5 F.3d at 1513.[6]  Having carefully considered the parties'
arguments, the Court agrees with petitioners.

For the purposes of resolving this threshold question, the
information requested by LSC-OIG in its subpoena can be
classified into two general categories: (1) information that
falls within the scope of Section 509(h) (e.g., client names,
retainer agreements, eligibility records, etc.), and
(2) information that falls outside the scope of that provision.
With respect to the first category, the Court finds that its
holding in *LSNYC I* bears directly on the question before it in
this case.  In *LSNYC I*, the Court recognized that Section 509(h)
creates an express exception to the statutory provision that
prohibits LSC from interfering with the authority of a state to
enforce its own standards of professional responsibility.  100 F.
Supp. 2d at 46.  Indeed, the Court in that case held that the

---

[6]     Petitioners argue, in addition, that CRLA has made no
specific showing of privilege with respect to any of the withheld
and/or redacted data and documents.  In general, petitioners
contend, blanket assertions of privilege are insufficient to
justify non-disclosure, and the burden is on the party seeking to
assert privilege to demonstrate that the privilege applies.  *See*
*LSNYC II*, 249 F.3d at 1081-82 ("[A]s always the burden of
demonstrating the applicability of the privilege lies with those
asserting it . . . That burden requires a showing that the
privilege applies to each communication for which it is asserted
. . . ." (internal citations omitted)).  Because the parties have
asked this Court to resolve only the threshold question of
whether or not California state law limits the scope of LSC-OIG's
subpoena, the Court does not reach this argument.

plain language of Section 509(h) requires that certain
information, including client names, must be disclosed to LSC-OIG
<u>notwithstanding</u> the attorney's professional responsibilities
under state law, unless such information is protected by
attorney-client privilege.[7]  *See LSNYC I*, 100 F. Supp. 2d at 47
("I find the language of § 509(h) unambiguous, so that
legislative history on either side could not change the statute's
clear requirement that LSC grantees make available client names
to any duly authorized auditor or monitor.").  That holding was
subsequently affirmed by the D.C. Circuit.  *See LSNYC II*, 249
F.3d at 1083 (concluding that "grantees' ethical obligations do
not prevent [LSC-OIG] from compelling production of client names
associated with problem codes").  This Court must therefore reach
the same conclusion.  Accordingly, the Court finds that
California state law cannot preclude CRLA from disclosing to LSC-
OIG any non-privileged information that falls within the scope of
Section 509(h).

     The Court further finds that California state law does not
preclude CRLA from disclosing to LSC-OIG any information not

---

[7]     As the Court in *LSNYC I* recognized, client identities
are not generally protected by the federal attorney-client
privilege.  100 F. Supp. 2d at 44-45 (citing *Clark v. Am.
Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir. 1992)).
Moreover, the Court noted that the "narrow exception" to this
rule "does not apply where disclosure of a client name would only
reveal general information about the nature of the services
performed."  *LSNYC I*, 100 F. Supp. 2d at 45.

covered by Section 509(h).  Respondent and the attorney-
intervenors are correct that the LSC Act specifically recognizes
the authority of a state to enforce its own standards of
professional responsibility.  However, the Court is not persuaded
that California professional responsibility standards require
non-disclosure of the subpoenaed information in this case.  Rule
3-100 of the California Rules of Professional Conduct prohibits
attorneys from revealing "information protected from disclosure
by Business and Professions Code section 6068, subdivision (e)(1)
without the informed consent of the client . . . ."  Cal. Rules
of Prof'l Conduct R. 3-100(A).  However, Discussion paragraph [2]
accompanying this rule further provides that "a member may not
reveal such information except with the consent of the client or
as authorized or required by the State Bar Act, these rules, or
other law."  Cal. Rules of Prof'l Conduct R. 3-100, Disc. [2]
(emphasis added).  The California Supreme Court approved this
language in 2004, as documented by the California State Bar's
Standing Committee on Professional Responsibility and Conduct.
Cal. State Bar Formal Opn. No. 2008-175 at 5 ("In 2004, the
California Supreme Court approved the following language limiting
the attorney's ethical duty of confidentiality by approving
paragraph [2] of the Discussion of newly adopted rule 3-100 . . .
.  Although recent, rule 3-100's Discussion paragraph [2] is
hardly novel.  It has long been recognized that attorneys are
authorized by law . . . to disclose confidential information in

22

aid of their defense to a client malpractice action, in support

of a claim for unpaid legal fees against a client, and in defense

of a client-initiated disciplinary proceeding." (case citations

omitted)).  *See also* Cal. State Bar Formal Opn. No. 2010-179

(listing among the "few exceptions" to the duty of

confidentiality an exception as required by "other law").[8]  This

case is therefore indistinguishable from *LSNYC I*, in which the

Court noted that a lawyer required to disclose client names would

not run afoul of her ethical obligations because, under the state

professional responsibility codes at issue in that case and the

ABA Model Rules, disclosures of confidential information are

permitted where required by law or court order.  100 F. Supp. 2d

at 47.[9]  Accordingly, the Court finds that disclosing non-

privileged confidential client information in response to a duly

---

[8]    Respondent all but ignores this exception in its
briefs, focusing instead on pre-2004 California state case law
addressing the duty of confidentiality.  A footnote in the
attorney-intervenors' opposition contains the conclusory
assertion that this language "is neither an exception to the
California statutory duty of confidentiality . . . nor is it an
exception to Rule of Professional Responsibility 3-100 itself,
which, in any event, cannot modify the statutory duty."
Attorney-Intervenors' Opp'n at 22, n.8.  The Court finds this
argument unpersuasive.

[9]    Because the Court concludes that CRLA is not precluded
by California state law from disclosing any non-privileged
information in response to LSC-OIG's subpoena, even if that
information is not covered by Section 509(h), the Court finds
that it need not delineate the scope of Section 509(h) at this
stage.  *See* CRLA Opp'n at 40 (arguing that Section 509(h) should
be construed narrowly to apply only to those clients actually
engaged by CRLA and not to prospective clients).

authorized subpoena is not inconsistent with CRLA attorneys'
professional responsibilities under state law.

Finally, the Court finds that the scope of LSC-OIG's
subpoena is not limited by California state attorney-client or
work product privileges.  Under the law of this Circuit, a
subpoena issued pursuant to federal law is governed by the
federal law of privilege.  *Linde Thomson*, 5 F.3d at 1513 ("The
nature of a subpoena enforcement proceeding, under common sense
and precedents in this circuit and elsewhere . . . rests soundly
in federal law, and federal law of privilege governs any
restrictions on the subpoena's scope.").  *See also United States
v. Hunton & Williams*, 952 F. Supp. 843, 856 (D.D.C. 1997)
("Questions of privilege are governed by federal law where the
underlying action arises under federal, as opposed to state
law.").  In *Linde Thomson*, the D.C. Circuit "[declined] the
opportunity to adopt a particular state's privilege law where, as
here, the documents in question are sought by a governmental
agency with a nationwide mandate to redress matters of pressing
public concern."  5 F.3d at 1514.  As the Court noted, "[t]he
serious risk that inconsistent state privilege rules might unduly
constrict [the agency's] discretion in contravention of its
congressional mandate makes it abundantly clear that this is a
situation in which state privileges may not be adopted
costlessly.  A uniform rule, rather than *ad hoc* borrowing, will

24

better promote federal policy objectives." *Id.* The Court finds

that the D.C. Circuit's reasoning in *Linde Thomson* applies

equally here, where LSC has a broad congressional mandate to

ensure that recipients of the financial assistance it provides

comply with the statutory restrictions on that federal funding.[10]

Accordingly, for the foregoing reasons, the Court concludes

that CRLA erred in relying on California state confidentiality

obligations and privileges to justify withholding and/or

redacting information requested by LSC-OIG in its subpoena.[11]

Having resolved this threshold question, the Court turns now to

the question of whether LSC-OIG's subpoena is enforceable.

**B.    Whether LSC-OIG's Subpoena Is Enforceable**

In the D.C. Circuit, a court is compelled to enforce an

administrative subpoena if it has been issued for a lawful

---

[10]    Moreover, to the extent a privilege under state law
conflicts with the federal law of privilege, the Supremacy Clause
dictates that federal law must prevail. *See Gonzales v. Raich*,
545 U.S. 1, 29 (2005) ("The Supremacy Clause unambiguously
provides that if there is any conflict between federal and state
law, federal law shall prevail.").

[11]    At the request of the parties, this Court will not rule
on whether the federal attorney-client or work product privileges
attach to any specific data or documents that have been withheld
or redacted by CRLA.  The parties have agreed to meet and confer
to discuss the applicability of federal privileges to any
withheld and/or redacted information.  For issues not resolved by
this process, the parties have consented in advance to referral
to a magistrate judge "for purposes of determining the
applicability of the attorney-client privilege, the attorney work
product privilege, and any other privileges, in specific
instances . . . ."  Joint Status Report at 3.

purpose, the documents requested are relevant to that purpose, and the demand is reasonable and not unduly burdensome.  *See Linde Thomson*, 5 F.3d at 1513.  Respondent contends that LSC-OIG's subpoena is unenforceable because it was not issued for a lawful purpose, because the documents requested are not reasonably relevant to any lawful purpose, and because the subpoena is unduly burdensome and unreasonable.  Each of these arguments is discussed below in turn.

### 1.   Lawful Purpose

"The question of whether the subpoena was issued for a lawful purpose turns on whether [LSC-OIG] possessed the requisite statutory authority to issue it in the first place."  *Hunton & Williams*, 952 F. Supp. at 848.  As set forth above, the Inspector General Act grants LSC-OIG broad authorization to undertake an investigation of alleged statutory and regulatory violations by one of LSC's grantees and to subpoena all information necessary to conduct its investigation.  *See* 5 U.S.C. app. 3 §§ 4(a)(1), 6(a)(2), 6(a)(4), 8G(a)(2).  In addition, under Section 509(h) of the 1996 Appropriations Act, Congress has mandated that "financial records, time records, retainer agreements, client trust fund and eligibility records, and client names, for each [LSC] recipient shall be made available to any auditor or monitor . . . except for reports or records subject to the attorney-client privilege."  Respondent does not directly contend that

LSC-OIG lacks the authority to issue its subpoena in this case. Rather, respondent and amici argue that LSC-OIG's subpoena is not tailored to any legitimate lawful purpose because some of the allegations being investigated do not constitute violations of LSC's implementing statute or regulations.  Specifically, they contend that engaging in impact-oriented work, focusing resources on Latino and farm worker issues, and undertaking litigation on behalf of clients represented by other counsel are all activities that are permitted by the LSC Act and therefore are not valid bases for investigation.  *See* CRLA Opp'n at 33-36; Amicus Brief of Nat'l Legal Aid and Defender Ass'n at 24-31.

These arguments miss the point.  The purpose of LSC-OIG's investigation is to determine whether an <u>undue</u> focus on impact litigation and on a particular segment of the low-income community has led CRLA to engage in activities that are prohibited under the LSC Act, such as solicitation of clients, serving undocumented clients, working fee-generating cases, and failing to provide basic legal assistance to a variety of demographic groups in need.  It is undisputed that these activities would, if substantiated, be violations of the LSC Act and its accompanying amendments and regulations.  Accordingly, the Court concludes that LSC-OIG's subpoena clearly falls within the scope of its authority under the Inspector General Act to

27

investigate allegations that CRLA violated the statutory
restrictions of its federal grant assistance.

### 2.   Relevance

A district court must enforce an administrative subpoena if
the information sought is "reasonably relevant" to a lawful
investigative purpose.  *FTC v. Invention Submission Corp.*, 965
F.2d 1086, 1089 (D.C. Cir. 1992), *cert. denied* 507 U.S. 910.[12]
"Reasonably relevant" means "merely 'that the information must be
relevant to <u>some</u> (any) inquiry that the [LSC-OIG] is authorized
to undertake.'"  *Hunton & Williams*, 952 F. Supp. 2d at 854
(quoting *United States v. Oncology Serv.*, 60 F.3d 1015, 1020 (3d
Cir. 1995) (emphasis in original)).  As this Circuit has
instructed, "where the dispute turns on the <u>relevance</u> of the
information sought by a government agency, . . . the district
court should not reject the agency's position unless it is
'obviously wrong,' . . . the burden, as a practical matter, is on
the defendant to meet that test."  *Director, Office of Thrift
Supervision v. Vinson & Elkins, LLP*, 124 F.3d 1304, 1307 (D.C.
Cir. 1997) (internal citations omitted).

As discussed above, the Court finds that LSC-OIG's
investigation of the allegations against CRLA is lawful and
within the scope of its authority under the Inspector General

---

[12]    In an administrative proceeding, the standard for
judging relevancy "is more relaxed than in an adjudicatory one."
*Id.* at 1090.

Act.  Respondent cannot, therefore, show that the subpoenaed
information is "plainly incompetent or irrelevant to any lawful
purpose."  *See Hunton & Williams*, 952 F. Supp. at 854 (citation
omitted).  Moreover, although respondent questions the relevance
of client names and other identifying information to the purpose
of LSC-OIG's investigation, petitioners respond that this
information is critical to determining whether CRLA solicited
clients from among its employees' relatives, represented
undocumented workers, engaged in litigation work without any
clients, or focused on Latino and farmworker clients to a degree
that precludes representation of other eligible clients.
Respondent offers no basis for this Court to conclude that
petitioners' rationale is "obviously wrong."  *See also LSNYC I*,
100 F. Supp. 2d at 47 ("Respondents do not argue, nor could they,
that client names are not reasonably relevant to a
congressionally-mandated assessment of LSC recipients' case
statistics.").  Accordingly, the Court declines to deny
enforcement of the subpoena on relevance grounds as well.

### 3.   Undue Burden

As the D.C. Circuit has observed, "[e]very subpoena imposes
a burden on its recipient."  *Linde Thomson*, 5 F.3d at 1517.
"Some burden on subpoenaed parties is to be expected and is
necessary in furtherance of the agency's legitimate inquiry and
the public interest."  *FTC v. Texaco*, 555 F.2d at 882.  In

determining whether a burden is undue, "courts often examine its
tailoring to the purpose for which the information is requested -
that is, its relevance." *LSNYC II*, 249 F.3d at 1084.  Indeed,
the task of demonstrating that an administrative subpoena is
unduly burdensome or unreasonable is particularly difficult where
"the agency inquiry is pursuant to a lawful purpose and the
requested documents are relevant to that purpose." *Hunton &
Williams*, 952 F. Supp. at 855 (citing *FTC v. Texaco*, 555 F.2d at
882).

Respondent contends that LSC-OIG's subpoena is unduly
burdensome and unreasonable because it would "unduly disrupt or
seriously hinder" CRLA's normal business operations.  CRLA Opp'n
at 28 (citing *FTC v. Texaco*, 555 F.2d at 882).  CRLA argues that,
in order to comply with LSC-OIG's request for client names and
other identifying information, it would need to review
approximately 39,000 individual hard copy case files for
potentially privileged information prior to disclosure.[13]  This
task, CRLA contends, would substantially impair its business

---

[13]     In light of LSC-OIG's decision to withdraw its request
for client identifying information in all domestic violence and
juvenile cases, CRLA estimates that 37,000 case files are now at
issue.  Joint Resp. at 2.  Petitioners note that narrowing the
scope of the subpoena in this way has actually eliminated
approximately twenty percent (20%) of the cases CRLA initially
identified as having problem codes "suggestive of confidential
client communications."  Petitioners' Reply in Support of
Proposed Protocol and Protective Order, Docket No. 58, at 5.

operations, requiring expenditures potentially in excess of $1 million if outside contract attorneys are engaged to handle the review, or, if CRLA attorneys conduct the review themselves, requiring over 3,200 hours of attorney time and 4,800 to 7,800 hours of staff time for records handling and support.  CRLA Opp'n at 30-31.[14]

The Court is sensitive to CRLA's concerns; however, the Court declines to find that LSC-OIG's subpoena is unduly burdensome or otherwise unreasonable.  As a threshold matter, the Court has already determined that the information requested in the subpoena is reasonably relevant to the investigation LSC-OIG is authorized to undertake; therefore, respondent would have to make a substantial showing of hardship for this Court to determine that the burden on CRLA of complying with the subpoena is undue.  In light of this Court's conclusion that the scope of LSC-OIG's subpoena is limited only by federal privileges, and not by California state privileges or confidentiality obligations,

---

[14]    CRLA's estimates of the time and expense required to comply with LSC-OIG's subpoena are based on a sampling test conducted in the fall of 2006.  CRLA Opp'n at 29; Hoerger Decl. ¶¶ 90-104.  According to CRLA, "[o]ver 500 files were randomly selected from three CRLA offices and reviewed by experienced litigators (one on CRLA's staff, two hired on a contract basis)" using a review protocol developed by CRLA.  CRLA Opp'n at 29. *See also* Hoerger Decl. Ex. FF-II.  This sample review "suggests that a substantial minority of the clients' identities at issue - thousands of the requested records - would be protected by the attorney-client privilege, and a majority of the identities would be protected by the attorneys' state-law duties of confidentiality and privacy."  CRLA Opp'n at 29.

the Court is not persuaded that the burden of a privilege review is as onerous as CRLA's initial estimates would suggest.

In addition, petitioners' proposed privilege review protocol and cost-sharing scheme offers an opportunity to substantially reduce the burden on CRLA. *See generally* Proposed Protocol, Docket No. 54-2. Petitioners have proposed, among other things, that CRLA only review those individual case files for which the available electronic data indicates there may be a privilege concern. Although respondent and the attorney-intervenors contend that a sufficient privilege review cannot be conducted on the basis of electronic data alone, the Court is persuaded that an initial review of electronic data is reasonable because the data portion of LSC-OIG's subpoena only seeks information found in CRLA's KEMPS database, not individual case files. Therefore, any privilege review would necessarily focus on information from the database itself that might reveal a privileged attorney-client communication. Petitioners have also proposed specific cost-saving measures, such as a competitive bidding process for contract attorneys to conduct the review process, as well as equal sharing of the costs of review up to $100,000, which is intended to ensure that both parties have an incentive to keep costs down. Further, petitioners have proposed safeguards to ensure that the protocol works as anticipated, including a measure that would halt the review process after $34,000 has been expended so that the parties can evaluate its cost-effectiveness.

32

Finally, the proposed protocol provides that the parties may seek
leave to modify the protocol to address unresolved issues.  At
this stage, the Court finds that petitioners' proposed protocol
sufficiently addresses its concerns regarding the potential
burden on CRLA of complying with LSC-OIG's subpoena.[15]

Accordingly, for the foregoing reasons, the Court concludes
that LSC-OIG's subpoena meets the three-pronged test in this
Circuit for enforcement of an administrative subpoena.  The
subpoena shall therefore be enforced, as narrowed by the
agreements contained in parties' 2009 status report and subject
to the terms set forth in petitioners' proposed review protocol.

### C.   Proposed Protective Order

Although CRLA is not precluded from disclosing non-
privileged information to LSC-OIG on confidentiality grounds, the
Court finds that respondent and the attorney-intervenors have
nonetheless raised legitimate concerns about the privacy of their

---

[15]    Respondent and the attorney-intervenors argue that LSC-
OIG could achieve its legitimate investigative objectives in "any
number of ways" that would require less burden on CRLA, including
limiting its request to a representative sample of client files.
Joint Resp. at 13.  Petitioners respond that sampling is "not an
option" because a representative sample would not further the
goals of its comprehensive, full-scale investigation, although
sampling may be appropriate for a smaller scale annual audit.
Petitioners' Reply in Support of Proposed Protocol and Protective
Order at 8.  As this Court has previously noted, "it is not the
province of this court to decide the best way for LSC-OIG to
carry out its responsibilities." *LSNYC I*, 100 F. Supp. 2d at 47.
Accordingly, the Court declines to modify the terms of LSC-OIG's
subpoena by limiting its scope to a representative sample of CRLA
records.

clients' confidential information.  The Court will enter an appropriate protective order to address those concerns.  In conjunction with the parties' status report, petitioners submitted a proposed protective order to the Court, which has since undergone revisions by both parties.  *See generally* Revised Proposed Protective Order, Docket No. 58-2.  Respondent and the attorney-intervenors accede to much of the proposed protective order; however, two principal provisions remain contested.  Each of these provisions is discussed in turn below.

First, the parties disagree on the scope of the protective order.  Petitioners contend that the protective order should only cover client identifying information (e.g., client names, addresses, and spouse names).  They further contend that the burden should be on CRLA to clearly identify this information as confidential prior to disclosure.  Respondent and the attorney-intervenors argue, by contrast, that the protective order should apply to all information disclosed by order of this Court, and that all such information should presumptively be considered confidential without any requirement for CRLA to clearly designate it as such.  With respect to this provision, the Court is inclined to agree with petitioners.  The Court finds that respondent has demonstrated a legitimate interest in preserving the confidentiality of client identifying information, insofar as any public release of such information could expose its clients to retaliation or other negative consequences.  However,

34

respondent has failed to demonstrate a similarly compelling interest in protecting the confidentiality of information other than client identifying information.  Any information subject to LSC-OIG's subpoena that legitimately falls within the scope of the federal attorney-client or work product privileges may properly be withheld.  Extending a protective order beyond client identifying information is therefore unnecessary and, indeed, might impede LSC-OIG's ability to provide a comprehensive report to Congress on the outcome of its investigation.  Accordingly, the Court concludes that its protective order shall be limited to client identifying information only.  To avoid any unintentional disclosure by LSC-OIG, CRLA shall clearly designate all confidential information covered by this protective order.

Second, the parties disagree on whether LSC-OIG should be required to notify CRLA before disclosing any confidential information to law enforcement officers or to bar association officials.  Petitioners note that LSC-OIG is prohibited by law from revealing any information it receives pursuant to Section 509(h) to anyone, with the limited exceptions of law enforcement officials and bar association officials.  1996 Appropriations Act, § 509(i), 110 Stat. 1321, 1321-59 ("The Legal Services Corporation shall not disclose any name or document referred to in subsection (h), except to - (1) a Federal, State, or local law enforcement official; or (2) an official of an appropriate bar association for the purpose of enabling the official to conduct

an investigation of a rule of professional conduct."). Petitioners contend that LSC-OIG should not be obligated to notify CRLA in advance of any disclosure specifically authorized by Section 509(i) of the 1996 Appropriations Act.  Petitioners propose to give CRLA five days' notice prior to all other permissible disclosures.  Respondent and the attorney-intervenors argue, by contrast, that CRLA should receive advance notice of any intended disclosure of confidential information and, moreover, that the onus should be on LSC-OIG to seek leave of the Court if no agreement can be reached between the parties on the terms of disclosure.

With respect to this provision, the Court agrees with respondent that a minimum of five days' notice in advance of all disclosures is advisable, even if not required by law.  The Court further finds, however, that LSC-OIG need not seek leave of Court for any disclosure specifically authorized by Section 509(i). For all other intended disclosures of information designated as confidential, LSC-OIG shall seek leave of the Court if no agreement can be reached between the parties within the five-day notice period.

By no later than December 5, 2011, the parties shall jointly submit a revised proposed protective order consistent with this Opinion.

**V.    CONCLUSION**

For the foregoing reasons, Petitioners' Petition for Summary Enforcement of Administrative Subpoena Duces Tecum is hereby **GRANTED**, as narrowed by the parties' Joint Status Report and subject to the terms set forth in petitioners' Proposed Review Protocol.  It is hereby **ORDERED** that by no later than December 5, 2011, the parties shall jointly submit a revised proposed protective order consistent with this Opinion.  It is **FURTHER ORDERED** that the parties shall meet and confer to discuss the application of this Court's Opinion to all documents and data withheld and/or redacted.  In view of the parties' previous mediation efforts before Magistrate Judge Alan Kay, the Court hereby re-refers this matter to Magistrate Judge Kay for the purpose of resolving all disputes over withheld and/or redacted documents and data.

An appropriate Order accompanies this Memorandum Opinion.

**SO ORDERED.**

**Signed by:    Emmet G. Sullivan**
**United States District Judge**
**November 14, 2011**